Michael F. Ram (SBN 104805)
mram@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Sam Strauss (*Pro Hac Vice*)
sam@turkestrauss.com
Raina Borrelli (*Pro Hac Vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

*Attorneys for Plaintiffs and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMOS GBEINTOR, WILTON ALDERMAN, and DRU DOMINCI, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>DEMANDBASE, INC., and INSIDEVIEW TECHNOLOGIES, INC.,<br><br>               Defendants. | Case No. 4:21-cv-09470-KAW<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA AND OHIO RIGHT OF PUBLICITY STATUTES; CALIFORNIA AND OHIO MISAPPROPRIATION OF NAME OR LIKENESS; AND CALIFORNIA UCL<br><br><u>CLASS ACTION</u><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## NATURE OF ACTION

1.      Plaintiffs and members of the proposed class (the "Class") are private individuals who have no relationship with the Defendants Demandbase, Inc. and InsideView Technologies, Inc. (collectively "Defendants" or "InsideView"), nor with the website that Defendants own and operate at www.insideview.com. Plaintiffs and the Class have never used insideview.com, nor did they provide their names, contact information, job titles, places of work, education histories, cities of residence, or any other personal information to InsideView.

2.      Plaintiffs were seriously distressed to discover that InsideView is using their names, personal information, and personas to advertise paid subscriptions to a product called "InsideView Pro."

3.      Plaintiffs and the Class did not consent to InsideView using their names, contact information, job titles, places of work, education histories, cities of residence, photographs, and other personal information to promote InsideView subscriptions. Nor did they consent to InsideView selling access to their personal information as part of its subscription products.

4.      InsideView advertises subscriptions by publicly displaying profiles of Plaintiffs and Class Members showing their names, contact information, job titles, places of work, education histories, cities of residence, and other personal information. Some profiles include photographs.

5.      Users who attempt to download Plaintiffs' and Class Members' personal information, or who attempt to "Build a list" of potential contacts that includes Plaintiffs' and Class Members' profiles, are shown a pop-up asking the user to "Upgrade to Pro" and purchase an InsideView subscription for $99 per month.

6.      InsideView advertises that paying subscribers receive a variety of services, including: access to "accurate email addresses and corproate [sic] phone numbers" for Plaintiffs and Class Members; and "contact details, news events, and social feeds to help you connect" with Plaintiffs and Class Members.

7.      InsideView advertises that paying subscribers also receive automatic tracking and delivery of: Plaintiffs' and Class Members' social media posts; posts made about Plaintiffs and

Class Members by others on social media; and mentions of Plaintiffs and Class Members in the news media. InsideView's "Watchlists" feature "[a]utomatically follow[s] accounts . . . to stay up-do-date on the latest insights about . . . prospects via alerts sent directly to your inbox." This automatic tracking delivers a variety of information about Plaintiffs and Class Members including: "news mentions about" Plaintiffs and Class Members; "what [Plaintiffs and Class Members] are talking about on Twitter and Facebook"; and "what others are saying about [Plaintiffs and Class Members] in the social media."

8.      InsideView advertises that paying subscribers also receive "Intent Data" about Plaintiffs and Class Members. "Intent Data" is "information about [Plaintiffs' and Class Members'] behavior and content consumption that suggests they're in the market to buy particular products and services." InsideView subscribers can see what "articles and whitepapers . . . podcasts . . . and web content" Plaintiffs and Class Members are consuming, in order to "know precisely the right moment to reach out" for a sale.

9.      InsideView is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. InsideView does not host user-generated content on or in any part of the website relevant to this lawsuit. InsideView is the sole curator, designer, and creator of the content described in this Complaint, including the profiles representing Plaintiffs and Class Members, the on-site pop-ups soliciting subscriptions, and the services that allow paying subscribers to track Plaintiffs' and Class Members' social media and internet browsing behavior.

10.     Plaintiffs do not know how InsideView obtained their names, contact information, job titles, places of work, education histories, and cities of residence. Plaintiffs do not know how InsideView obtained access to their social media posts and social media posts about them, updates about which InsideView sells as part of a subscription. Plaintiffs do not know how InsideView obtained access to their internet browsing behavior, which InsideView sells as part of a subscription.

11.     Plaintiffs' and Class Members' names, personal information, social media activity, browsing behavior, photographs, likenesses, and personas have commercial value. This

commercial value is demonstrated by the exploitation of Plaintiffs' and Class Members' names, personal information, social media activity, browsing behavior, photographs, for commercial gain by InsideView and InsideView's competitors.

12.   InsideView appropriated Plaintiffs' and Class Members' names, personal information, and personas without permission or consent from Plaintiffs or Class Members.

13.   Consent is not all or nothing. Plaintiffs and Class Members may have shared their names, personal information, social media histories, and internet browsing behavior with companies or the government in a variety of contexts. For example, Plaintiffs or Class Members may have consented to the posting of their names, work histories, and photographs on the website of a company for which they work, or on a professional networking site. They may have shared their browsing behavior with an internet service provider as part of receiving internet access.

14.   But Plaintiffs and Class Members did not consent to the commercial use of their personal information and personas to promote subscriptions to a website with which they have no relationship, and which they have no interest in promoting.

15.   California and Ohio law recognize individuals' intellectual property and privacy rights in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

16.   By using Plaintiffs' and Class Members' names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, InsideView has violated their intellectual property and privacy rights. Plaintiffs and Class Members have the right not to have their personas exploited to promote a product with which they have no relationship and no interest in supporting.

17.   Plaintiffs and Class Members have an economic interest in their personas, which InsideView has stolen, and a privacy interest in their personas, which InsideView has violated

18.   By these actions, InsideView has violated the California Right of Publicity, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; Ohio's Right of Publicity statute, codified in Ohio Rev. Code § 2741; Ohio

common law prohibiting misappropriation of a name or likeness; and California's Unfair Competition Law, codified in Cal. Bus. & Prof. Code § 17200 *et seq.*

19.     Plaintiffs and Class Members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through InsideView's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind.

20.     Plaintiffs and Class Members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting InsideView's unlawful conduct, the award of attorneys' fees, expenses, and costs, and declaratory relief.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative Class and sub-Class are citizens of a state different from at least one defendant. Defendant Demandbase, Inc. is incorporated in Delaware and has its principal place of business in San Francisco, California. Defendant InsideView Technologies, Inc. is incorporated in California and has its principal place of business in San Francisco, California. Two of the Plaintiffs are residents of California seeking to represent a Nationwide Class containing members from every state in the country. One Plaintiff is a resident of Ohio seeking to represent the Nationwide Class and a sub-Class containing members from Ohio. (B) Each of the proposed Classes, including the proposed sub-Class limited to residents of Ohio, consists of at least 100 members. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for statutory damages "equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered," as well as "any profits from the unauthorized use." The statute also allows for punitive damages and the award of attorneys' fees and costs. Because Defendants are California corporations using the names and personal information of hundreds of millions of individuals to advertise their website, the amount in controversy is well over the jurisdictional limit.

22.     This Court has general personal jurisdiction over both Defendants because their headquarters and principal places of business are in this state and district.

23.     This Court has specific personal jurisdiction over both named Defendants because a significant portion of the events giving rise to this lawsuit occurred in this state, including: InsideView's design and creation of the advertisements incorporating Plaintiffs' and Class Members' names, likenesses, and personas; InsideView's copying of Plaintiffs' and Class Members' personal information from online sources; InsideView's display of Plaintiffs' and Class Members' profiles in advertisements available to the public online; InsideView's failure to obtain required consent from Class Members who reside in California; and InsideView's violation of the intellectual property rights of Class Members who reside in California.

24.     InsideView's illegal use of Plaintiffs' and Class Members' names, likenesses, photographs, and personas in advertisements originated from and was directed by InsideView from its San Francisco headquarters.

25.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district.

## PARTIES

26.     Plaintiff Amos Gbeintor is a citizen of California. Mr. Gbeintor resides in Sacramento, California. Mr. Gbeintor has never used or subscribed to the website insideview.com.

27.     Plaintiff Wilton Alderman is a citizen of California. Mr. Alderman resides in Oakley, California. Mr. Alderman has never used or subscribed to the website insideview.com.

28.     Plaintiff Dru Dominici is a citizen of Ohio. Mr. Dominici resides in Columbus, Ohio. Mr. Dominci has never used or subscribed to the website insideview.com.

29.     Defendant InsideView Technologies, Inc. is a California corporation with its headquarters in San Franscico, California. Defendant owns and operates the website www.insideview.com.

30.     Defendant Demandbase, Inc. is a California corporation with its headquarters in San Franscico, California. On information and belief, Defendant InsideView Technologies, Inc.

is a wholly owned subsidiary of Defendant Demandbase, Inc. On information and belief, Defendant Demandbase controls Defendant InsideView Technologies, Inc. and made many of the decisions giving rise to this Complaint.

## FACTUAL ALLEGATIONS

**Plaintiff Amos Gbeintor**

31.     Plaintiff Amos Gbeintor has no relationship with InsideView. He is not a subscriber and has never used insideview.com.

32.     Mr. Gbeintor did not give consent to InsideView to use his name, likeness, personal information, or persona in any way. Had InsideView requested his consent, Mr. Gbeintor would not have provided it.

33.     InsideView uses Mr. Gbeintor's name and persona in advertisements promoting website subscriptions.

34.     InsideView publicly displays a profile of personal information about Mr. Gbeintor on the Internet. The profile states his name, city of residence, phone number, place of work, job title, and educational history. The profile uniquely identifies Mr. Gbeintor. A screenshot depicting the profile is shown below. For privacy, Plaintiffs' counsel have redacted Mr. Gbeintor's place of work, phone number, and educational history. In the original profile appearing on the InsideView website, this information is plainly visible.



35. InsideView provides a publicly accessible landing page at insideview.com on which users may search, and have searched, for Mr. Gbeintor by name. Anyone who creates a free account on InsideView may access the landing page and search for Mr. Gbeintor without needing to pay for a subscription. The landing page is shown below. For privacy, Plaintiffs' counsel have redacted Mr. Gbeintor's place of work, which is plainly visible on the website published by InsideView:



36. Users who searched for Mr. Gbeintor and clicked on the pop-up beneath the search bar were shown the profile of Mr. Gbeintor that appears in paragraph 35 above.

37. Users who attempted to download Mr. Gbeintor's information by clicking the "Export" button on his profile received a pop-up message prompting them to "Upgrade to InsideView Pro" at a cost of $99 per month.

38. Users who attempted to add Mr. Gbeintor's name to a list of potential contacts by clicking the "Build a list" button on his profile, or who clicked the large red button marked "Upgrade to Pro," also received the pop-up message prompting them to "Upgrade to InsideView Pro."

39. InsideView advertised that users who purchased an "InsideView Pro" subscription would receive additional information about Mr. Gbeintor, including:

    a.   Mr. Gbeintor's social media posts and social media posts about him;

    b.   The ability to "automatically follow" Mr. Gbeintor and receive automated information whenever his personal information changes;

    c.   Information about Mr. Gbeintor's "web . . . behavior and content consumption"

1            that may "suggest [he's] in the market to buy particular products and services."

2       40.     InsideView advertises that users who purchase an "InsideView Pro" subscription

3 will receive similar information about millions of other individuals in addition to Mr. Gbeintor.

41.     Screenshots depicting the pop-up message are shown below. For privacy, Plaintiff's counsel have redacted Mr. Gbeintor's place of work, phone number, and education history, which are plainly visible on InsideView's website.



42.     Users who click "Upgrade to Pro" on the pop-up message receive a payment screen prompting the purchase of a subscription for $99 per month.



43.     InsideView's purpose in using Mr. Gbeintor's name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to InsideView Pro.

44.     Mr. Gbeintor does not know how InsideView obtained his name and personal information. InsideView advertises that it gathers information from "40,000+ sources."

45.     InsideView misappropriated Mr. Gbeintor's personal information and persona without permission from Mr. Gbeintor. On information and belief, InsideView misappropriated Mr. Gbeintor's personal information and persona without permission from the sources from which it obtained Mr. Gbeintor's information.

46.     Mr. Gbeintor has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

47.     InsideView has injured Mr. Gbeintor by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

48.     InsideView's illegal actions caused Mr. Gbeintor mental injury and disturbed his peace of mind. Mr. Gbeintor is deeply uncomfortable in the knowledge that InsideView is using

his name and persona to advertise and as part of a commercial product he has no interest in supporting. Mr. Gbeintor believes his persona is rightly his to control. InsideView's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Gbeintor feels that InsideView's use of his name, persona, personal information, and browsing history is an alarming invasion of his privacy. Mr. Gbeintor believes that InsideView's collection and publication of personal details about him encourages and enables identity fraud. He believes InsideView's use of his personal information encourages and enables harassing marketing and sales communications.

**Plaintiff Wilton Alderman**

49.     Plaintiff Wilton Alderman has no relationship with InsideView. He is not a subscriber and has never used insideview.com.

50.     Mr. Alderman did not give consent to InsideView to use his name, likeness, personal information, or persona in any way. Had InsideView requested his consent, Mr. Alderman would not have provided it.

51.     InsideView uses Mr. Alderman's name and persona in advertisements promoting website subscriptions.

52.      InsideView publicly displays a profile of personal information about Mr.
Alderman on the Internet. The profile states his name, city of residence, phone number, place of
work, job title, educational history, and graduate school GPA. The profile uniquely identifies Mr.
Alderman. A screenshot depicting the profile is shown below. For privacy, Plaintiffs' counsel
have redacted Mr. Alderman's place of work, phone number, educational history, and graduate
school GPA. In the original profile appearing on the InsideView website, this information is
plainly visible.



53.     InsideView provides a publicly accessible landing page at insideview.com on which users may search, and have searched, for Mr. Alderman by name. Anyone who creates a free account on InsideView may access the landing page and search for Mr. Alderman without needing to pay for a subscription. The landing page is shown below. For privacy, Plaintiff's counsel have redacted Mr. Alderman's place of work, which is plainly visible on the website published by InsideView:



54.     Users who searched for Mr. Alderman and clicked on the pop-up beneath the search bar were shown the profile of Mr. Alderman that appears in paragraph 52 above.

55.     Users who attempted to download Mr. Alderman's information by clicking the "Export" button on his profile received a pop-up message prompting them to "Upgrade to InsideView Pro" at a cost of $99 per month.

56.     Users who attempted to add Mr. Alderman's name to a list of potential contacts by clicking the "Build a list" button on his profile, or who clicked the large red button marked "Upgrade to Pro," also received the pop-up message prompting them to "Upgrade to InsideView Pro."

57.     InsideView advertised that users who purchased an "InsideView Pro" subscription would receive additional information about Mr. Alderman, including:

    d.     Mr. Alderman's social media posts and social media posts about him;

    e.     The ability to "automatically follow" Mr. Alderman and receive automated

information whenever his personal information changes;

     f.    Information about Mr. Alderman's "web . . . behavior and content consumption" that may "suggest [he's] in the market to buy particular products and services."

58.    InsideView advertises that users who purchase an "InsideView Pro" subscription will receive similar information about millions of other individuals in addition to Mr. Alderman.

59.    The pop-up message InsideView displayed on top of Mr. Alderman's profile is substantially similar to the message it displayed on top of Mr. Gbeintor's profile, depicted in paragraph 41 above, except that Mr. Alderman's name and personal information appeared in place of Mr. Gbeintor's.

60.    Users who clicked "Upgrade to Pro" on the pop-up message received a payment screen prompting the purchase of a subscription for $99 per month. The payment screen is substantially similar to the screen depicted in paragraph 42 above.

61.    InsideView's purpose in using Mr. Alderman's name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to InsideView Pro.

62.    Mr. Alderman does not know how InsideView obtained his name and personal information. InsideView advertises that it gathers information from "40,000+ sources."

63.    InsideView misappropriated Mr. Alderman's personal information and persona without permission from Mr. Alderman. On information and belief, InsideView misappropriated Mr. Alderman's personal information and persona without permission from the sources from which it obtained Mr. Alderman's information.

64.    Mr. Alderman has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

65.    InsideView has injured Mr. Alderman by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

66.    InsideView's illegal actions caused Mr. Alderman mental injury and disturbed his peace of mind. Mr. Alderman is deeply uncomfortable in the knowledge that InsideView is using

his name and persona to advertise and as part of a commercial product he has no interest in supporting. Mr. Alderman believes his persona is rightly his to control. InsideView's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Alderman feels that InsideView's use of his name, persona, personal information, and browsing history is an alarming invasion of his privacy. Mr. Alderman believes that InsideView's collection and publication of personal details about him encourages and enables identity fraud. He believes InsideView's use of his personal information encourages and enables harassing marketing and sales communications.

**Plaintiff Dru Dominici**

67.     Plaintiff Dru Dominici has no relationship with InsideView. He is not a subscriber and has never used insideview.com.

68.     Mr. Dominici did not give consent to InsideView to use his name, likeness, personal information, or persona in any way. Had InsideView requested his consent, Mr. Dominici would not have provided it.

69.     InsideView uses Mr. Dominici's name and persona in advertisements promoting website subscriptions.

70.     InsideView publicly displays a profile of personal information about Mr. Dominici on the Internet. The profile states his name, city of residence, phone number, place of work, job title, educational history, and college GPA. The profile uniquely identifies Mr. Dominici. A screenshot depicting the profile is shown below. For privacy, Plaintiffs' counsel have redacted Mr. Dominici's place of work, phone number, educational history, and college GPA. In the original profile appearing on the InsideView website, this information is plainly visible.



71.     InsideView provides a publicly accessible landing page at insideview.com on which users may search, and have searched, for Mr. Dominici by name. Anyone who creates a free account on InsideView may access the landing page and search for Mr. Dominici without needing to pay for a subscription. The landing page is shown below. For privacy, Plaintiff's counsel have redacted Mr. Dominici's place of work, which is plainly visible on the website published by InsideView:



72.     Users who searched for Mr. Dominici and clicked on the pop-up beneath the search bar were shown the profile of Mr. Dominici that appears in paragraph 70 above.

73.     Users who attempted to download Mr. Dominici's information by clicking the "Export" button on his profile received a pop-up message prompting them to "Upgrade to InsideView Pro" at a cost of $99 per month.

74.     Users who attempted to add Mr. Dominici's name to a list of potential contacts by clicking the "Build a list" button on his profile, or who clicked the large red button marked "Upgrade to Pro," also received the pop-up message prompting them to "Upgrade to InsideView Pro."

75.     InsideView advertised that users who purchased an "InsideView Pro" subscription would receive additional information about Mr. Dominici, including:

      g.   Mr. Dominici's social media posts and social media posts about him;

      h.   The ability to "automatically follow" Mr. Dominici and receive automated information whenever his personal information changes;

      i.   Information about Mr. Dominici's "web . . . behavior and content consumption" that may "suggest [he's] in the market to buy particular products and services."

76.    InsideView advertises that users who purchase an "InsideView Pro" subscription will receive similar information about millions of other individuals in addition to Mr. Dominici.

77.    The pop-up message InsideView showed on top of Mr. Dominici's profile is substantially similar to the message it showed on top of Mr. Gbeintor's profile, depicted in paragraph 41 above, except that Mr. Dominici's name and personal information appeared in place of Mr. Gbeintor's.

78.    Users who clicked "Upgrade to Pro" on the pop-up message received a payment screen prompting the purchase of a subscription for $99 per month. The payment screen is substantially similar to the screen depicted in paragraph 42 above.

79.    InsideView's purpose in using Mr. Dominici's name, personal information, and persona on its website is to solicit the purchase of paid subscriptions to InsideView Pro.

80.    Mr. Dominici does not know how InsideView obtained his name and personal information. InsideView advertises that it gathers information from "40,000+ sources."

81.    InsideView misappropriated Mr. Dominici's personal information and persona without permission from Mr. Dominici. On information and belief, InsideView misappropriated Mr. Dominici's personal information and persona without permission from the sources from which it obtained Mr. Dominici's information.

82.    Mr. Dominici has intellectual property and privacy interests in his name, likeness, and persona recognized by California and Ohio statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

83.    InsideView has injured Mr. Dominici by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

84.    InsideView's illegal actions caused Mr. Dominici mental injury and disturbed his peace of mind. Mr. Dominici is deeply uncomfortable in the knowledge that InsideView is using his name and persona to advertise and as part of a commercial product he has no interest in supporting. Mr. Dominici believes his persona is rightly his to control. InsideView's illegal use has left him worried and uncertain about his inability to control how his name and persona is

used. Mr. Dominici feels that InsideView's use of his name, persona, personal information, and browsing history is an alarming invasion of his privacy. Mr. Dominici believes that InsideView's collection and publication of personal details about him encourages and enables identity fraud. He believes InsideView's use of his personal information encourages and enables harassing marketing and sales communications.

## CLASS ACTION ALLEGATIONS

85.     Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) and seeks to represent the following Classes:

Nationwide Class: All people in the United States who are not InsideView subscribers and whose names and personal information InsideView incorporated in profiles used to promote paid subscriptions.

Ohio Sub-Class: All Ohio residents who are members of the Nationwide Class.

86.     Excluded from the proposed Classes are Plaintiffs' counsel; InsideView, its officers and directors, counsel, successors, and assigns; any entity in which InsideView has a controlling interest; and the judge to whom this case is assigned and the judge's immediate family.

87.     The members of the proposed Classes are so numerous that joinder of individual claims is impracticable. InsideView advertises that it has profiles on "100M+ decision-makers" including "57.5 million" individuals in North America. The Nationwide Class and Ohio Sub-Class each likely comprise tens of millions of people.

88.     There are significant questions of fact and law common to the members of the Nationwide Class. These include:

a.     Whether InsideView's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the knowing use without consent of another's name, photograph, or likeness on or in products or for purposes of advertising products within the meaning of Cal. Civ. Code § 3344;

b.   Whether InsideView solicited and obtained written consent from Plaintiffs and the Class prior to using their personas in advertisements promoting its website, as required by Cal. Civ. Code § 3344;

c.   Whether InsideView's use of Plaintiff's and Class Members' names and personal information in advertisements and as part of their subscription products falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of Cal. Civ. Code § 3344;

d.   The amount of InsideView's "profits from the unauthorized use" of Plaintiff's and Class Members' names and personal information;

e.   Whether InsideView's conduct described in this Complaint violates California common law prohibiting misappropriation of a name or likeness and California's UCL;

f.   Whether Plaintiffs and Class Members are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

89.   There are significant questions of fact and law common to the members of the Ohio Sub-Class. These include:

a.   Whether InsideView's misappropriation of names and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the use of aspects of individuals' personas for a commercial purpose without previous written consent within the meaning of Ohio Rev. Code § 2741.02;

b.   Whether the Ohio Sub-Class Members gave written consent to the use of their names, photographs, images, likenesses, distinctive appearances, and personas to promote InsideView's products as required by Ohio Rev. Code § 2741.02;

c.   Whether InsideView's commercial use of aspects of the Sub-Class Members' personas was "in connection with any news, public affairs, sports broadcast,

or account." *See* Ohio Rev. Code § 2741.02(D)(1);

    d.   Whether InsideView's commercial use of aspects of the of the Ohio Sub-Class Members' personas was willful; the extent to which InsideView is able to pay statutory damages; and the extent of the harm to the Ohio Sub-Class Members, all of which are relevant to determining the amount of statutory damages under Ohio Rev. Code § 2741.07;

    e.   Whether InsideView's conduct entitles the Ohio Sub-Class Members to punitive or exemplary damages under Ohio Rev. Code § 2741.07 and Ohio Rev. Code § 2315.21;

    f.   Whether InsideView's conduct as described in this Complaint violates Ohio common law prohibiting misappropriation of a name or likeness; and

    g.   Whether Plaintiff Dominici and the Ohio Sub-Class Members are entitled to the injunctive, declaratory monetary, and other relief requested in this Complaint.

90.    The Plaintiffs' claims are typical of those of the proposed Nationwide Class and Ohio Sub-Class. Plaintiffs and all members of the proposed Classes have been harmed by InsideView's misappropriation and misuse of their identifies, names, likenesses, personas, and other personal information in advertisements promoting subscriptions. InsideView presents its advertisements in the same way for each Class member. The Ohio Sub-Class is comprised of members whose intellectual property and privacy rights are protected by the Ohio laws protecting the corresponding named Plaintiffs.

91.    The proposed class representatives will fairly and adequately represent the proposed Classes. The class representative's claims are co-extensive with those of the rest of the Classes. Plaintiffs are represented by qualified counsel experienced in class action litigation of this nature.

92.    A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Classes is impracticable. Many members of the Classes do not have the financial

resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning InsideView's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

93.     The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. InsideView has acted on grounds generally applicable to the proposed Classes, such that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

94.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class Members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

## FIRST CAUSE OF ACTION

### Violation of California Right of Publicity Statute, Cal. Civ. Code § 3344

<u>Plaintiffs Gbeintor, Alderman, and Dominici on behalf of the Nationwide Class</u>

95.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

96.     California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

97.     By engaging in the foregoing acts and omissions, InsideView used Plaintiffs' and Nationwide Class Members' names, likenesses, photographs, and personas for commercial purposes without consent. Plaintiffs' and Class Members' names and personas have commercial value as demonstrated by InsideView's use and similar use by InsideView's competitors.

98.     Each use of a Class Members' name and personal information in a teaser profile or full profile is a separate and distinct violation of Cal. Civ. Code § 3344.

99.     Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

100.    As a result of InsideView's violation of Cal. Civ. Code § 3344, Plaintiffs and the Nationwide Class have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiffs and Class Members have been denied the economic value of their names, likenesses, and personas, which InsideView misappropriated without compensation to Plaintiffs and the Class. Plaintiffs and the Class Members were denied their statutorily protected right to refuse consent and protect their privacy and the economic value of their names, likenesses, and personas. Plaintiffs and the Class Members suffered emotional disturbance from the misappropriation and misuse of their names and personal information.

101.    Plaintiffs on behalf of the Nationwide Class seek: actual damages, including InsideView's profits from its misuse; statutory damages; compensatory damages for the royalties InsideView failed to pay; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting InsideView's illegal conduct; and declaratory relief.

## SECOND CAUSE OF ACTION

### California Tort of Appropriation of a Name or Likeness

#### Plaintiffs Gbeintor, Alderman, and Dominici on behalf of the Nationwide Class

102.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

103.    California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

104.    By engaging in the forgoing acts and omissions, InsideView (1) used the identities of Plaintiffs and the Class in advertisements for subscriptions and as part of its

subscription products; (2) appropriated Plaintiffs' and Class Members' names and likenesses to InsideView's commercial advantage; (3) failed to obtain Plaintiffs' and Class Members' consent; and (4) injured Plaintiffs and Class Members by causing harm both economic and emotional. *See Eastwood,* at 417.

105.     Plaintiffs on behalf of the Nationwide Class seek monetary recovery in the amount of the commercial advantage InsideView's derived from its misuse, compensatory damages for InsideView's failure to pay royalties owed, and the entry of an injunction prohibiting InsideView's tortious acts.

**THIRD CAUSE OF ACTION**

**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.**

Plaintiffs Gbeintor, Alderman, and Dominici on behalf of the Nationwide Class

106.     Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

107.     InsideView has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 *et seq*. ("UCL").

108.     As described in this complaint, InsideView's misappropriation and use without consent of Plaintiffs' and Nationwide Class Members' names, photographs, likenesses, and personal information is a violation of California's Right of Publicity statute, Cal. Civ. Code § 3344 and California common law prohibiting misappropriation of a name or likeness.

109.     By engaging in the conduct described in this complaint and violating California law, InsideView engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

110.     By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, InsideView engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

111.     As a result of InsideView's actions, Plaintiffs and Nationwide Class Members have been injured. Plaintiffs and Class Members lost the economic value of their names,

personas, and likenesses, and are entitled to restitution, declaratory relief and an injunction.
Plaintiffs and Class Members were denied their rights to refuse consent and protect their privacy.

**FOURTH CAUSE OF ACTION**

**Ohio Right of Publicity Statute, Ohio Rev. Code § 2741**

<u>Plaintiff Dominici on behalf of the Ohio Sub-Class</u>

112.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

113.    Ohio's right of publicity statute prohibits the use of "any aspect of an individual's persona for a commercial purpose" unless the person "first obtains the written consent" of the individual. Ohio Rev. Code § 2741.02 & § 2741.05.

114.    By engaging in the forgoing acts and omissions, InsideView used aspects of Plaintiff Dominici's and the Ohio Sub-Class Members' personalities, including their names, photographs, images, likenesses, and distinctive appearances, for a commercial purpose without consent. These aspects of Plaintiff Dominici's and the Ohio Sub-Class Members' personalities have commercial value, as evidenced by InsideView's use and similar use by other companies.

115.    Each use of an Ohio Sub-Class Members' personality is a separate and distinct violation of Ohio Rev. Code § 2741.02.

116.    Plaintiff Dominici and the Ohio Sub-Class Members are residents of the state of Ohio. *See* Ohio Rev. Code § 2741.03.

117.    Ohio Rev. Code § 2741.07 provides that a person who violates the statute is liable for (1) "[a]ctual damages, including any profits derived from and attributable to the unauthorized use"; (2) "[a]t the election of the plaintiff and in lieu of actual damages, statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars"; and (3) "punitive or exemplary damages" if applicable under Ohio Rev. Code § 2315.21. The statute provides that "[t]he trier of fact shall include any profits derived . . in calculating the award of actual damages." Ohio Rev. Code § 3741.07.

118.    Because of InsideView's violation of Ohio Rev. Code § 2741, Plaintiff Dominici and the Ohio Sub-Class have suffered injury to their privacy and intellectual property rights, and

actual damages both economic and emotional, including actual damages in the amount of the profits InsideView derived from its unauthorized use. Plaintiff Dominici and the Ohio Sub-Class have been denied the economic value of their personas, which InsideView appropriated without compensation. Plaintiff Dominici and the Ohio Sub-Class were denied their statutorily protected right to refuse consent and protect their privacy. Plaintiff Dominici and the Ohio Sub-Class suffered emotional disturbance from the appropriation and misuse of their personas.

119.    On behalf of the Ohio Sub-Class, Plaintiff Dominici seeks statutory damages; actual damages, including InsideView's profits from its misuse; compensatory damages for royalties InsideView failed to pay; restitution, punitive and exemplary damages; the award of attorneys' fees and costs; an injunction prohibiting InsideView's unauthorized use; and declaratory relief. Plaintiff Dominici intends to elect between actual and statutory damages at a later stage of the lawsuit, after discovery has revealed the amount of InsideView's profits.

### FIFTH CAUSE OF ACTION

### Ohio Tort of Appropriation of a Name or Likeness

Plaintiff Dominici on behalf of the Ohio Sub-Class

120.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

121.    Ohio common law recognizes the tort of appropriation of a name or likeness. The tort creates a cause of action for the appropriation of a likeness by a defendant for the defendant's "own use or benefit." *See, e.g.*, *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St. 2d 224, 231 n. 4 (Ohio 1976) (quotation omitted).

122.    By engaging in the forgoing acts and omissions, InsideView appropriated Plaintiff Dominici's and the Ohio Sub-Class Members' names and likenesses for its own commercial benefit.

123.    As provided for under Ohio common law, on behalf of the Ohio Sub-Class, Plaintiff Dominici seeks monetary recovery in the amount of the commercial benefit InsideView derived from its misuse of their likeness, as well as the entry of an injunction prohibiting InsideView's tortious acts.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of the Nationwide Class and Ohio Sub-Class, requests the following relief:

(a) For an order certifying the proposed Classes and appointing Plaintiffs and their counsel to represent the Classes;

(b) For a declaration that InsideView's acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on protected privacy and intellectual property rights, in violation of California and Ohio statutory and common law;

(c) For nominal damages awarded in recognition of InsideView's violation of the statutorily protected property and privacy rights of Plaintiffs and the Class Members;

(d) For preliminary and permanent injunctive relief enjoining and preventing InsideView from continuing to operate its website without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e) For restitution for Plaintiffs and Class Members for the value that Defendants derived from misappropriating their names, likenesses, photographs, and personas;

(f) For an award of damages, including without limitation damages for actual harm, profits earned by InsideView in using misappropriated names and identities to sell subscriptions, reasonable royalties for the infringement of Plaintiffs and Class members' intellectual property rights, and statutory damages;

(g) For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the Class Members; and

(h) Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: April 1, 2022                    By:    */s/ Michael F. Ram*
                                              Michael F. Ram

                                        Michael F. Ram (SBN 104805)
                                        mram@forthepeople.com
                                        Marie N. Appel (SBN 187483)
                                        mappel@forthepeople.com
                                        MORGAN & MORGAN
                                        COMPLEX LITIGATION GROUP
                                        711 Van Ness Avenue, Suite 500
                                        San Francisco, CA 94102
                                        Telephone: (415) 358-6913
                                        Facsimile: (415) 358-6923

                                        Benjamin R. Osborn (to be admitted *Pro
                                        Hac Vice*)
                                        102 Bergen St.
                                        Brooklyn, NY 11201
                                        Telephone: (347) 645-0464
                                        Email: ben@benosbornlaw.com

                                        Sam Strauss (to be admitted *Pro Hac Vice*)
                                        sam@turkestrauss.com
                                        Raina Borrelli (to be admitted *Pro Hac
                                        Vice*)
                                        raina@turkestrauss.com
                                        TURKE & STRAUSS LLP
                                        613 Williamson St., Suite 201
                                        Madison, Wisconsin 53703-3515
                                        Telephone: (608) 237-1775
                                        Facsimile: (509) 4423

                                        *Attorneys for Plaintiffs*
                                        *and the Proposed Classes*