KEKER, VAN NEST & PETERS LLP
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
CODY GRAY - # 310525
cgray@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants
DEMANDBASE, INC., and
INSIDEVIEW TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| AMOS GBEINTOR, WILTON ALDERMAN, and DRU DOMINICI, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEMANDBASE, INC., and INSIDEVIEW TECHNOLOGIES, INC.,<br><br>    Defendants. | Case No. 4:21-cv-09470-HSG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO STRIKE UNDER CALIFORNIA'S ANTI-SLAPP STATUTE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:         November 10, 2022<br>Time:         2:00 p.m.<br>Courtroom:   2 —4th Floor<br>Judge:         Hon. Haywood S. Gilliam, Jr.<br><br>Date Filed:  December 8, 2021<br><br>Trial Date:  N/A. |

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION COMPLAINT
Case No. 4:21-cv-09470-HSG

1824359

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3  DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE. v**Error!**
      **Bookmark not defined.**

4

I.      INTRODUCTION ...........................................................................................................1

5

II.     BACKGROUND ...........................................................................................................3

6

        A.      Defendants publish an online database of information about companies and

7               organizations, and their employees, to facilitate business-to-business sales. ..............3

8       B.      Plaintiffs sued to suppress publication of their already-public biographical and
                professional contact information in Defendants' online database...............................4

9

III.    LEGAL STANDARD ....................................................................................................6

10

IV.     ARGUMENT ................................................................................................................6

11

        A.      Plaintiffs lack standing and have failed to state any claim because they have

12              not alleged any plausible injury resulting from Defendants' publication. ..................6

13              1.      Plaintiffs do not allege a plausible and cognizable economic injury...........7

14              2.      Plaintiffs do not allege a plausible and cognizable emotional injury. .......11

15      B.      Plaintiffs' right-of-publicity claims fail because they have not alleged that
                Defendants appropriated their identities for an unrelated commercial use. ...............12

16

        C.      The First Amendment bars Plaintiffs' attempt to prevent Defendants' speech..........14

17
                1.      Defendants' public publication is protected speech...................................14
18

                2.      Strict scrutiny governs Plaintiffs' effort to restrict Defendants'
19                      speech.......................................................................................................17

20              3.      Plaintiffs' claims cannot survive review under strict scrutiny..................19

21      D.      Plaintiffs' statutory right-of-publicity claims fail because Defendants' speech
                falls within those statutes' "public affairs" and "public interest" exceptions. ...........20

22

        E.      Plaintiffs' UCL claims fail because they are derivative of their other claims............23

23

        F.      Plaintiffs' claims should be stricken under California's anti-SLAPP statute. ...........24

24

V.      CONCLUSION ...........................................................................................................25

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*In re Actimmune Mktg. Litig.*,
2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .................................................... 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 6

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ........................................................................ 16, 17

*Brooks v. Thompson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .................................... 12, 13, 23

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. Jun. 15, 2021) ...................................... 10, 11, 12

*Callahan v. Ancestry.com Inc.*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .......................................... 8, 10, 11

*CBC Distrib. and Mktg., Inc. v. Major League Baseball Adv. Media,
L.P.*,
505 F.3d 818 (8th Cir. 2007) ................................................................. 16

*CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*,
259 F.R.D. 398 (2009) ......................................................................... 16

*Cher v. Forum Int'l, Ltd.*,
692 F.2d 634 (9th Cir. 1982 ................................................................. 17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................... 12

*Cohen v. Facebook, Inc.*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................. 7, 11

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) .......................................................................... 20

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ............................................... 15, 17

*Davis v. Elec. Arts, Inc.*,
 2017 WL 8948081 (N.D. Cal. Feb. 2, 2017) ......................................................... 5

*Del Vecchio v. Amazon.com, Inc.*,
 2012 WL 1997697 (W.D. Wash. Jun. 1, 2012) ...................................................... 7

*Dex Media W., Inc. v. City of Seattle*,
 696 F.3d 952 (9th Cir. 2012) ................................................................ 16, 18, 22

*In re Doubleclick, Inc., Privacy Litig.*,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................. 8

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001) ........................................................................ 12, 15

*Eidmann v. Walgreen Co.*,
 522 F. Supp. 3d 634 (N.D. Cal. 2021) ............................................................... 23

*ETW Corp. v. Jireh Pub., Inc.*,
 332 F.3d 915 (6th Cir. 2003) ............................................................................. 15

*Fraley v. Facebook, Inc.*,
 830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................................. 9, 10

*Gooding v. Wilson*,
 405 U.S. 518 (1972) ......................................................................................... 21

*In re Google Assistant Priv. Litig.*,
 457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................. 7

*In re Google, Inc. Privacy Policy Litig.*,
 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................................. 7, 8, 9

*Hilton v. Hallmark Cards*,
 599 F.3d 894 (9th Cir. 2009) ............................................................................. 12

*IMDb.com Inc. v. Becerra*,
 962 F.3d 1111 (9th Cir. 2020) ............................................................. 17, 18, 19, 20

*In re iPhone Application*,
 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................................................... 10

*In re Jetblue Airways Corp. Privacy Litig.*,
 379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................. 8

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION COMPLAINT
Case No. 4:21-cv-09470-HSG

1824359

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................................ 6

*LaCourt v. Specific Media, Inc.*,
  2011 WL 1661532 (N.D. Cal. Apr. 28, 2011) ................................... 10

*Low v. LinkedIn Corp.*,
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................... 8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................... 6, 8

*Matthews v. Wonzencraft*,
  15 F.3d 432 (5th Cir. 1994) ............................................................... 16

*McCullen v. Coakley*,
  573 U.S. 464 (2014) ........................................................................... 20

*Midler v. Ford Motor Co.*,
  849 F.2d 460 (9th Cir. 1988) ............................................................. 12

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ............................................................. 20

*New Kids On The Block v. News America Pub. Inc.*,
  745 F. Supp. 1540 (C.D. Cal. 1990) ................................................... 22

*Ojmar US, LLC v. Sec. People, Inc.*,
  2017 WL 3301214 (N.D. Cal. Aug. 2, 2017) ....................................... 3

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ................................... 4, 9, 10, 11

*Punian v. Gillette Co.*,
  2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ................................... 23

*Roe v. Amazon.com*,
  714 F. App'x 565 (6th Cir. 2017) .................................................. 8, 13

*Rose and Raymond Parks Inst. For Self Dev. v. Target Corp*,
  90 F. Supp. 3d 1256 (M.D. Ala. 2015) ............................................... 16

*Ruffin-Steinbeck v. dePasse*,
  82 F. Supp. 2d 723 (E.D. Mich. 2000) ............................................... 16

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION COMPLAINT
Case No. 4:21-cv-09470-HSG

1824359

*Sarver v. Chartier,*
   813 F.3d 891 (9th Cir. 2016) ................................................................ 18, 24, 25

*Seale v. Gramercy Pictures,*
   949 F. Supp. 331 (E.D. Pa. 1996) ................................................................. 16

*Silha v. ACT, Inc.,*
   2014 WL 11370440 (N.D. Ill. Sept. 2, 2014) .................................................. 7

*Smith v. Daily Mail Publ'g Co.,*
   443 U.S. 97 (1979) ................................................................................. 20

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ................................................................................ 9

*Toney v. L'Oreal USA, Inc.,*
   406 F.3d 905 (7th Cir. 2005) ................................................................... 12

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ............................................................................. 6

*United Tactical Sys., LLC v. Real Action Paintball, Inc.,*
   143 F. Supp. 3d 982 (N.D. Cal. 2015) ........................................................ 24

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
   425 U.S. 748 (1976) ........................................................................... 18, 20

*Vrdolyak v. Avvo, Inc.,*
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ..................................................... 16, 22

*Waits v. Frito-Lay, Inc.,*
   978 F.2d 1093 (9th Cir. 1992) ................................................................. 12

*Wendt v. Host Int'l, Inc.,*
   125 F.3d 806 (9th Cir. 1997) ................................................................... 12

*White v. Samsung Elecs. Am., Inc.,*
   971 F.2d 1395 (9th Cir. 1992) ................................................................. 12

*Winters v. New York,*
   333 U.S. 507 (1948) ............................................................................... 15

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,*
   471 U.S. 626 (1985) ............................................................................... 18

**State Cases**

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017) .................................................................. 13, 24, 25

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) ................................................................ 21, 22, 23

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) ...................................................................... 12, 16

*Guglielmi v. Spelling-Goldberg Prods.*,
    25 Cal. 3d 860 (1979) ........................................................................... 14, 15, 17

*Harvey v. Sys. Effect, LLC*,
    154 N.E. 3d. 293 (Ohio Ct. App. 2020) .................................................. 9, 13, 21

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (2020) ............................................................................. 6

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (1995) ........................................................................... 23

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) ....................................................................... 25

*Ruiz v. Harbor View Cmty. Ass'n*,
    134 Cal. App. 4th 1456 (2005) ....................................................................... 25

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) .................................................................................... 22

*Slivinsky v. Watkins-Johnson Co.*,
    221 Cal. App. 3d 799 (1990) .................................................................... 6, 9, 11

*Young v. Bank of Am.*,
    141 Cal. App. 3d 108 (1983) .......................................................................... 11

*Zacchini v. Scripps-Howard Broad. Co.*,
    47 Ohio St. 2d 224 (1976) ............................................................................... 7

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Civ. Code § 3344................................................................................5, 11

Cal. Civ. Code § 3344(a) ...............................................................................15

Cal. Civ. Code § 3344(d) ..............................................................................20

Cal. Civ. Proc. Code § 425.16(b)(1)..............................................................24

Cal. Civ. Proc. Code § 425.16(b)(2)..............................................................25

Ohio Rev. Code Ann. § 2741.01(B) ..............................................................13

Ohio Rev. Code § 2741 ...................................................................................5

Ohio Rev. Code § 2741.07 ..............................................................................6

Ohio Rev. Stat. § 2741.09(A)(1) ..............................................................21, 22

Ohio Rev. Stat. § 2741.09(A)(3) ..............................................................20, 21

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION COMPLAINT
Case No. 4:21-cv-09470-HSG

1824359

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 10, 2022 at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2, 4th Floor of the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California, 94612, Defendants Demandbase, Inc. and InsideView Technologies, Inc. (jointly, "Defendants") will and hereby do move to dismiss the class action complaint filed by Plaintiffs Amos Gbeintor, Wilton Alderman, and Dru Dominici (jointly, "Plaintiffs") with prejudice for lack of subject matter jurisdiction and failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, to strike their class action complaint pursuant to California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16.

This motion is based on this notice of motion and motion, the memorandum of points and authorities, Defendants' request for judicial notice, the Declaration of R. Adam Lauridsen and exhibits attached thereto, the proposed order, all pleadings and papers on file, the arguments of counsel, and any other matters that may properly come before the Court for its consideration.

**STATEMENT OF ISSUES**

1. Whether Plaintiffs have alleged a cognizable and plausible injury sufficient to confer Article III standing in federal court and for the purpose of stating their claims;

2. Whether Plaintiffs have stated right-of-publicity claims without alleging that Defendants used their name or likeness to make a false endorsement or advertise an unrelated product;

3. Whether the First Amendment to the U.S. Constitution protects Defendants' speech;

4. Whether Plaintiffs have failed to state their statutory right-of-publicity claims because Defendants' speech falls under various statutory exemptions for valuable speech;

5. Whether Plaintiffs have stated a claim under California's unfair competition law given that they have failed to state a plausible economic injury sufficient to confer statutory standing and have failed to state any predicate violation in support of the claim; and

6. Whether Plaintiffs' claims must be stricken pursuant to California's anti-SLAPP statute because Defendants' speech is protected activity and their claims are without merit.

1824359

1   Dated:  May 13, 2022                    KEKER, VAN NEST & PETERS LLP

2

3                                  By:    /s/ R. Adam Lauridsen
                                         R. ADAM LAURIDSEN
4                                        JULIA L. ALLEN
                                         CODY GRAY
5
                                         Attorneys for Defendants
6                                        DEMANDBASE, INC., and
                                         INSIDEVIEW TECHNOLOGIES, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION COMPLAINT
Case No. 4:21-cv-09470-HSG
1824359

## I.    INTRODUCTION

Defendants Demandbase, Inc. and InsideView Technologies, Inc. (jointly, "Defendants") publish an online database that contains biographical and professional contact information for employees of organizations and companies around the world.  Plaintiffs Amos Gbeintor, Wilton Alderman, and Dru Dominici assert state-law right of publicity claims that seek to bar Defendants from publishing their names, job titles, and places of work, even though ***Plaintiffs themselves*** have publicly posted all this basic information elsewhere for anyone to see.  In doing so, Plaintiffs effectively seek to establish a monopoly over their basic identifying information, regardless of whether that information has public value.  Unsurprisingly, Plaintiffs' claims suffer from several fatal defects.  But at their core, they attempt to impermissibly restrict Defendants' right to publish undisputedly true information on matters of interest to the general public.  If Defendants had published this information as a print encyclopedia, there would be no doubt over its legality.  The result should not and does not differ simply because Defendants publish their work online.  As such, Plaintiffs' claims should be dismissed, or stricken under California's anti-SLAPP statute.

***First,*** Plaintiffs lack Article III standing (and fail to state their claims) because they do not allege any plausible injury from Defendants' online publication of their basic biographical and professional contact information.  Plaintiffs assert in conclusory fashion that Defendants have misappropriated this "valuable intellectual property" by incorporating it into their speech, the InsideView database.  That is not the relevant test for economic injury.  Plaintiffs must show that this information—already publicly available—had some concrete commercial value to Plaintiffs, and that Defendants' speech then caused them to suffer an actual loss of that non-hypothetical commercial value.  Plaintiffs did not—and cannot—do so.  Defendants' alleged conduct did not diminish the value of Plaintiffs' biographical and professional contact information in any way.  Plaintiffs' claims of injury to their "privacy rights" and their "emotional" "peace of mind" fare no better.  Plaintiffs raise only speculative assertions of concern over things they muse might happen in the future (*e.g.*, possible identity theft) purportedly as a result of Defendants' publication of Plaintiffs' biographical and professional contact information.  But Plaintiffs already publicize this information, including on their LinkedIn profiles, to make it easier for members of the public to

locate and contact them for business purposes—the same use Defendants allegedly make of the information.  As such, Plaintiffs' conclusory allegations of emotional injury do not establish standing and, regardless, are not plausible given the basic, truthful information at issue here.

*Second,* Plaintiffs fail to state actionable right-of-publicity claims because Defendants do not make cognizable commercial use of their biographical and professional contact information. Simply because Defendants incorporate Plaintiffs' information into a work that is ultimately sold does not make that use commercial.  If this were the law, the right of publicity would dramatically restrict what could be incorporated in books, articles, movies, and all other works purchased by consumers.  But the right of publicity does not grant an absolute monopoly over a person's name, image, or likeness.  Rather, it protects individuals from a much narrower range of conduct:  when a defendant uses a plaintiff's identity for *unrelated* commercial advantage, such as to imply a false endorsement or to advertise a separate product.  Defendants make no such use of Plaintiffs' information.  Rather, Defendants include Plaintiffs' information in their larger work—an online database containing information about commercial enterprises.  And while Plaintiffs allege that Defendants use their contact information to advertise access to related content and features for a fee, that still is not a cognizable commercial use.  A publisher may use part of an underlying work to advertise or promote the larger work, as here.  Again, the right of publicity is implicated only when the advertisement or promotion involves a false endorsement or a *separate* product.

*Third,* Defendants' work is entitled to full First Amendment protection.  The law has long recognized the First Amendment right to publish biographical facts, regardless of whether such publication is authorized or not.  That First Amendment right does not diminish if the subject of the work is not a public figure.  But Plaintiffs seek to use the right of publicity to impose content-based restrictions on Defendants' speech.  Such content-based restrictions are subject to a high bar, and Ninth Circuit precedent holds that a plaintiff cannot meet it when seeking to challenge online databases offering public information, just like Defendants' work.  Similarly, Plaintiffs' statutory right-of-publicity claims under California and Ohio law have carve outs that provide equal or broader protection than the First Amendment for publications related to public issues. Defendants' work, which provides information about organizations and companies to those

1824359

looking to do business with those entities, must qualify for such statutory protection.

**Finally,** Plaintiffs' California UCL claims fail because they assert no plausible economic injury and are derivative of their baseless right-of-publicity claims.  Plaintiffs allege no other independent unlawful act, and their claims of unfair conduct by Defendants cannot stand alone.

For these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' legally defective claims with prejudice, or strike them under California's anti-SLAPP statute.

## II.  BACKGROUND

### A.  Defendants publish an online database of information about companies and organizations, and their employees, to facilitate business-to-business sales.

Business-to-business sales often involve months-long purchasing decisions that are made by large groups of people.  With these types of sales, it can be difficult to find the *right* contact at each prospective customer; to understand *when* a company is "in-market" to make a purchase; or to obtain useful *intelligence* about the prospective customer to see if they are a fit for a product.

Demandbase is a software company that wants to transform the way that business-to-business sales and marketing teams "go to market"—*i.e.*, spot and engage prospective business customers to make successful sales pitches to them.  To do so, Demandbase offers a "smart" go-to-market software suite that enables business-to-business sales and marketing teams to obtain useful intelligence about target companies and put that intelligence into action at the right time. InsideView, which was acquired by Demandbase in May 2021, is a market intelligence platform that contains information on millions of companies and their employees.  Compl. ¶¶ 1–8, 29–30, 40.[1]  Its database includes company financials, employee counts, market segments, and industries, as well as biographical data (name, city of residence, educational history) and professional-contact information (job title, work phone number, work email) for a company's employees.  *Id.* ¶ 4.  All this information is packaged as a company profile entry in the InsideView database.

---

[1] Plaintiffs' complaint explains that "InsideView is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit."  *Id.* ¶ 9.  Indeed, there is only one specific allegation about Demandbase in Plaintiffs' complaint, and it is entirely conclusory. *See id.* ¶ 30 ("On information and belief, Defendant Demandbase controls Defendant InsideView Technologies, Inc. and made many of the decisions giving rise to this Complaint.").  *See Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2017 WL 3301214, at *2 (N.D. Cal. Aug. 2, 2017) (dismissing an individual defendant for lack of specific allegations of misconduct).

1    Using Defendants' products, a salesperson at a software company, for example, can

2 quickly and easily search for and create a list of all the semiconductor companies in Northern

3 California with annual revenue above $50 million, analyze important business information about

4 those companies, obtain biographical and professional contact information for the personnel that

5 are driving the companies' purchasing decisions, and target each potential customer at the

6 appropriate time.  Defendants' products not only help persons identify and contact these potential

7 customers, but also selectively collect and compile information to help persons learn about them.

8        **B.    Plaintiffs sued to suppress publication of their already-public biographical
              and professional contact information in Defendants' online database.**

9

10    Plaintiffs filed their operative complaint on April 1, 2022.  Dkt. 30 ("Compl.").  Plaintiff

11 Gbeintor is a California citizen who has worked for the California state government for more than

12 twenty years in the information technology space.  His employment-related information is thus

13 public.  And his public LinkedIn profile displays his name, image, city of residence, employment

14 history (including current place of work), work address, job title, educational background, and

15 licenses and certifications.  *See* Defendants' Request for Judicial Notice ("RJN"), Ex. A.[2]  In fact,

16 when he filed his original complaint, he filed all this information on the docket.  Dkt. 1 at 7.

17    Plaintiff Alderman is also a California citizen who has worked for California state and

18 local governments for the last eight years in the contract management and procurement space.

19 His employment-related information is thus also public.  Just like Plaintiff Gbeintor, his public

20 LinkedIn profile displays his name, image, city of residence, employment history (including

21 current place of work), job title, and educational background (including his GPA).  *Id.*, Ex. B.

22    And Plaintiff Dominici is an Ohio citizen who works for a clothing retailer.  His public

23 LinkedIn profile, too, displays his name, image, city of residence, employment history (including

24 current place of work), job title, and educational background (including his GPA).  *Id.*, Ex. C.

25    Notwithstanding the fact that Plaintiffs publicly posted their biographical and professional

26 ────────────────
27 [2] As set out in detail in Defendants' concurrently-filed request for judicial notice, the Court may
take judicial notice of the fact that Plaintiffs' LinkedIn profiles are available to the public, as well
as their contents, even if it may not take judicial notice of the truth of the matters asserted therein.
28 *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014) ("Proper subjects of
judicial notice when ruling on a motion to dismiss include . . . publicly accessible websites[.]").

contact information online, Plaintiffs say that InsideView's creation of online profile pages that list their "names, contact information, job titles, places of work, education histories, [and] cities of residence" has invaded their privacy, stolen their "valuable intellectual property," and caused them to suffer "emotional disturbance." Compl. ¶¶ 1, 19, 34, 52, 70; *see also* RJN, Exs. A–C.[3] Specifically, Plaintiffs complain that members of the general public may create an account on InsideView's website and search for individuals, including them, by name. *Id.* ¶ 33. Then, by clicking the "pop-up beneath the search bar," these users can access Plaintiffs' publicly-available profiles. *Id.* ¶¶ 36, 54, 72. Plaintiffs allege that the basic biographical and professional contact information in these profiles misappropriates their publicity rights. *Id.* ¶¶ 45, 63, 81.

Further, Plaintiffs allege that their profiles contains "export" and "build a list" buttons that, if clicked, launch a window that asks users if they would like to upgrade to InsideView Pro. *Id.* ¶¶ 37–38, 55–56, 73–74. By their own account, Plaintiffs' contact information **does not appear** in these pop-up windows. *See id.* If a user then clicks the "Upgrade to Pro" button, the user is taken to another screen through which she can purchase InsideView Pro. *Id.* ¶¶ 37–42, 55–59, 73–77. This upgrade is not for a single person's information—it is for general access to the additional content and features of the InsideView database that Defendants provide. *See id.*

On the basis of these allegations, Plaintiffs assert claims for violation of (1) California's right-of-publicity statute (Cal. Civ. Code § 3344); (2) misappropriation of a name or likeness under California common law; (3) the "unlawful" and "unfair" prongs of California's UCL (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); (4) Ohio's right-of-publicity statute (Ohio Rev. Code § 2741) (on behalf of Plaintiff Dominici only); and (5) appropriation of a name or likeness under Ohio common law (also on behalf of Plaintiff Dominici only). *Id.* ¶¶ 95–123. For their claims under California law, Plaintiffs all seek to certify a nationwide class of persons whose names and personal information were used by InsideView to create profiles, while Plaintiff Dominici alone seeks to certify an Ohio-only subclass for his Ohio law right-of-publicity claims. *Id.* ¶¶ 85–94.[4]

---

[3] Plaintiffs Alderman and Dominici also complain that their GPAs are displayed. *Id.* ¶¶ 52, 70. But those Plaintiffs also publicly posted their GPAs on their LinkedIn profiles. RJN, Exs. B & C.

[4] Defendants contest that California law may apply to a nationwide class or to the Ohio subclass, but the Court need not take up those issues unless it reaches class certification. *See, e.g.*, *Davis v. Elec. Arts, Inc.*, 2017 WL 8948081, at *4 (N.D. Cal. Feb. 2, 2017) (holding that a nationwide

1

III.     **LEGAL STANDARD**

2

To establish Article III standing to sue in federal court, Plaintiffs must demonstrate that

3

(1) they have suffered an "injury in fact—an invasion of a legally protected interest which is []

4

concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that

5

the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as

6

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v.*

7

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Plaintiffs bear the burden of establishing

8

Article III standing.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

9

A complaint must also provide sufficient allegations to "state a claim to relief that is plausible on

10

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "Threadbare recitals of the elements of a

11

cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

12

IV.     **ARGUMENT**

13

A.     **Plaintiffs lack standing and have failed to state any claim because they have**
       **not alleged any plausible injury resulting from Defendants' publication.**

14

15

Actual or imminent injury is a subject-matter jurisdictional requirement imposed by

16

Article III of the Constitution.  *See Lujan*, 504 U.S. at 560–61 (Article III standing requirements).

17

The U.S. Supreme Court has explained that the traditional harms recognized by federal courts as

18

cognizable sources of injury-in-fact include "physical, monetary, or cognizable intangible harm."

19

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021).  Cognizable intangible harms include

20

"reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 2204.

21

Each of Plaintiffs' claims under California and Ohio law also require a resulting injury to

22

establish a violation.  *See Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990)

23

("resulting injury" is an element of statutory and common law right-of-publicity claims under

24

California law); *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020) (a California UCL

25

claim may be brought only "by a person who has suffered injury in fact and has lost money or

26

property as a result of the unfair competition"); Ohio Rev. Code § 2741.07 (relief under Ohio law

27

28

class may not be certified under California's right of publicity statute).  Even if one assumes state
law may be applied as Plaintiffs propose, Plaintiffs' claims fail for the reasons explained below.

1824359

is limited to any "person injured" by a right-of-publicity violation); *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 232, (1976), *rev'd and remanded on other grounds by*, 433 U.S. 562 (1977) (common-law right-of-publicity claim under Ohio law is predicated upon an invasion of privacy).  Thus, "[r]esulting injury is the sine qua non of a cause of action for misappropriation of name," and "the conclusory assertion" that plaintiffs "have suffered injury-in-fact by having their name[s] and likeness[es] misappropriated without their knowledge or consent" is insufficient to plausibly plead injury.  *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011).

Yet Plaintiffs have not plausibly alleged any cognizable injury based on Defendants' publication of basic information about themselves that Plaintiffs themselves have made public. This information has no plausible economic value to Plaintiffs, and their claim of intangible harm to their "emotional" "peace of mind" is conclusory and implausible given they made it public.

### 1.       Plaintiffs do not allege a plausible and cognizable economic injury.

Plaintiffs seek to manufacture an economic injury in two ways.  Both attempts fail.

*First*, Plaintiffs claim that Defendants injured them by "unlawfully profiting" from the use of their basic biographical and professional contact information.  Compl. ¶¶ 47, 65, 83.  But, as a matter of law, a defendant's alleged gain does not establish that the plaintiff herself suffered an economic injury.  Indeed, courts have consistently rejected that position.  *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own.");  *Silha v. ACT, Inc.*, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("[T]hat Defendants profited from selling Plaintiffs' [personal information] does not amount to an injury in fact for standing purposes.");  *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *4 (W.D. Wash. Jun. 1, 2012) ("It is not enough to allege only that the information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment.");  *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 840 (N.D. Cal. 2020) (lost profits do not establish an economic injury sufficient to confer statutory standing under the UCL.  Plaintiffs cannot establish an economic injury based on Defendants' profits.

*Second*, Plaintiffs assert that their "names" and "personas" must "have commercial value"

because Defendants allegedly "use[d]" the information to solicit paid subscriptions to InsideView Pro, and that this solicitation somehow injured Plaintiffs by denying them the unidentified "economic value" of their names and personas.  Comp. ¶¶ 11, 97, 100.  This bare assertion that Defendants denied them some non-quantified "economic value" of their names and/or personas— bereft of any supporting allegations—is not sufficient to establish an injury, to say nothing of a "concrete and particularized" injury that is "not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  "[A] plaintiff must allege how the defendant's use of the information deprived the plaintiff of the information's economic value." *Google Privacy Policy Litig.*, 2013 WL 6248499, at *5. Plaintiffs fail to sufficiently allege both concrete, specific value and the actual deprivation of it.

Right-of-publicity claims do not presume that a person's name or persona have inherent commercial value. *See, e.g.*, *Callahan v. Ancestry.com Inc.*,  No. 20-cv-08437-LB, 2021 WL 783524, at *5, (N.D. Cal. Mar. 1, 2021) ("*Callahan I*") (holding that plaintiffs did not adequately plead actual injury because they "did not show that they had a commercial interest in their images that precluded [the defendant's] use of them"); *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (unpublished) ("While plaintiffs need not be national celebrities to assert a right of publicity claim, they must at least 'demonstrate that there is value in associating an item of commerce with [their] identity.'") (quoting *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000)); *Low v. LinkedIn Corp.*, No. 11-cv-01468, 2011 WL 5509848, at *4–6 (N.D. Cal. Nov. 11, 2011) (holding that "allegations that the data collection industry generally considers consumer information valuable" were insufficient to establish standing where the plaintiff failed to allege "how he was foreclosed from capitalizing on the value of his personal data or how he was deprived of the economic value of his personal information") (cleaned up).[5]  But Plaintiffs have not alleged that they could have profited on their own from selling their biographical and professional contact information, or that Defendants prevented them from doing so.  *See Low*, 2011 WL 5509848 at *4–6.  Nor ***could*** Plaintiffs levy such allegations, given that the information

---

[5] *See also, e.g.*, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("[T]here is absolutely no support for the proposition that the personal information of an individual JetBlue passenger had any value [that could expectedly] be compensated"); *In re Doubleclick, Inc., Privacy Litig.,* 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (holding that unauthorized collection of personal information by a third-party is not "economic loss").

they seek to suppress here was already publicly available on state and local government websites and on Plaintiffs' own LinkedIn profiles.  *See* RJN, Exs. A–C.  "The value of the plaintiff's name is not appropriated . . . by reference to it in connection with legitimate mention of his public activities . . . No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation."  *Harvey v. Sys. Effect, LLC*, 154 N.E. 3d. 293, 304–05 (Ohio Ct. App. 2020).

Additionally, Defendants' mere "use" of Plaintiffs' already-public contact information does not establish that the information has concrete commercial value to them.  Comp. ¶¶ 11, 97, 100.  Such an approach eviscerates the independent "injury" requirement contained in Article III and right-of-publicity claims because it *assumes* that any use of one's name, image, or likeness—standing alone—necessarily results in quantifiable economic loss to a plaintiff.  That is not the law.  *See Slivinsky*, 221 Cal. App. 3d at 807 ("resulting injury" is an independent element of right-of-publicity claims); *Google Privacy Policy Litig.*, 2013 WL 6248499, at *5 (a plaintiff must allege existing economic value and resulting economic loss); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation . . . [A plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

Right-of-publicity plaintiffs often establish economic injury by alleging that defendants used their name, image, or likeness to imply a false endorsement or to advertise an ***unrelated*** product.  Under this theory, defendants have deprived plaintiffs of the economic value that they could obtain from an endorsement or advertising opportunity.  *Cf. Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 791–92, 797–99 (N.D. Cal. 2011) (concluding Plaintiffs alleged economic injury where Facebook used their names and photographs in "Sponsored Story" advertisements to third parties touting that the Plaintiffs personally endorsed certain products).  But Plaintiffs' efforts to shoehorn Defendants' alleged use of their basic contact information into that line of cases fails.

For example, in *Perkins v. LinkedIn Corp.*, the court explained that a plaintiff cannot allege economic injury by relying on its own *ipse dixit*, as Plaintiffs do here (Compl. ¶ 100), or by merely citing abstract economic concepts.  53 F. Supp 3d at 1208-11 (discussing *Fraley*); *see also*

*In re iPhone Application*, 2011 WL 4403963, at *5–6 (N.D. Cal. Sept. 20, 2011) (the plaintiffs'
mere "general allegations" about the mobile device market for apps and about abstract concepts
such as "lost opportunity costs" and "value-for-value exchanges" were insufficient to establish a
concrete theory of injury); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *4–6 (N.D. Cal.
Apr. 28, 2011) (the plaintiffs' "academic articles concerning the nature of Internet business
models driven by consumers' willingness to supply data about themselves" were insufficient to
establish standing in the absence of "some particularized example of their application in this
case") (cleaned up); *Fraley*, 830 F. Supp. 2d at 797–800.  Instead, a plaintiff must articulate "a
coherent theory of economic injury" tethered to the specific facts of the case.  *Perkins*, 53 F.
Supp. 3d at 1208.  Thus, in *Perkins*, the plaintiffs alleged that LinkedIn used their names and
likenesses to send emails to plaintiffs' contacts indicating the plaintiffs endorsed the LinkedIn
platform, and then quoted LinkedIn documents "highlight[ing] the importance of [such] viral
marketing to grow[ing] LinkedIn's membership" to demonstrate "that individuals' names have
economic value where those names are used to endorse or advertise a product to the individuals'
friends and contacts."  *Id.* at 1210–11.  There is no such false endorsement here.

  *Fraley* is also instructive.  There, the plaintiffs pleaded economic injury by invoking direct
statements by Facebook executives, and third-party research finding "that advertising consisting
of recommendations by friends is the most effective form of advertising," to allege that plaintiffs'
"individual, personalized endorsement of products, services, and brands to their friends and
acquaintances ha[d] concrete, provable value in the economy at large, which [could] be measured
by the additional profit Facebook earn[ed] by selling Sponsored Stories [the ads at issue]
compared to its sale of regular advertisements."  830 F. Supp. 2d at 799; *see also id.* at 796–801.

  Plaintiffs come nowhere close to meeting that standard here, given that they do not allege
Defendants used their information to make false endorsements or advertise products unrelated to
the work containing their information.  "[A defendant's] use of [] public profiles [containing a
plaintiff's information] to solicit paying subscribers—standing alone—does not establish injury,
even though [defendant] profits from the use."  *Callahan I*, 2021 WL 2433893, at *3.  "More is
needed—beyond [the defendant's] use of the data to solicit paying subscribers—such as an

inference that the profiled persons personally endorsed Ancestry's product (or an equivalent interest)."  *Callahan I*, 2021 WL 783524, at *1; *accord Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *4 (N.D. Cal. Jun. 15, 2021) ("*Callahan II*").  There is no distinguishing the *Callahan* cases.  Plaintiffs thus fail to allege a plausible economic injury.[6]

**2.    Plaintiffs do not allege a plausible and cognizable emotional injury.**

Plaintiffs also assert that Defendants' use of their biographical and professional contact information "caused [them] mental injury and disturbed [their] peace of mind" by making them feel "uncomfortable" and "uncertain" about their ability to control "how [their] name and persona is used."  Compl. ¶ 48.  But these conclusory claims of mental distress, without "commercial loss or defamation," are insufficient to establish injury-in-fact.  *See Callahan II*, 2021 WL 2433893, at *4; *see also Slivinsky,* 221 Cal. App. 3d at 807 (holding that a "truthful and laudatory statement" about the plaintiff cannot, as a matter of law, cause a cognizable emotional injury).  And given that the information at issue was already publicly available online—including on Plaintiffs' own LinkedIn pages—any allegations of mental anguish are implausible.  *See Cohen*, 798 F. Supp. 2d at 1097 (holding that conclusory allegations of "hurt feelings" based on the defendant's use of the plaintiff's name in an online endorsement do not plead a plausible right-of-publicity injury); *see also Young v. Bank of Am.*, 141 Cal. App. 3d 108, 114 (1983) ("In order to recover damages, for emotional distress the injury suffered must be severe, *i.e.*, substantial or enduring . . . .").[7]

In addition, while the complaint conveys Plaintiffs' unsupported personal ***beliefs*** that Defendants' public display of "personal details" about them "encourages and enables identity fraud," Compl. ¶ 48, it does ***not*** allege the required "anxiety and stress about a ***credible threat*** of

---

[6] The complaint asserts that InsideView injured Plaintiffs "by taking [their] intellectual property without compensation," Compl. ¶ 47, but that is a re-packaged version of the foregoing argument. Unless a plaintiff can demonstrate that his name or likeness had commercial value, and the defendant's alleged conduct diminished (*i.e.*, injured) that commercial value, no such injury is possible.  *See, e.g.*, *Callahan II*, 2021 WL 2433893 at *5.  As discussed, that is not the case here.

[7] Given that Plaintiffs fail to plausibly allege mental anguish or any actual economic loss, the Court should strike Plaintiffs' claim for statutory damages under California's right-of-publicity statute, Cal. Civ. Code § 3344.  Statutory damages are available only to those who have suffered mental anguish—but no discernible commercial loss—due to an alleged statutory violation.  *See, e.g.*, *Perkins*, 53 F. Supp. 3d at 1242–43 (dismissing statutory damages claim under § 3344 where plaintiffs had not alleged mental anguish resulting from the claimed violations).

future identity theft."  *Callahan II*, 2021 WL 2433893, at *4 (emphasis added).  "[T]hreatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury," as here, "are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).  In any event, Plaintiffs' purported concern that Defendants' publication could encourage "identity fraud" is nonsensical, given that they publicly posted this information online.

In sum, Plaintiffs have failed to plead a cognizable and plausible economic or emotional injury (or any other injury) that is sufficient to confer standing or to state any of their claims.

**B.      Plaintiffs' right-of-publicity claims fail because they have not alleged that Defendants appropriated their identities for an unrelated commercial use.**

Further, to state a statutory or common law claim for violation of the right of publicity under California law, Plaintiffs must plausibly allege that Defendants appropriated their names for a "commercial use."  *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 408 (2001). Commercial use, however, has a specific meaning in the context of right-of-publicity claims:  the defendant's use must advertise or promote an ***unrelated or separate*** product or service.  *Id.* at 413 (2001) ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product.") (emphasis original) (collecting cases); *Brooks v. Thompson Reuters Corp.*, 2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021) ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service.").[8]  Conversely, a plaintiff's "likeness may be used . . . to advertise a related product," because "[t]he owner of a product is entitled to show that product to entice customers to buy it," even where it discusses the likeness of the plaintiff.  *Gionfriddo*, 94 Cal. App. 4th at 413–14.

Similarly, to state a claim for appropriation of likeness under Ohio law, a plaintiff must

---

[8] *See also, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2009) (unauthorized use of Paris Hilton's catch phrase to promote greeting cards); *Midler v. Ford Motor Co.*, 849 F.2d 460, 461 (9th Cir. 1988) (unauthorized imitation of Bette Midler's voice used to advertise Ford cars); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1096 (9th Cir. 1992) (unauthorized imitation of voice used to advertise Doritos); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992) (robot resembling Vanna White used to advertise televisions); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809 (9th Cir. 1997) (robots resembling characters from Cheers used to draw customers to a bar); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (unauthorized photo of model used to advertise hair products); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 999 (9th Cir. 2001) (unauthorized photo of surfer used on advertisement for defendant's clothes).

plead that there is some value in associating a **separate** good or service with her identity.  *See Harvey*, 154 N.E. 3d. at 304–05.  As noted above in the context of standing, "[t]he value of the plaintiff's name is not appropriated by mere mention of it, or **by reference to it in connection with legitimate mention of his public activities**[.]"  *Id.* at 305 (quoting *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 343 (2006)) (emphasis added).  Indeed, "[c]ommercial purpose" is explicitly defined to "the use of or reference to an aspect of an individual's persona . . . [f]or advertising or soliciting the purchase of products . . . or other commercial activities[.]"  Ohio Rev. Code Ann. § 2741.01(B); *see also Roe*, 714 F. App'x at 568 (the defendant must be "associating an item of commerce with [the plaintiff's] identity") (citing *Landham*, 227 F.3d at 624).

The *Brooks* decision, from California, is instructive.  There, the defendant collected from public and non-public sources detailed information about millions of individuals and sold through an online platform "cradle-to-grave dossiers" about those individuals.  2021 WL 3621837, at *1. As is the case here, "Plaintiffs allege[d] the product *is* their name, likeness, and personal information," and the defendant did not suggest "that Plaintiffs endorse its dossiers or any of its other products." *Id.* at *3–4.  The court concluded that, while arguably invasive, "the publishing of Plaintiffs' most private and intimate information for profit" was "not a misappropriation of their name or likeness to advertise or promote a *separate* product or service," and dismissed the claims.  *Id.* at *4–5.

Here, as in *Brooks*, Plaintiffs' right-of-publicity claims fail because their biographical and business contact information **is** the alleged product, and it "is not being 'appropriated' and used" to falsely imply that Plaintiffs endorse an unrelated product or "to advertise or promote a *separate* product or service." *See id.* at *4–5.  Accordingly, Plaintiffs' right-of-publicity claims must fail.

Plaintiffs further allege that Defendants' publicly-available profile page for each of them includes a link to separate windows that invite users to pay for access to a more thorough profile of Plaintiffs containing additional information about Plaintiffs.  To the extent that the complaint alleges that this constitutes "advertising" of a separate product, Plaintiffs' screenshots included in the complaint make clear Plaintiffs' names and professional information do not appear in any purported "advertisements" themselves.  *See* Compl. ¶¶ 32–41; *Cross v. Facebook, Inc.*, 14 Cal.

App. 5th 190, 209 (2017) (remanding case for dismissal of statutory and common law right-of-publicity claims where the Plaintiff's name and likeness did not appear "in the ads themselves").

And again, even if Defendants were engaged in "advertising" on the pages that are launched from the profile containing Plaintiffs' name and professional information, Defendants are not promoting a "separate" product.  InsideView allows free users and paying users to access different portions of the same underlying work.  While paying users may be able to obtain more information, that information is directly linked to the freely-available information.  *See* Compl. ¶¶ 32–41.  Since the underlying work is protected speech, any advertising displaying portions of the underlying work is itself protected speech that cannot give rise to a right-of-publicity claim, even when access to the (complete) underlying work is sold for profit.  *See* Section III.C, *infra*.

C.      **The First Amendment bars Plaintiffs' attempt to prevent Defendants' speech.**

Plaintiffs' claims also fail for another fundamental reason: at bedrock, they infringe upon Defendants' First Amendment right to free speech.  Plaintiffs seek to ban Defendants from publishing a work accessible through the internet that organizes and displays already-public biographical and professional contact information Defendants lawfully obtained about them.  No right of publicity grants them veto power over such speech, regardless of whether Defendants charge for their work or provide access for free.  *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 868 (1979) ("The First Amendment is not limited to those who publish without charge.").

1.      **Defendants' public publication is protected speech.**

Plaintiffs seek to restrict Defendants from allegedly publishing in a publicly-available online database their "name, city of residence, [work] phone number, place of work, job title, and educational history."  Compl. ¶¶ 3, 20.  They further seek to restrict Defendants from publishing to paid subscribers Plaintiffs' "social media posts," "mentions of Plaintiff[s] in the news media," and "information about Plaintiff[s'] 'web behavior'."  *Id.* ¶ 7.  The extent of Plaintiffs' overreach with these proposed restrictions is obvious.  Among other things, Plaintiffs' work phone numbers belong not to Plaintiffs, but to their employers; Plaintiffs' social media posts do not reflect Plaintiffs' identity, they are publicly-available content that Plaintiffs created and disseminated; "mentions of Plaintiff[s] in the news" reflect media reports ***about*** Plaintiffs and thus represent

*someone else's* speech that Plaintiffs are seeking to restrict without ever disputing the initial publication; and Plaintiffs' web behavior is, at best, an account of their actions—not information reflecting their name, image, or likeness—and thus is not covered by the right of publicity.  *See* Compl. ¶¶ 6–7; Cal. Civ. Code § 3344(a); *Downing*, 265 F.3d at 1001.  Setting aside these frivolous attempts to expand the right of publicity to unprecedented categories of information, Plaintiffs' core claims about their names and biographical information still fail.

Fundamentally, the First Amendment protects Defendants' right to publish biographical and professional contact information about Plaintiffs.  "[W]hether [a] publication [is] factual and biographical or fictional, the right of publicity has not been held to outweigh the value of free expression."  *Guglielmi*, 25 Cal. 3d at 872; *see also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925 (6th Cir. 2003) (holding that prints of Tiger Woods sold for profit are not commercial speech and are entitled to full First Amendment protection from Ohio right of publicity claims).

In *Guglielmi*, for instance, the California Supreme Court extended First Amendment protection to a filmmaker's use of an actor's "name, likeness and personality" in a "fictionalized version" of his life.  *Id.* at 862.  The court did not distinguish between the First Amendment protection provided to "fictional and factual accounts of [the actor's] life."  *Id.* at 868.  Indeed, it expressly recognized that "election of the former as the mode for [defendants'] views does not diminish the constitutional protection afforded speech."  *Id.*; *see also Winters v. New York*, 333 U.S. 507, 510 (1948) ("The line between the informing and the entertaining is too elusive for the protection of the basic right . . . . What is one man's amusement, teaches another's doctrine."); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) ("[A] cause of action for appropriation of another's name and likeness may not be maintained against expressive works, whether factual or fictional." (marks omitted)).  Here, at most, Defendants' use of Plaintiffs' information is an "unauthorized biography," which has long been recognized as core protected speech.  *See* Restatement (Third) of Unfair Comp. § 47 (1995) cmt. b ("[T]he right of publicity is

1    not infringed by the dissemination of an unauthorized print or broadcast biography.").[9]

2          Courts considering the use of biographical facts in fantasy sports have reached a similar

3    conclusion, even when players of those games pay for the opportunity to access the website using

4    the alleged names, images, and likenesses.  *See CBC Distrib. and Mktg., Inc. v. Major League*

5    *Baseball Adv. Media, L.P.*, 505 F.3d 818, 823 (8th Cir. 2007) (holding that the First Amendment

6    protects a fantasy sports website's use of athletes' "names, nicknames, likenesses, signatures,

7    pictures, playing records, and/or biographical data"); *see also CBS Interactive Inc. v. Nat'l*

8    *Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 417 (2009) ("[L]ike in *C.B.C. Distribution*,

9    the package of information used here comes within the ambit of the First Amendment.").  A court

10   applied similar reasoning to protect a website's right to post a biographical database on baseball

11   players.  *See Gionfriddo*, 94 Cal. App. 4th at 409–17.

12         That Plaintiffs are non-famous individuals does not deprive Defendants of the First

13   Amendment protection extended to publishers when faced with right of publicity claims.  In *In re*

14   *Estate of Reynolds*, for example, the court held that personal details about someone's non-famous

15   mother were not actionable because "the commentaries are on the order of an unauthorized

16   biography, which plainly may not give rise to a claim for violation of the right of publicity."  235

17   Ariz. 80, 85 (Ct. App. 2014); *see also* Restatement (Third) of Unfair Comp. § 47 (1995) cmt. c

18   ("The use of a person's identity primarily for the purpose of communicating information or

19   expressing ideas is not generally actionable as a violation of the person's right of publicity.").

20         Finally, although Plaintiffs' names and biographical information are contained in

21   Defendants' work itself—not the advertising for it—the use of portions of the work to promote

22   the larger work would still be protected speech that cannot violate the right of publicity.  *See*

23   *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983) (advertising "an activity [that

---

24   [9] *See also, e.g.*, *Rose and Raymond Parks Inst. For Self Dev. v. Target Corp*, 90 F. Supp. 3d
25   1256, 1262–63 (M.D. Ala. 2015) (sale of books and movie about Rosa Parks were protected by
     the First Amendment "because they are biographical works"); *Ruffin-Steinback v. dePasse*, 82 F.
     Supp. 2d 723, 730 (E.D. Mich. 2000) (First Amendment protection does not vary "whether the
26   work in question is fictional, non-fictional[,] or a combination"); *Matthews v. Wonzencraft*, 15
     F.3d 432, 436 (5th Cir. 1994) (right of publicity did not apply to unauthorized biography); *Seale*
27   *v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996) (same); *Dex Media W., Inc. v. City*
     *of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) (directories "qualify for full protection under the
28   First Amendment"); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (same).

1824359

is] itself protected by the First Amendment" is protected speech); *Daly*, 238 F. Supp. 2d at 1123 ("[A]dvertisements of expressive works are not actionable where the advertisements are merely an adjunct of the protected [work] and promote only the protected [work].").[10]   This is true even when access to the (complete) underlying work is sold for profit.  *Guglielmi*, 25 Cal. 3d at 868 ("The First Amendment is not limited to those who publish without charge."); *id.* (protected speech "does not lose its constitutional protection because it is undertaken for profit.").

Here, Plaintiffs make clear that the profiles containing their biographical and professional contact information are ***part*** of Defendants' work.  *See, e.g.*, Compl. ¶ 36 ("Users who searched for Mr. Gbeintor and clicked on the pop-up beneath the search bar were shown the profile of Mr. Gbeintor that appears in paragraph 35 above.").  Defendants' separate pages offering access to related content and features for a fee do not use Plaintiffs' biographical and professional contact information.  *Id.* ¶¶ 37–42.  At most, Plaintiffs' information is separately accessible from the purported advertisement as part of the underlying work.  *See id.*  But even if the screenshots in the complaint containing Plaintiffs' information constitute "advertisements," they are advertisements for the underlying work, and such advertisements are also protected speech.  *Bolger*, 463 U.S. at 67 n.14; *Daly*, 238 F. Supp. 2d at 1123.  Thus, any alleged advertisements promoting InsideView do not detract from the First Amendment protection that applies to Defendants' speech.

### 2.   Strict scrutiny governs Plaintiffs' effort to restrict Defendants' speech.

Plaintiffs seek to apply California and Ohio right-of-publicity law as a vehicle for restricting Defendants' speech based upon its content.  Specifically, Plaintiffs seek to suppress publication of an individual's name, city of residence, work phone number, place of work, job title, educational history, social media posts, news mentions, and web behavior.  *See* Compl. ¶¶ 7, 20.  This is a content-based restriction.  *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120–21 (9th Cir. 2020) (holding that a state law prohibiting the dissemination of "date of birth or age information" imposed a content-based restriction).  But state law, including common law, "may

---

[10] *See also Guglielmi*, 25 Cal. 3d at 873 (where the underlying work is protected, ads about the work are also protected); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982), *abrogated on other grounds*, *McQuiston v. Marsh*, 790 F.2d 798 (9th Cir. 1986) ("Constitutional protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication.").

not restrict expression because of its message, its ideas, its subject matter, or its content." *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (internal quotation marks omitted). Accordingly, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the [proponent of the restriction] proves that they are narrowly tailored to serve compelling state interests." *Id.* (quotation marks omitted). "California's right of publicity law clearly restricts speech based upon its content." *Id.* Strict scrutiny thus applies to Plaintiffs' effort to limit the content of Defendants' speech.

Plaintiffs may argue that Defendants' speech is entitled to reduced protection. There are "three categories of speech entitled only to reduced protection: (1) commercial speech; (2) illegal speech; and (3) speech implicating private matters." *IMDb.com Inc.*, 962 F.3d at 1121–22. None of them applies here.

**First,** the content at issue is not commercial speech because it does more than propose a commercial transaction. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976); *see also IMDb.com Inc.*, 962 F.3d at 1122 ("[T]he content found in profiles on IMDb's public website does not meet the standard for commercial speech."); *Dex Media*, 696 F.3d at 957 ("[T]elephone listings and community information contained in the directory constitute noncommercial speech[.]"). Defendants' database provides those who access it information about Plaintiffs that is useful in and of itself. As in *IMDb.com Inc.*, a decision similarly considering a publisher's right to post information in an online database, the First Amendment trumps the statutory effort to restrict non-commercial speech. *See IMDb.com*, 962 F.3d at 1122 ("The facts here do not present a close question; . . . [t]hese free, publicly available profiles are found in an 'online database of information' and are surrounded by content that 'includes information on cast, production crew, fictional characters, biographies, plot summaries, trivia and reviews.' The content is encyclopedic, not transactional.").[11] To the extent Plaintiffs allege that Defendants propose commercial transactions, that speech appears on separate pages

---

[11] Even if the Court were to conclude that the content at issue is commercial speech, "[c]ommercial speech that is not false or deceptive and does not concern unlawful activities[] may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 638 (1985). As discussed *infra*, Plaintiffs cannot make that showing.

from the underlying work containing Plaintiffs' information.  The specific speech Plaintiffs seek to restrict with their claims is not proposing any transaction—it is providing factual information.

**Second,** Defendants' speech is not illegal, because it does not "itself propose[] an illegal transaction."  *Id.* at 1123.  Here, as in *IMDb.com Inc.*, there is "nothing illegal about truthful, fact-based publication of" biographical and professional contact information "when that information was lawfully obtained."  *Id.*; *see also id.* at 1122–23 (finding nothing illegal about publication of "an individual's age and birthdate").  Plaintiffs do not and cannot allege Defendants unlawfully obtained their information, especially when they made it publicly available.  *See* RJN, Exs. A–C.

**Third,** "neither [the Ninth Circuit], nor the Supreme Court, has [ever] held that content-based restrictions on public speech touching on private issues escape strict scrutiny."  *IMDb.com*, 962 F.3d at 1123.  But in any event, the complaint contains no specific allegation of any speech implicating private matters.  *See* Compl. ¶¶ 1–8.  Name, occupation, and education certainly are not private, and "news mentions" and "social media posts" are inherently public since they are designed for viewing by others.  Moreover, information about Plaintiffs' web behavior, even if considered to be private to some limited degree, does not fall within one's "name, image, or likeness," so it is not actionable on right-of-publicity grounds.[12]  Accordingly, there is no privacy-based ground for Plaintiffs to avoid the application of strict scrutiny in this case.

### 3.   Plaintiffs' claims cannot survive review under strict scrutiny.

Strict scrutiny "is a demanding standard, and it is rare that a regulation restricting speech because of its content will ever be permissible."  *IMDb.com*, 962 F.3d at 1125 (internal quotation marks and citations omitted).  The proponent must show that the law's application "furthers a compelling governmental interest and is narrowly tailored to that end."  *Id.* (quotation marks omitted).  "If a less restrictive [application of the law] would serve the Government's purpose," the less restrictive application must be used.  *Id.* (quotation marks omitted).  Likewise, a law "is not narrowly tailored if it is either underinclusive or overinclusive in scope."  *Id.*

Plaintiffs' proposed enforcement of California's and Ohio's right-of-publicity laws cannot

---

[12] In any event, Plaintiffs fundamentally misconstrue Defendants' product.  InsideView does **not** in fact contain information about an individual's web-browsing behavior.

pass strict scrutiny.  **First,** restricting Defendants' right to publish biographical and professional contact information would impede, not further, a compelling governmental interest, because "a public benefit is performed by the reporting of the true contents of [public] records[.]"  *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *see also Virginia St. Bd.*, 425 U.S. at 764 ("[S]ociety also may have a strong interest in the free flow of commercial information.").  For that reason, "state action to punish the publication of truthful information seldom can satisfy constitutional standards."  *Smith v. Daily Mail Publ'g Co*., 443 U.S. 97, 102 (1979).

  **Second,** Plaintiffs' proposed speech-restriction is ***not*** "the least restrictive means of achieving a compelling state interest."  *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).  Indeed, Plaintiffs' proposed speech-restriction is sweeping—it would effectively forbid the publication of an array of biographical and professional contact information not just about Plaintiffs, but about millions of people across the United States.  *See* Compl. ¶ 85 (class definition).

  **Third,** Plaintiffs' proposed speech-restriction is not narrowly tailored.  It is overinclusive, given that it seeks to widely suppress information that Plaintiffs do not themselves own.  And it is underinclusive because even if Plaintiffs could forbid Defendants from publishing the targeted information they seek to suppress, their actions would "leav[e] unrestricted every other avenue through which [the same] information might be disseminated."  *IMDb.com Inc.*, 962 F.3d at 1126.

  In sum, Plaintiffs' claims are fundamentally incompatible with Defendants' right to free speech.  The First Amendment requires that Plaintiffs' complaint be dismissed in its entirety.

  **D.** **Plaintiffs' statutory right-of-publicity claims fail because Defendants' speech falls within those statutes' "public affairs" and "public interest" exceptions.**

  Plaintiffs' statutory right-of-publicity claims under California and Ohio law additionally fail because those statutes each expressly exempt from liability speech about matters of "public affairs" and "public interest."  *See* Cal. Civ. Code § 3344(d); Ohio Rev. Stat. § 2741.09(A)(3).

  California law exempts from liability any "use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account[] or any political campaign[.]"  Cal. Civ. Code § 3344(d).  This exemption affords broader protection against appropriation claims than even the First Amendment.  *New Kids on the Block v. News Am.*

*Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) (explaining that this exemption is "designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest"). Indeed, it is not limited "to topics that might be covered on public television or radio." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545–46 (1993). And since "the public is interested in and constitutionally entitled to know about things, people, and events that affect it," the "public affairs" exception permits use of otherwise protected information even on subjects that are not important to the public, but merely "are of interest." *Id.* Matters "of interest" include works that "may legitimately inform and entertain the public," such as "biographies." *Id.* at 543. The interest need not be widespread; it suffices if the information "is of more than passing interest to some." *Id.* at 546. Lastly, laws regulating speech must be "authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972). Courts must therefore err on the side of free expression where, as here, they are tasked with construing legislation that purports to regulate speech.

Similarly, under Ohio law, the right-of-publicity statute expressly "does not apply to . . . [t]he use of an aspect of an individual's persona in connection with . . . the reporting of an event or topic of general or public interest." Ohio Rev. Stat. § 2741.09(A)(3). The only Ohio court to interpret this "public interest" exemption has held that even the inclusion of a plaintiff's name and likeness in a presentation made for profit is exempted from liability, so long as the presentation is "informative." *Harvey*, 154 N.E.3d at 307; *see also* Ohio Rev. Stat. § 2741.09(A)(1) (exempting any "historical work"). This interpretation of Ohio's public interest exemption is consistent with Ohio's exemption from right-of-publicity liability any "use of the persona of an individual that is protected by the First Amendment . . . as long as the use does not convey or reasonably suggest endorsement by the individual whose persona is at issue." *Id.* § 2741.09(A)(6)

Here, Defendants' use of Plaintiffs' "name[s]" falls within these public affairs and public interest exemptions because the publication of biographical information is core protected speech on a matter "of interest" to at least "some" members of the public. *Dora*, 15 Cal. App. 4th at 539, 546; *see also Harvey*, 154 N.E.3d at 307. The First Amendment protects Defendants' right to

publish factual, biographical information and analysis regarding individuals and industries.  *See* Section II, *supra*; *see also Dex Media W., Inc.*, 696 F.3d at 954 (directories "qualify for full protection under the First Amendment"); *Vrdolyak*, 206 F. Supp. 3d at 1388 (directory of attorneys did not violate right of publicity because it was protected First Amendment speech). Because much of this information is retrospective, it comprises a "historical" work.  *See* Ohio Rev. Stat. § 2741.09(A)(1).  And publication of this information, as the California Court of Appeal has made clear, "may legitimately inform and entertain the public," thus invoking the public affairs exception.  *Dora*, 15 Cal. App. 4th at 543.  That is particularly true where, as here, the biographical information is being published as part of a freely-accessible encyclopedia-like database of information about employers across the globe—from Silicon Valley startups to state and local governments to Fortune-500 companies—and the employees like Plaintiffs that enable them to function, drive innovation, and play a role in shaping public policy.  *See* Section II, *supra*; *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 225 (1998) (exception covers "the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published."); *New Kids On The Block v. News America Pub. Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990) ("gathering information for dissemination to the public" is a protected activity not subject to right-of-publicity claims).

Further, Plaintiffs Gbeintor and Alderman are long-time employees of California state and/or local governments.  RJN, Exs. A & B.  Their biographical and professional contact information is thus "of interest" and "inform[ative]" not only to the thousands of professionals working in the sales space who wish to contract with California or one of its cities, but also the many members of the public who are interested in learning about state government, *who* the people actually are that are in positions to drive the state's operations, and *how* people like Plaintiffs obtained or progressed to such positions.  As *Dora* explained, Plaintiffs Gbeintor and Alderman are persons the public is "constitutionally entitled to know about" because they occupy a position that "affects" the public.  15 Cal. App. 4th at 546–47 ("As has been established in the cases involving . . . appropriation, the public is interested in and constitutionally entitled to know

about [] people [] that affect it.").  There can be little question that publication of these Plaintiffs' biographical and professional contact information—reflecting current and historic factual information—is protected speech on a matter "of interest" to at least "some" members of the public.  *Id.* at 546.  And more broadly, there is no doubt that publication of the detailed information about companies and their employees that Defendants render publicly available is "of interest" to a broad swath of the population.  Plaintiffs' statutory right-of-publicity claim thus fails because Defendants' publication of their names falls within the "public affairs" exception.[13]

### E.   Plaintiffs' UCL claims fail because they are derivative of their other claims.

Plaintiffs assert claims under the UCL's "unlawful" and "unfair" prongs.  A claim under the "unlawful" prong "hinges upon whether a plaintiff can formulate a claim under [a] predicate law . . . Thus, if the plaintiff cannot state a claim under the predicate law . . . the UCL claim also fails."  *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (cleaned up).  Here, Plaintiffs cannot state a claim under any predicate right-of-publicity law for the reasons discussed above, so the derivative claim under the "unlawful" prong also fails.  *See* Compl. ¶¶ 108–09 (listing right-of-publicity claims as basis for unlawful-prong claim); *Brooks*, 2021 WL 3621837 at *5 ("Because Plaintiffs failed to properly plead [their] predicate [right-of-publicity claims], they have also failed to plausibly plead their claim under the unlawful prong of the UCL.").

Plaintiffs fail to state a claim under the "unfair" prong for the same reason: "In this District, when [a] plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, 'the unfair prong of the UCL cannot survive if the claims under the other two prongs . . . do not survive.'"  *Eidmann*, 522 F. Supp. 3d at 647 (quoting *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017)); *see also Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (dismissing UCL "unfair" prong claim on this basis); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) (same).  Here, Plaintiffs' claim under the unfair prong is based entirely

---

[13] Given that Defendants' publication is protected speech on a matter of public interest, Plaintiffs' common law right-of-publicity claim likewise fails.  *See Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995) ("[N]o cause of action [for common law commercial misappropriation] will lie for the publication of matters in the public interest[.]") (cleaned up).

on the conduct that underlies their predicate claims.  *See, e.g.*, Compl. ¶ 110 ("By engaging in the conduct described in this complaint . . . InsideView engaged in and continues to engage in 'unfair' business acts and practices prohibited by the UCL.").  Thus, Plaintiffs' "unfair" prong claim is purely derivative and falls with their predicate right-of-publicity claims.

## F.   Plaintiffs' claims should be stricken under California's anti-SLAPP statute.

California's "anti-SLAPP" statute was "enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Sarver*, 813 F.3d at 896  (quotation marks omitted).  The statute permits "a special motion to strike" a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech [] in connection with a public issue[,]" unless "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  District courts sitting in diversity jurisdiction in California apply California's anti-SLAPP law regardless of whether the substantive claims at issue arise entirely from California substantive law.  *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000 (N.D. Cal. 2015).

To sustain an anti-SLAPP motion to strike, a defendant must first show that "the act or acts of which the plaintiff complains were taken in furtherance of the defendant['s] right of [] free speech [] in connection with a public issue."  *Sarver*, 813 F.3d at 901 (quotation marks omitted).  Then, upon that showing, the court evaluates "whether the plaintiff has established a reasonable probability that the plaintiff will prevail on his or her claim," *i.e.*, whether "the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Id.* (cleaned up).

"Web sites accessible to the public," like InsideView's, "are 'public forums' for purposes of the anti-SLAPP statute."  *Cross*, 14 Cal. App. 5th at 199 (quotation marks omitted).  Indeed, Plaintiffs sued Defendants precisely because they publish a publicly-accessible online database.  *See* Compl. ¶¶ 95-123.  Thus, the first step of the anti-SLAPP analysis is satisfied.  The remaining question is whether, by publishing detailed information about companies and their employees, Defendants are exercising their right of free speech in connection with an issue of public interest.

24

California courts and the Ninth Circuit "have construed 'public issue or public interest' …
broadly in light of the [anti-SLAPP] statute's stated purpose to encourage participation in matters
of public importance or consequence." *Sarver*, 813 F.3d at 901 (cleaned up). "An issue of public
interest is *any issue in which the public is interested*." *Cross*, 14 Cal. App. 5th at 199 (internal
quotation marks omitted). "[T]he issue need not be 'significant,'" *Nygard, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027, 1042 (2008), and it "may encompass activity between private people,"
*Cross*, 14 Cal. App. 5th at 199 (internal quotation marks omitted). The number of people to
whom the information is of interest need not be large. *See, e.g.*, *Ruiz v. Harbor View Cmty.
Ass'n*, 134 Cal. App. 4th 1456, 1468–69 (2005) (two letters from an HOA's attorney to a private
citizen about a building permit were of "public interest" to the residents governed by that HOA).

Here, Defendants' publication of Plaintiffs' biographical and professional contact
information—as part of a rich and informative database of detailed information about companies
and their employees—is protected speech on a matter of public interest not only to the thousands
of individuals working in the business-to-business space, but the many individuals across the
nation who are interested in understanding and learning about the makeup and activities of
companies in their communities, the governmental entities that impact their daily lives, and the
individuals like Plaintiffs who are driving these institutions forward. *See* Section II, *supra*.

Further, Plaintiffs are unlikely to prevail on the merits of their claims. Plaintiffs have
suffered no injury sufficient to state their claims in federal court. In any event, Plaintiffs' claims
fail because they cannot plead a necessary component of their right-of-publicity claims, the First
Amendment bars their claims, Defendants' speech is protected by statutory public affairs and
public interest exemptions from right-of-publicity liability, and their UCL claims lack statutory
standing and are purely derivative of their otherwise fatally flawed right-of-publicity claims.[14]

## V.    CONCLUSION

For these reasons, Defendants respectfully request that Plaintiffs' fatally-flawed complaint
be dismissed with prejudice, or stricken under California's anti-SLAPP statute, in its entirety.

---

[14] The Court may consider Defendants' website and Plaintiffs' LinkedIn profiles as affirmative
evidence in support of Defendants' motion to strike. Cal. Code Civ. Proc. § 425.16(b)(2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  May 13, 2022

KEKER, VAN NEST & PETERS LLP

By:  /s/ R. Adam Lauridsen

R. ADAM LAURIDSEN
JULIA L. ALLEN
CODY GRAY

Attorneys for Defendants
DEMANDBASE, INC., and
INSIDEVIEW TECHNOLOGIES, INC.

26

1824359