# Exhibit E

1

2

THE HONORABLE MARSHA J. PECHMAN

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9

10

KIM CARTER MARTINEZ, on behalf of
herself and all others similarly situated,

11

Plaintiff,

12

vs.

13

ZOOMINFO TECHNOLOGIES INC., a
Delaware corporation

14

Defendant.

15

16

Case No. 3:21-cv-05725-MJP

**ZOOMINFO TECHNOLOGIES INC.'S**
**MOTION TO DISMISS PURSUANT TO**
**FRCP 12 AND MOTION TO STRIKE**
**PURSUANT TO CALIFORNIA CODE OF**
**CIVIL PROCEDURE § 425.16**

NOTE ON MOTION CALENDAR:

January 24, 2022

ORAL ARGUMENT REQUESTED

17

18

19

20

21

22

23

24

25

26

27

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT ...........2

LEGAL STANDARDS ...........................................................................................................3

ARGUMENT ..........................................................................................................................4

I.    PLAINTIFF DID NOT SUFFER ANY INJURY AS A RESULT OF THE
ALLEGED VIOLATION .............................................................................................4

    A.    Plaintiff's Allegation That ZoomInfo Violated Her Intellectual Property
Rights Does Not Constitute an Injury In Fact.............................................5

    B.    Alleged Invasion of Plaintiff's Privacy Does Not Establish an Injury In
Fact............................................................................................................7

    C.    ZoomInfo's Profit Is Not an Injury to Plaintiff.............................................9

    D.    Plaintiff's Conclusory Allegations of Mental Harm Do Not Establish the
Requisite Injury.........................................................................................10

II.    PLAINTIFF'S CLAIMS FAIL BECAUSE SHE CHALLENGES
PUBLICATION OF MATTERS IN THE PUBLIC INTEREST ....................................11

III.    THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR STATUTORY
DAMAGES BECAUSE PLAINTIFF CANNOT PLAUSIBLY ALLEGE ANY
MENTAL ANGUISH ................................................................................................16

IV.    THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR EQUITABLE
RELIEF BECAUSE AN ADEQUATE REMEDY AT LAW EXISTS ...........................17

V.    THE COURT SHOULD STRIKE PLAINTIFF'S CLAIMS PURSUANT TO
CALIFORNIA'S ANTI-SLAPP STATUTE ................................................................18

CONCLUSION......................................................................................................................19

Mᴏᴛ. ᴛᴏ Dɪsᴍɪss Pᴜʀsᴜᴀɴᴛ ᴛᴏ ꜰʀᴄᴩ 12 ᴀɴᴅ Mᴏᴛ. ᴛᴏ
Sᴛʀɪᴋᴇ Pᴜʀsᴜᴀɴᴛ ᴛᴏ Cᴀʟ. Cᴏᴅᴇ Cɪᴠ. P. 425.16
(3:21-ᴄᴠ-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

i

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Aldrin v. Topps Co., Inc.*,
2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) .................................................. 13

*Aroa Mktg., Inc. v. Hartford Ins. Co.*,
198 Cal. App. 4th 781 (2011) ............................................................................. 5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 3, 10

*Barrett v. Rosenthal*,
40 Cal. 4th 33 (2006) .......................................................................................... 18

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ............................................................................. 5

*Bosley Med. Inst., Inc. v. Kremer*,
403 F.3d 672 (9th Cir. 2005) ............................................................................. 4

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. June 15, 2021) .................................................. 6

*Callahan v. Ancestry.com Inc.*,
2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...................................................... 9

*Carlisle v. Fawcett Publ'ns, Inc.*,
201 Cal. App. 2d 733 (1962) .............................................................................. 7, 8, 12

*Carver v. Bonds*,
135 Cal. App. 4th 328 (Cal. Ct. App. 2005) ..................................................... 14

*Cohen v. Facebook*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) ............................................................ 6, 17

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ....................................................................................... 5, 6

*Cox Broadcasting Corp. v. Cohn*,
420 U.S. 469 (1975) ............................................................................................ 1, 13

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
139 S. Ct. 1446 (2019) ....................................................................................... 4

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ........................................................................... 4

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

ii

*Del Vecchio v. Amazon.com, Inc.*,
    2012 WL 1997697 (W.D. Wash. June 1, 2012)..............................................................9

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ................................................................1, 14, 15

*Doe v. Reed*,
    697 F.3d 1235 (9th Cir. 2012) ..............................................................................8

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ..............................................12, 16

*Escobar, Inc. v. Barwest Grp., LLC*,
    2021 WL 4319572 (D. Colo. Sept. 22, 2021) ..............................................17

*Fairfield v. American Photocopy Equipment Co.*,
    138 Cal. App. 2d 82 (1955) ..............................................................10, 11

*FLRA v. United States Dep't of Navy*,
    966 F.2d 747 (3d Cir. 1992)................................................................16

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ..............................................7

*Fus v. CafePress, Inc.*,
    2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) ..............................................8

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990)................................................................................3

*Gates v. Discovery Commc'ns, Inc.*,
    34 Cal. 4th 679 (2004) ................................................................19

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007) ..............................................................19

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (Cal. Ct. App. 2001) ..............................................13

*Gordon v. F.B.I.*,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) ..............................................7

*Guglielmi v. Spelling–Goldberg Productions*,
    25 Cal. 3d 860 (1979) ................................................................12

*Health Sys. Agency v. Va. State Bd. of Med.*,
    424 F. Supp. 267 (E.D. Va. 1976) ..............................................14

*Hicks v. Richard*,
    39 Cal. App. 5th 1167 (2019) ..............................................................18

*In re Google, Inc. Privacy Policy Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)..............................................9

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

iii

*In re Jetblue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................. 9

*IRS v. FLRA*,
    706 F.2d 1019 (9th Cir. 1983) ........................................................................... 16

*Jackson v. Loews Hotels, Inc.*,
    2019 WL 2619656 (C.D. Cal. Jan. 4, 2019) ........................................................ 7

*KEMA, Inc. v. Koperwhats*,
    2010 WL 3464737 (N.D. Cal. Sept. 1, 2010) .................................................... 17

*Low v. Linkedin Corp.*,
    2011 WL 5509848 at *3 (N.D. Cal. Nov. 11, 2011).......................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 3, 8

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) .......................................................................... 4, 19

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) ...................................................................... 10, 17

*Mirfasihi v. Fleet Mortg. Corp.*,
    2007 WL 2066503 (N.D. Ill. July 17, 2007)....................................................... 8

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (Cal. Ct. App. 1995) ...................................................... 11

*Moreno v. Hanford Sentinel, Inc.*,
    172 Cal. App. 4th 1125 (2009) .......................................................................... 7

*New Kids On The Block v. News Am. Pub., Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990) ........................................................... 12, 13

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ....................................................................... 11, 14

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) .......................................................................... 5, 6

*No Doubt v. Activision Publ'g, Inc.*,
    192 Cal. App. 4th 1018 (Cal. Ct. App. 2011) .................................................... 5

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) ........................................................................ 18

*Perkins v. Linkedin Corp.*,
    53 F. Supp. 3d 1222 (N.D. Cal. 2014) ............................................................. 17

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir.) ...................................................................................... 4

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

iv

*ProtectMarriage.com - Yes on 8 v. Bowen,*
  752 F.3d 827 (9th Cir. 2014) ...................................................................... 9

*Rondberg v. McCoy,*
  2009 WL 5184053 (S.D. Cal. Dec. 21, 2009) ............................................ 7

*Silha v. ACT, Inc.,*
  2014 WL 11370440 (N.D. Ill. Sept. 2, 2014) ............................................. 9

*Sipple v. Chronicle Publ'g Co.,*
  154 Cal. App. 3d 1040 (1984) ................................................................... 8

*Slivinsky v. Watkins-Johnson Co.,*
  221 Cal. App. 3d 799 (1990) ............................................................... 4, 6

*Sonner v. Premier Nutrition Corp.,*
  962 F.3d 1072 (9th Cir.) ........................................................................ 17

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) .................................................................................. 4

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) .................................................................................. 3

*Summit Bank v. Rogers,*
  206 Cal. App. 4th 669 (2012) ................................................................. 18

*Tobinick v. Novella,*
  848 F.3d 935 (11th Cir. 2017) ................................................................ 19

*Todd v. Tempur-Sealy Int'l, Inc.,*
  2015 WL 1006534 (N.D. Cal. Mar. 6, 2015) ............................................ 8

*Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,*
  813 F.2d 1553 (9th Cir. 1987) ................................................................. 3

*USANA Health Scis., Inc. v. Minkow,*
  2008 WL 619287 (D. Utah Mar. 3, 2008) .............................................. 19

*Vrdolyak v. Avvo, Inc.,*
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) .............................................. 14, 15


**STATUTES**

47 U.S.C. § 230(a)(1) ...................................................................................... 13

Cal. Civ. Code § 3344(d) ................................................................................ 11

Cal. Civ. Proc. Code § 425.16(e)(2) ............................................................... 18

Cal. Civ. Proc. Code § 425.16(e)(3) ............................................................... 18

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

v

Cal. Civ. Proc. Code § 425.16(e)(4) ............................................................... 18

Cal. Code Civ. P. § 425.16(a) ......................................................................... 4

Cal. Code Civ. P. § 425.16(b)(1) .................................................................... 4

Cal. Code Civ. P. 425.16(c)(1) ....................................................................... 19

Cal. Code Civ. Proc. § 425.16(a) ................................................................... 18

Wash. Rev. Code §§ 4.105.010....................................................................... 19

**<u>OTHER AUTHORITIES</u>**

David A. Elder, *Privacy Torts*,
    § 6:9 The Newsworthiness-Public Interest Limitation (2021)........................... 16

Mot. to Dismiss Pursuant to frcp 12 and Mot. to
Strike Pursuant to Cal. Code Civ. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

vi

1    ZoomInfo Technologies Inc. moves to dismiss plaintiff's complaint pursuant to Rules

2   12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to allege an injury sufficient

3   to confer Article III standing or to state a claim upon which relief can be granted.  ZoomInfo further

4   moves to strike plaintiff's complaint pursuant to California's anti-SLAPP statute.

5                               **PRELIMINARY STATEMENT**

6    ZoomInfo provides a directory of business contact information, a form of speech protected

7   by the First Amendment. As the Supreme Court has recognized, "in a society in which each

8   individual has but limited time and resources" people necessarily rely upon others "to bring to him in

9   convenient form the facts." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491 (1975).  "The

10  'yellow pages' telephone directory was once a ubiquitous part of American life, found in virtually

11  every household and office." *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 953 (9th Cir.

12  2012) (holding that a yellow pages telephone directory that provides "names, addresses, and phone

13  numbers of local businesses and professionals" is fully protected speech under the First

14  Amendment).  Directories continue to serve an important role in American culture and business.

15  Many of today's directories are virtual and searchable, keeping pace with technology and

16  environmental preferences.

17   Like the ubiquitous yellow pages, ZoomInfo's directory contains professional contact

18  information (name, work phone number, work email, job title, etc.).  Users can search ZoomInfo's

19  database for professional contact information, and in response to such inquiries, ZoomInfo presents a

20  free preview of relevant data.  A subscription permits access to the full database.

21   ZoomInfo's service prompted plaintiff, who is a Political and Legislative Director at the

22  American Federation of State, County and Municipal Employees ("AFSCME"), to file this putative

23  class action under California law, claiming ZoomInfo misappropriated her name and likeness.  These

24  claims are ill-founded—this information is already public and available online, including through her

25  organization's website and her own publicly available LinkedIn page.

26   At the threshold, plaintiff fails to establish she suffered an injury in fact.  The basic and

27  benign information at issue is widely available online. And plaintiff contends only that ZoomInfo

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1

republishes these public facts and accurately discloses that a user may gain full access to the previewed information through payment.  No harm could plausibly result from the mere existence of plaintiff's professional contact information in ZoomInfo's database or by previewing that information in response to a search.

In any event, both the right of publicity and claims of misappropriation must yield to constitutional free speech interests, something the California law itself recognizes: the directory previews here fall squarely within the public interest exception, which protects the type of information gathering for public distribution in which ZoomInfo engages.

Further, the Complaint should be stricken under California's anti-SLAPP statute, Cal. Code Civ. P. § 425.16, which bars lawsuits like this one that arise from exercise of the defendant's free-speech rights and for which plaintiff cannot show a probability of success on the merits.

## BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

ZoomInfo operates an online searchable database that contains professional contact information: name; company name and description; company phone number; work email; job title; and company address.  *See* ZoomInfo.com; Compl. ¶ 28.  ZoomInfo obtains this information from various sources, including public websites and voluntary contributions.  *See* ZoomInfo.com; Compl, ¶¶ 11-12.  ZoomInfo hosts millions of records, many of which have never been accessed or previewed by actual users and exist "unseen" in its database.

Plaintiff Kim Carter Martinez is a Political and Legislative Director at the AFSCME, an "affiliated member labor union representing public sector employees in industries such as health care, education, and social services. Through advocacy and legislative action, AFSCME aims to promote social and economic justice."  Compl. at  ¶ 28 ("teaser profile accurately identifies her name . . . job title, partially redacted job description," etc.).  Plaintiff's claims are premised on ZoomInfo's inclusion of her name, work email address, company headquarters' phone number, company name, company headquarters' address, an organization chart that only contains her name and job title, and company job description. *Id.* at ¶¶ 23, 28-29.  Plaintiff alleges ZoomInfo displays this information in partially redacted form if a user searches her name in ZoomInfo's directory

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1    (either through ZoomInfo's built-in search bar or through Google's search bar when her name is
2    typed in conjunction with the word "zoominfo"). *Id.* at ¶¶ 23, 30-32. Plaintiff does not contend her
3    information was actually ever viewed or previewed by anyone other than her attorneys. Plaintiff
4    also does not articulate or attempt to quantify any monetary injury from ZoomInfo's storage of this
5    information in its database.

6        Based on ZoomInfo's inclusion of this information in its database, plaintiff asserts two
7    claims on behalf of a putative class of California residents: (1) violation of California Civil Code
8    § 3344 (California's right of publicity statute), and (2) violation of California common law for
9    misappropriation of name and likeness. *Id.* at ¶¶ 54-64.

10                                   **LEGAL STANDARDS**

11       **Article III Standing.**   To establish standing under Article III of the U.S. Constitution,
12   plaintiff must allege she suffered an "injury in fact" that is causally linked to the conduct complained
13   of and would be redressed by a decision in her favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,
14   560-61 (1992). These requirements are "the irreducible constitutional minimum" for standing. *Id.* at
15   560. The "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be
16   removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

17       When a defendant raises a Rule 12(b)(1) challenge to the asserted basis for subject matter
18   jurisdiction, plaintiff bears the burden of establishing subject matter jurisdiction. *See FW/PBS, Inc.*
19   *v. Dallas*, 493 U.S. 215, 231 (1990). A Rule 12(b)(1) motion is properly granted when "the material
20   jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."
21   *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (internal
22   quotation marks omitted).

23       **Failure to State a Claim.**   To survive a motion to dismiss, a complaint must contain
24   "sufficient factual matter" to state a claim for relief that is "plausible" on its face. *Ashcroft v. Iqbal*,
25   556 U.S. 662, 678 (2009). A claim is plausible when factual allegations permit the "reasonable
26   inference" that the defendant is liable for the conduct alleged. *Id.* "Threadbare recitals of the
27   elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts

Mot. to Dismiss Pursuant to FRCP 12 and Mot. to
Strike Pursuant to Cal. Code Civ. P. 425.16
(3:21-cv-05725-MJP)

3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1   that are "merely consistent with" liability fail to state a claim. *Id.* (quotations omitted).

2        **Motion to Strike Pursuant to California's Anti-SLAPP Statute.** California's anti-SLAPP

3   statute was enacted in response to the "disturbing increase in lawsuits brought primarily to chill the

4   valid exercise of the constitutional rights of freedom of speech and petition for the redress of

5   grievances." Cal. Code Civ. P. § 425.16(a). The Ninth Circuit has recognized the availability of this

6   special motion in federal court proceedings. *E.g., DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009,

7   1015 (9th Cir. 2013). To prevail on a motion to strike, a defendant need only make a "prima facie

8   showing that the plaintiff's suit arises from an act in furtherance of defendant's right of petition or

9   free speech. . . . The defendant need not show that plaintiff's suit was brought with the intention to

10   chill defendant's speech; the plaintiff's intentions are ultimately beside the point." *Bosley Med.*

11   *Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (quotations, citations omitted). The burden

12   then shifts to the plaintiff to establish a probability of success on the merits. Cal. Code Civ. P.

13   § 425.16(b)(1); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) ("The burden then

14   shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for

15   that claim to survive dismissal.").

16        When an anti-SLAPP motion is based on the insufficiency of the pleadings, "a district court

17   should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is

18   properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828,

19   834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med.*

20   *Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019).

21                         **ARGUMENT**

22   **I.    PLAINTIFF DID NOT SUFFER ANY INJURY AS A RESULT OF THE**

23          **ALLEGED VIOLATION**

24        Article III of the U.S. Constitution makes actual injury a jurisdictional requirement for each

25   of plaintiff's claims. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In addition, "injury" is

26   an element of plaintiff's state-law claims for violation of the "right of publicity" and common law

27   misappropriation. *See, e.g., Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990)

1   ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name" and is an

2   element of both 3344 claim and common law misappropriation of a name or likeness claim);

3   *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) ("resulting injury" is an element of

4   both 3344 claim and common law misappropriation of a name or likeness claim).  Here, plaintiff

5   does not even allege that anyone aside from her attorneys searched for her and viewed the

6   challenged ZoomInfo previews.  Instead, plaintiff contends only that she is one of the "millions of

7   other individuals" whose business contact information is searchable in ZoomInfo's database.

8   Compl. ¶ 5.  That allegation is far from articulating any injury to plaintiff.  *Cf. Beck v. McDonald*,

9   848 F.3d 262, 269 (4th Cir. 2017) (no Article III injury where leaked medical records were not

10  accessed by anyone—it was implausibly "attenuated" to assume a thief would "select [plaintiff]'s

11  report from the over 3,600 reports in the missing boxes").  Further, even if plaintiff could allege her

12  information was searched or viewed, none of the four purported "injuries" she identifies suffices for

13  purposes of Article III standing.

14  **A.**     **Plaintiff's Allegation That ZoomInfo Violated Her Intellectual Property**

15          **Rights Does Not Constitute an Injury In Fact**

16  *First*, plaintiff claims ZoomInfo violated her intellectual property rights.  Compl. ¶¶ 18, 19.

17  Although some courts have characterized the "right of publicity" as a form of intellectual property,

18  they have done so only where plaintiffs can demonstrate their names or likenesses have some

19  corresponding commercial value.  *See, e.g., No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th

20  1018, 1030 (Cal. Ct. App. 2011) (rock band had intellectual property right in use of its image in a

21  video game); *Aroa Mktg., Inc. v. Hartford Ins. Co.*, 198 Cal. App. 4th 781, 785 (2011) (intellectual

22  property right in use of model's image to sell products); *Comedy III Prods., Inc. v. Gary Saderup,*

23  *Inc.*, 25 Cal. 4th 387, 399 (2001) (intellectual property right in use of likeness of the The Three

24  Stooges).  As the California Supreme Court explained:

25

26

27

Mot. to Dismiss Pursuant to frcp 12 and Mot. to
Strike Pursuant to Cal. Code Civ. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

5

1
2
3
4
5

> The right of publicity, like copyright, protects a form of intellectual property that society deems to have some social utility. Often considerable money, time and energy are needed to develop one's prominence in a particular field. Years of labor may be required before one's skill, reputation, notoriety or virtues are sufficiently developed to permit an economic return through some medium of commercial promotion. For some, the investment may eventually create considerable commercial value in one's identity.

6
7
8
9
10
11
12
13
14

*Comedy III*, 25 Cal. 4th at 399 (internal quotation marks omitted). In turn, an injury occurs where that commercial value has been diminished by defendant's use. For example, in *Aroa*, the court upheld a finding that an insurance company had no obligation to defend a right of publicity suit because the relevant injury arose from an intellectual property right—the right to use a model's image. *Aroa*, 198 Cal. App. 4th at 788-89; *See also Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) ("Some cases characterize the right of publicity as an intellectual-property claim. But the cases that the plaintiffs cite all involve misappropriation of celebrities' images that had commercial value. . . . Again, there is no corresponding commercial value here or other separate injury, and thus, there is no injury in fact.").

15
16
17
18
19
20
21
22
23
24
25
26
27

Here, plaintiff relies on the bare "intellectual property" label but fails to explain any purported "property" interest in her name or likeness or how it was diminished by ZoomInfo's use. Were it the case that the law creates an "intellectual property" right that is automatically diminished by *any* use of a plaintiff's name or likeness, this would eviscerate the requirement that plaintiff prove "injury" as an element of the claim—every use would necessarily give rise to an "injury." *See, e.g., Slivinsky*, 221 Cal. App. 3d at 807 ("Resulting injury is the *sine qua non* of a cause of action for misappropriation of name" and is an element of both 3344 claim and common law misappropriation of a name or likeness claim); *Newcombe*, 157 F.3d at 692 ("resulting injury" is an element of common law misappropriation of a name or likeness). For this reason, courts assessing whether a plaintiff has been "injured" consistently require more. *See, e.g., Callahan*, 2021 WL 2433893, at *1 ("use of data to solicit customers—without something more, such as an inference that the profiled persons personally endorsed Ancestry's product—is not injury in fact."); *Cohen v. Facebook*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (plaintiffs failed to allege injury despite defendant's use of

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

6

their names and images).

**B.      Alleged Invasion of Plaintiff's Privacy Does Not Establish an Injury In Fact**

*Second*, plaintiff claims her privacy was invaded.  Compl. ¶¶ 19, 59.  But this allegation is belied by the non-private nature of the information at issue.  Plaintiff's claims are premised on benign, professional contact information intended for distribution and already publicly available through a variety of sources, including her company's website and LinkedIn.  Request For Judicial Notice ("RJN"); Declaration of Alicia Cobb ("Cobb Decl."), Ex. 1 (AFSCME public website page identifies plaintiff by name and job title—Political and Legislative Director at AFSCME Council 57's Sacramento office and provides same professional contact information available through ZoomInfo) & Ex. 2 (plaintiff's public LinkedIn profile lists her name, current and previous job positions and descriptions, educational background, etc.); *See, e.g., Carlisle v. Fawcett Publ'ns, Inc.*, 201 Cal. App. 2d 733, 747-48 (1962) ("The very fact that they were contained in a public record is sufficient to negative the idea that their publication was a violation of a right of privacy.  When the incidents of a life are so public as to be spread upon a public record they come within the knowledge and into the possession of the public and cease to be private.") (internal quotation marks omitted); *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1040 (N.D. Cal. 2005) (names of TSA employees were not private); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1144 (S.D. Cal. 2005) ("Numerous cases hold that there is no privacy for a matter already in the public domain.") (collecting cases); *Rondberg v. McCoy*, 2009 WL 5184053, at *9 (S.D. Cal. Dec. 21, 2009) ("A matter that is already public or that has previously become part of the public domain is not private."); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009), *as modified* (Apr. 30, 2009) (holding the challenged information was not private where it was "available to any person with a computer," and thus "no reasonable person would have had an expectation of privacy").

Where, as here, the information at issue is not private, no liability can result from further dissemination, which is all that plaintiff alleges.  *Jackson v. Loews Hotels, Inc.*, 2019 WL 2619656, at *3–4 (C.D. Cal. Jan. 4, 2019) (plaintiff suffered no injury in fact when only publicly available information such as her "full name, email, phone number, and address" was exposed in data breach);

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1   *Fus v. CafePress, Inc.*, 2020 WL 7027653, at *3 (N.D. Ill. Nov. 30, 2020) (no concrete injury where

2   "most of Fus's information possessed by CafePress at the time of the hack was publicly available

3   information, such as his billing and shipping address and personal email address"); *Todd v. Tempur-*

4   *Sealy Int'l, Inc.*, 2015 WL 1006534, at *4 (N.D. Cal. Mar. 6, 2015) ("[B]ecause the information in

5   the Product Training Guides is already available to the public . . . Defendant has failed to show that

6   any particularized harm will result from disclosure of the information."); *Mirfasihi v. Fleet Mortg.*

7   *Corp.*, 2007 WL 2066503, at *4 (N.D. Ill. July 17, 2007), *aff'd*, 551 F.3d 682 (7th Cir. 2008)

8   ("Because the information disclosed was already a matter of public record . . . FMC's disclosure

9   could not have caused any harm."); *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047

10  (1984) ("Moreover, it is equally underlined that there is no liability when the defendant merely gives

11  further publicity to information about the plaintiff which is already public or when the further

12  publicity relates to matters which the plaintiff leaves open to the public eye.").  "[T]he protection

13  afforded by the law to the right of privacy must be restricted to 'ordinary sensibilities' and not to

14  supersensitiveness or agoraphobia.  There are some shocks, inconveniences and annoyancies [*sic*]

15  which members of society in the nature of things must absorb without the right of redress." *Carlisle*,

16  201 Cal. App. 2d at 748 (internal quotation marks and citations omitted).

17         Moreover, to the extent plaintiff's claimed injury hinges on a supposed "privacy" violation,

18  she cannot plausibly allege this purported injury was caused by ZoomInfo or that this "harm" could

19  be redressed by a decision in her favor.  *Lujan*, 504 U.S. at 560-61 (allegations of actual injury must

20  not only be plausible; they must also be causally linked to the unlawful practice at issue and it must

21  be "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable

22  decision").  Because the information is available through sources distinct from and unrelated to

23  ZoomInfo, any decision here would not impact that availability.  *See, e.g., Doe v. Reed*, 697 F.3d

24  1235, 1240 (9th Cir. 2012) (it is "our commonsense conclusion that once a fact is widely available to

25  the public, a court cannot grant any 'effective relief' to a person seeking to keep that fact a secret.

26  We doubt, because of the information's availability on the internet, that enjoining further disclosure

27  by the parties will 'narrow [any further] dissemination.'"); *ProtectMarriage.com - Yes on 8 v.*

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

8

1    *Bowen*, 752 F.3d 827, 835 n.3 (9th Cir. 2014) ("the challenged information is in the hands of third

2    parties over whom we lack jurisdiction, and it has been widely available on the Internet for several

3    years.  It is now impossible to identify how many people have viewed this information, locate every

4    reproduction of this information, and prevent the information's continued disclosure.  As in *Doe*, the

5    widespread disclosure of Appellants' PRA disclosures precludes us from providing the 'effective

6    relief'").

7          **C.**      **ZoomInfo's Profit Is Not an Injury to Plaintiff**

8        *Third*, plaintiff claims she was injured "through ZoomInfo's unlawful profiting" from her

9    information.  Compl. ¶ 19.  However, it is well-established any alleged benefit to ZoomInfo cannot

10   provide the necessary injury in fact—a defendant's alleged gain does not mean the plaintiff suffered

11   a loss of her own.  *E.g., Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *4 (W.D. Wash.

12   June 1, 2012) ("*It is not enough to allege only that the information has value to Defendant; the term*

13   *'loss' requires that Plaintiffs suffer a detriment*.") (emphasis in original); *Callahan v. Ancestry.com*

14   *Inc.*, 2021 WL 783524, at *4 (N.D. Cal. Mar. 1, 2021) ("Ancestry's using the public profiles to

15   solicit paying subscribers—standing alone—does not establish injury."); *In re Google, Inc. Privacy*

16   *Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than

17   point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost

18   dollars of his own."); *Silha v. ACT, Inc.*, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014), *aff'd*,

19   807 F.3d 169 (7th Cir. 2015) ("Plaintiffs' allegations that Defendants profited from selling Plaintiffs'

20   PII does not amount to an injury in fact for standing purposes.").

21        Plaintiff does not allege she could have profited from the sale of her professional contact

22   information or that ZoomInfo's use prevented her from doing so—nor could she, when the

23   information is already publicly available.  *See, e.g., In re Jetblue Airways Corp. Privacy Litig.*, 379

24   F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("there is absolutely no support for the proposition that the

25   personal information of an individual JetBlue passenger had any value for which that passenger

26   could have expected to be compensated").  That the information has value to ZoomInfo—which is

27   all plaintiff has alleged—"is simply insufficient." *See Del Vecchio*, 2012 WL 1997697, at *4

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

9

1  ("Plaintiffs all-but concede that they suffered no actual monetary detriment by alleging that the

2  'private information' at the heart of this dispute was not 'economically exploitable by Plaintiffs and

3  Class Members'—only that it was valuable to Defendant").

4      **D.    Plaintiff's Conclusory Allegations of Mental Harm Do Not Establish the**

5                     **Requisite Injury**

6      *Finally*, plaintiff's conclusory allegations of harm to her peace of mind are entirely

7  implausible and thus cannot supply the requisite injury in fact.  *See* Compl. ¶¶ 2, 19, 44, 59;

8  *Ashcroft*, 556 U.S. at 678 (2009).  The professional contact information at issue is innocuous and

9  readily available through a simple browser search.  Parallel disclosure of public record information

10  cannot plausibly cause any harm.

11      The court in *Low v. Linkedin Corp.* addressed an analogous situation.  2011 WL 5509848 at

12  \*3 (N.D. Cal. Nov. 11, 2011).  There, the plaintiff claimed he suffered "embarrassment and

13  humiliation caused by the disclosure of his personally identifiable browsing history." *Id.* (alterations

14  omitted).  However, the plaintiff alleged only that "his personal LinkedIn user identification number,

15  associated with a social search for his own name, was transmitted to third parties by LinkedIn." *Id.*

16  The court rejected these purported "injuries" as insufficient: plaintiff had failed to allege "what

17  information was actually disclosed to third parties that would lead Plaintiff to suffer emotional

18  harm," such as "embarrassing details of his personal browsing patterns . . . linked to his identity by

19  LinkedIn[.]"  *Id.*  Here, plaintiff similarly cannot point to any "embarrassing details" that were

20  revealed, nor any use of her name that could plausibly have resulted in the claimed harm to her peace

21  of mind.

22      The "mental anguish" form of injury that plaintiff attempts to invoke stems from the

23  California appellate court decision in *Fairfield v. American Photocopy Equipment Co.*, 138 Cal.

24  App. 2d 82 (1955).  *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008)

25  (recognizing "the legislative history of section 3344(a) reveals the statutory minimum damages were

26  meant to compensate non-celebrity plaintiffs who suffer the *Fairfield* form of mental anguish").  But

27  in *Fairfield*, the defendant circulated "a printed advertisement indicating that plaintiff was a satisfied

Mot. to Dismiss Pursuant to FRCP 12 and Mot. to
Strike Pursuant to Cal. Code Civ. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

10

1  user" of defendant's product, a photocopy machine the plaintiff had previously purchased then

2  returned for a refund. *Fairfield*, 138 Cal. App. 2d at 85.  The court determined it was error to

3  prevent the plaintiff from proving he was entitled to more than nominal damages: "[t]he

4  advertisement necessarily carried the implication that plaintiff endorsed the machine and had

5  permitted defendant to use his name as a lawyer in its advertisements.  He had done neither," and, as

6  a result of the advertisement, "he had received telephone calls from other lawyers and . . . he had had

7  conversations with other lawyers pertaining to the advertisement." *Id.* at 88, 90.  Thus, the form of

8  "mental anguish" the court recognized in *Fairfield* did not result from mere republication of

9  plaintiff's name and image but was instead supported by concrete facts that could plausibly have led

10  to such injury: that plaintiff's colleagues believed he had endorsed a product that the plaintiff had, in

11  fact, been completely dissatisfied with.  *Id.* at 85-91.

12  　　　In contrast, plaintiff here can neither allege her name or image was used to make it appear

13  she endorsed ZoomInfo, nor any other facts that might plausibly give rise to the "mental injury" she

14  claims to have suffered as a result of ZoomInfo's publication of her already-public information.

15  **II.     PLAINTIFF'S CLAIMS FAIL BECAUSE SHE CHALLENGES PUBLICATION**

16  　　　　**OF MATTERS IN THE PUBLIC INTEREST**

17  　　　California law bars both a common law misappropriation claim and a statutory right of

18  publicity cause of action when such actions are based on publication of matters that are in the public

19  interest or concern public affairs.  *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790,

20  793 (Cal. Ct. App. 1995), *as modified* (May 30, 1995) ("Like the common law cause of action, the

21  statutory cause of action specifically exempts from liability the use of a name or likeness in

22  connection with the reporting of a matter in the public interest."); Cal. Civ. Code § 3344(d) (no

23  liability for "use of a name, voice, signature, photograph, or likeness in connection with any news

24  [or] public affairs[.]").  This defense is based on and informed by the First Amendment, but not

25  coextensive with it; rather, this exception provides protection that is broader than that provided by

26  the First Amendment. *See, e.g., New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310

27  n.10 (9th Cir. 1992) ("[T]he section 3344(d) defense is not coextensive with the First Amendment.

Mot. to Dismiss Pursuant to frcp 12 and Mot. to
Strike Pursuant to Cal. Code Civ. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

11

Rather, it is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest.").

"[T]he public is interested in and constitutionally entitled to know about things, people, and events that affect it[,]" which includes "subjects that do not relate to politics or public policy, and may not even be important, but are of interest." *Dora v. Frontline Video*, *Inc.*, 15 Cal. App. 4th 536, 545-46 (Cal. Ct. App. 1993). "[M]atters in the public interest are not restricted to current events" but rather include matters that "may legitimately inform and entertain the public" such as "the reproduction of past events, travelogues and biographies." *Id.* at 546; *see also Carlisle*, 201 Cal. App. 2d at 746 ("The privilege of printing an account of happenings and of enlightening the public as to matters of interest is not restricted to current events"). The interest need not be widespread, it suffices if it "is of more than passing interest to some." *Dora*, 15 Cal. App. 4th at 539. Whether the defendant profits from the publication has no impact on the application of this exception. *New Kids On The Block v. News Am. Pub., Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992) (immunity "does not hinge upon whether or not an activity is profitable or unprofitable"); *Guglielmi v. Spelling–Goldberg Productions*, 25 Cal. 3d 860, 868–69 (1979) (protection "is not limited to those who publish without charge. . . .the activity . . . does not lose its constitutional protection because it is undertaken for profit. . . . The fact that respondents sought to profit from the production and exhibition of a film utilizing Valentino's name and likeness is not constitutionally significant.").

Here, ZoomInfo's professional directory provides access to business information: name, job title, work e-mail address, as well as the company's name, address, phone number, description, and organizational chart. Compl. ¶¶ 28-29. It is well-established that collection and dissemination of this kind of information is protected by the public interest exception.

### A.   ZoomInfo's Use Is Immune Because It Is Informative

Where the purpose for which a person's identity is used "is 'informative or cultural' the use is immune[.]" *New Kids On The Block*, 745 F. Supp. at 1546. For example, in *New Kids On The*

*Block*, the plaintiffs asserted claims under section 3344 where the defendants posted an "article" with the name and pictures of the group that solicited readers to call a pay-per-call phone number to vote for "the sexiest New Kid." *Id.* at 1542. The court dismissed the plaintiffs' misappropriation claims, holding this use of the group's name and image was "gathering information for dissemination to the public," a protected activity. *Id.* at 1546.

Similarly, in *Aldrin v. Topps Co., Inc.*, astronaut Buzz Aldrin asserted a misappropriation claim under section 3344 where the defendant—a baseball card manufacturer—released a new product line with plaintiff's image on the front and historical information related to the picture on the back. 2011 WL 4500013,*1 (C.D. Cal. Sept. 27, 2011). Again, the court dismissed the claim because the activity was protected. The use of Aldrin's information was not "linked to products that bore no relationship" to plaintiff—rather, "the speech *is* the product, and is protected." *Id.* at *3 (emphasis in original).

So too here. Plaintiff's business contact information is not being used to sell an unrelated product; rather, the information is the product. ZoomInfo merely collects professional contact and organizational information for dissemination to the public, which is protected speech. *See New Kids On The Block*, 745 F. Supp. at 1546 (gathering information for dissemination to the public for informative purposes is protected speech); *Aldrin*, 2011 WL 4500013 at *3 (dismissing misappropriation claim based on publication of name, image, and historical information about plaintiff); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (Cal. Ct. App. 2001) (protection for Major League Baseball's use of "factual data concerning players, their performance statistics, and verbal descriptions and video depictions of their play."). As the Supreme Court has recognized, "in a society in which each individual has but limited time and resources," people necessarily rely upon others "to bring to him in convenient form the facts." *Cox*, 420 U.S. at 491. ZoomInfo fulfills that role by providing this information to the public and is therefore immune to plaintiff's claims. Indeed, Congress has explicitly recognized the public value in facilitating the more widespread availability of this type of information through the internet. *See* 47 U.S.C. § 230(a)(1) (recognizing the "rapidly developing array of Internet and other interactive computer

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

13

services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.").

### B.   Professional Directories Concern Matters of Public Interest

Professional directories concern matters in the public interest protected by the First Amendment. *See, e.g., Dex Media W., Inc.*, 696 F.3d at 954 (directories "qualify for full protection under the First Amendment"); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (directory of attorneys did not violate the Illinois Right of Publicity Act because it was protected First Amendment speech); *Health Sys. Agency v. Va. State Bd. of Med.*, 424 F. Supp. 267, 269 (E.D. Va. 1976) (the First Amendment protects "rights to gather, publish, and receive information about physicians' services . . . through the publication of [a] directory."); *see also Carver v. Bonds*, 135 Cal. App. 4th 328, 344 (Cal. Ct. App. 2005) (newspaper article regarding a doctor involved an issue of public concern because it could assist others in choosing doctors). Because the public interest defense "is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest[,]" and directories are protected under the First Amendment, directories are also protected by the public interest exception under California law. *New Kids on the Block*, 971 F.2d at 310 n.10.

The court's decision in *Vrdolyak* is instructive. There, the plaintiff brought a putative class action alleging violation of the Illinois Right of Publicity Act against a company that published a website that contained directory profiles of attorneys (profile pages created from public records that contained "the attorney's name, education, address, phone number, and practice area") and promoted certain legal services. 206 F. Supp. 3d at 1385-86. The plaintiff alleged that by placing "ads for competing attorneys on his profile page (as well as ads for defendant's own legal services) defendant has misappropriated plaintiff's identity for commercial purposes in violation of the IRPA." *Id.* at 1386. The court found the defendant's actions were akin to providing a yellow pages directory and, accordingly, those actions were protected by the First Amendment and exempted from the right of publicity statute. *Id.* at 1387-89. The court explained that "to hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals

such as teachers, directors and other professionals, such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements." *Id.* at 1388-89. Similarly, the Ninth Circuit in *Dex Media W. Inc.* held that "[u]sers consult phone books for a number of reasons, including finding business, government, and personal telephone numbers and addresses, identifying businesses that provide a desired service or good, comparing goods and services available from multiple sellers, and learning about local telephone service and the community" and held the yellow pages telephone directory, which contain "business 'white pages' sections, which provide names, addresses, and phone numbers of local businesses and professionals" is fully protected speech under the First Amendment.  696 F.3d at 954, 965.

The same is true here.  ZoomInfo's directory and previews contain names, business e-mails, company names, company addresses, and company phone numbers (Compl. ¶ 28): the same type of information at issue in *Vrdolyak* and *Dex Media W. Inc.* that the courts determined was protected by the First Amendment.  *Vrdolyak*, 206 F. Supp. 3d at 1386; *Dex Media W., Inc.*, 696 F.3d at 954, 965.

C.      **Plaintiff's Business Contact Information and Activity as a Political and Legislative Director of a Labor Union Are Matters of Public Interest**

The "preview" plaintiff challenges also constitutes a matter in the "public interest" because it conveys information about plaintiff's role as a Political and Legislative Director at the AFSCME, a labor union that represents thousands of public sector employees across a variety of industries through "advocacy and legislative action" and works to "improve wages, benefits and working conditions through organizing, collective bargaining and political action."  RJN; Cobb Decl., Ex. 3 (challenged ZoomInfo profile providing links to "web references" for posts on plaintiff's work with the AFSCME and "scoops" on the AFSCME), & Ex. 4 (AFSCME's "About Us" page states that "AFSCME Council 57 is comprised of 26 local unions representing 35,000 members throughout Northern California and the Central Valley. Established in 1963, the Council was formed as a progressive, member-driven labor organization dedicated to empowering and securing dignity and respect for all workers.").

"[T]he public is interested in and constitutionally entitled to know about things, people, and

1    events that affect it." *Dora*, 15 Cal. App. 4th at 546.  Here, the "preview" undoubtedly falls within

2    this category of speech.  Not only does it provide contact information for an employee responsible

3    for the legislative and political actions of a union that represents thousands of public employees, but

4    it also contains links to information regarding the activities of the union.  This type of information

5    would be of interest not only to the thousands of union members, but many others, including those

6    interested in joining the union or who might be impacted by its collective bargaining or organized

7    movements.  *See IRS v. FLRA*, 706 F.2d 1019, 1023 (9th Cir. 1983) ("collective bargaining and labor

8    organizations . . . are in the public interest."); *FLRA v. United States Dep't of Navy*, 966 F.2d 747,

9    750 (3d Cir. 1992) ("Congress plainly stated that collective bargaining 'safeguards the public

10   interest' and 'contributes to the effective conduct of public business;' therefore, 'labor organizations

11   and collective bargaining in the civil service are in the public interest.'"); David A. Elder, *Privacy*

12   *Torts*, § 6:9 The Newsworthiness-Public Interest Limitation (2021) ("[T]he newsworthiness-public

13   interest privilege is not limited to matters regarding public figures and has been freely defined to

14   extend to an almost limitless variety of matters about private individuals which are of interest to the

15   viewing, reading or listening public—matters of sexual, social and ethical mores; current news about

16   public events or occurrences; historical events or occurrences; social movements and problems;

17   public safety; political occurrences and/or abuse of office; travel; entertainment; human interest

18   stories; consumerism; landlord rental policy; grooming and fashion; romance; crime and prisons;

19   physical fitness; medical and psychiatric issues; labor and employment; accidents and catastrophes;

20   matters of educational interest.") (collecting cases).  Here, ZoomInfo's directory and previews of

21   that directory are protected speech in the public interest that warrants dismissal of plaintiff's

22   misappropriation and right of publicity claims.

23   **III.    THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR STATUTORY**

24   **DAMAGES BECAUSE PLAINTIFF CANNOT PLAUSIBLY ALLEGE ANY**

25   **MENTAL ANGUISH**

26          Plaintiff seeks statutory damages under section 3344.  *See* Compl. at ¶¶ 20, 58, & Prayer for

27   Relief.  However, statutory damages are only available to those who have suffered mental anguish as

Mot. to Dismiss Pursuant to FRCP 12 and Mot. to
Strike Pursuant to Cal. Code Civ. P. 425.16
(3:21-cv-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

16

1   a result of the alleged violation.  *See Miller*, 159 Cal. App. 4th at 1006 ("[T]he legislative history of

2   section 3344(a) reveals the statutory minimum damages were meant to compensate non-celebrity

3   plaintiffs who suffer . . . mental anguish yet no discernible commercial loss.  To the extent Miller

4   suffered commercial loss . . . his recourse was to prove actual damages like any other plaintiff whose

5   name has commercial value."); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1243 (N.D. Cal.

6   2014) (dismissing statutory damages claim where plaintiffs had not alleged mental anguish resulted

7   from the claimed violations).  As previously discussed,  plaintiff provides no supporting factual basis

8   that makes plausible her rote allegations of distress, "emotional disturbance," "mental injury,"

9   worry, and discomfort.  *See* Compl. ¶¶ 2, 44, 59.  Because plaintiff fails to provide any factual

10  support for her conclusory assertion that ZoomInfo's inclusion of her public professional contact and

11  other job information in its database caused her any mental anguish, she cannot recover statutory

12  damages.  Accordingly, the Court should strike plaintiff's prayer for statutory damages.  *See Cohen*,

13  798 F. Supp. 2d at 1097 ("plaintiffs must, at a minimum, plead that they suffered mental anguish as a

14  result of the alleged misappropriation, and a plausible supporting factual basis for any such

15  assertion.").

16  **IV.    THE COURT SHOULD STRIKE PLAINTIFF'S PRAYER FOR EQUITABLE**

17  **RELIEF BECAUSE AN ADEQUATE REMEDY AT LAW EXISTS**

18        Federal courts cannot award equitable relief where, as here, plaintiff admits there is an

19  adequate remedy at law.  *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir.), *opinion*

20  *amended and superseded on denial of reh'g*, 971 F.3d 834, 844 (9th Cir. 2020) (a plaintiff "must

21  establish that she lacks an adequate remedy at law before securing equitable restitution for past

22  harm").  Here, plaintiff's request for restitution is premised on the same conduct that underlies her

23  request for damages, which serve as an adequate remedy at law.  *See* Compl. ¶ 19, Prayer for Relief.

24  Accordingly, the Court should strike plaintiffs' request for equitable relief.  *See, e.g., KEMA, Inc. v.*

25  *Koperwhats*, 2010 WL 3464737, at *13 (N.D. Cal. Sept. 1, 2010) ("Koperwhats' prayer for damages

26  and restitution is based on [the same] claim, the motions to strike the prayer will be granted.");

27  *Escobar, Inc. v. Barwest Grp., LLC*, 2021 WL 4319572, at *5 (D. Colo. Sept. 22, 2021) (dismissing

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1  claim and prayer for equitable relief of accounting where plaintiff could not show why damages

2  were an inadequate remedy).

3  **V.     THE COURT SHOULD STRIKE PLAINTIFF'S CLAIMS PURSUANT TO**

4  **CALIFORNIA'S ANTI-SLAPP STATUTE**

5           ZoomInfo's conduct falls within two of the categories of speech and petitioning that

6  California's anti-SLAPP statute protects: (1) "any written or oral statement or writing made in a

7  place open to the public or a public forum in connection with an issue of public interest," Cal. Civ.

8  Proc. Code § 425.16(e)(3), and (2) "any other conduct in furtherance of the exercise of the

9  constitutional right of petition or the constitutional right of free speech in connection with a public

10  issue or an issue of public interest." *Id.* § 425.16(e)(4).

11          **Public Forum.**  With respect to the first category, the challenged "teaser profiles" appear in a

12  public forum—ZoomInfo's publicly accessible website. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 41

13  n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-

14  SLAPP statute."); Compl. ¶¶ 4, 10, 30, 32 (alleging ZoomInfo "teaser profiles" are on its website

15  and are also "publicly searchable on the internet").

16          **Public Interest.**  Although California's anti-SLAPP statute does not define "public interest,"

17  "its provisions 'shall be construed broadly' to safeguard 'the valid exercise of the constitutional

18  rights of freedom of speech.'" *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693 (2012) (quoting

19  Cal. Code Civ. Proc. § 425.16(a)).  In compliance with that mandate, California courts define public

20  interest as "*any issue in which the public is interested.*  In other words, the issue need not be

21  'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public

22  takes an interest." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in

23  original).  Here, the previews plaintiff challenges concern matters in the public interest for each

24  reason discussed in Section II—they are informative records, previews of a directory, and touch on

25  plaintiff's activities as part of a labor union that represents thousands of employees. *Hicks v.*

26  *Richard*, 39 Cal. App. 5th 1167, 1176 (2019), *review denied* (Jan. 2, 2020) (there was "little

27  question" the conduct of a private elementary school principal implicated an issue of public interest);

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

18

1   *Gates v. Discovery Commc'ns, Inc.*, 34 Cal. 4th 679, 696 (2004) (anti-SLAPP motion granted where

2   plaintiff, "a person who many years previously served a prison term for a felony conviction but who

3   has since lived an obscure, lawful life and become a respected member of the community," filed suit

4   as a result of historical documentary that was based on information from public records); *Gilbert v.*

5   *Sykes*, 147 Cal. App. 4th 13, 23 (2007) (statements about a plastic surgeon concerned a matter of

6   public interest because it was informative to potential consumers "contemplating plastic surgery.").

7           Because plaintiff's suit seeks to inhibit speech in connection with an issue of public interest,

8   she bears the burden to demonstrate that it is probable she will succeed on the merits. *Makaeff*, 715

9   F.3d at 261. However, as explained above, she cannot meet that hurdle here. Even on the pleadings,

10   plaintiff's claims fail for various, independent reasons, including lack of injury, which is also a

11   required element of both of plaintiff's causes of action, and because her claims fall within the public

12   interest exception.

13           Accordingly, the Court should strike plaintiff's claims and, if the Court grants ZoomInfo's

14   motion, ZoomInfo should be awarded its attorney's fees and costs. *See* Cal. Code Civ. P.

15   425.16(c)(1) ("a prevailing defendant on a special motion to strike shall be entitled to recover that

16   defendant's attorney's fees and costs.").[1]

17                                    **<u>CONCLUSION</u>**

18           For these reasons, ZoomInfo's motion to dismiss and/or special motion to strike should be

19

20   [1]   Plaintiff, a California resident, brings claims exclusively under California law. Accordingly,
California's anti-SLAPP statute applies. *See, e.g., Tobinick v. Novella*, 848 F.3d 935, 944 (11th Cir.
21   2017) (upholding application of California anti-SLAPP statute to California plaintiff's California law
claims); *USANA Health Scis., Inc. v. Minkow*, 2008 WL 619287 (D. Utah Mar. 3, 2008) (upholding
22   application of California anti-SLAPP statute to California state law claims). However, even to the
extent plaintiff contends Washington law governs, the state's anti-SLAPP statute provides equivalent
23   protections that likewise bar plaintiff's suit. *See* Wash. Rev. Code §§ 4.105.010 (prohibiting any
"cause of action asserted in a civil action against a person based on the person's . . . [e]xercise of the
24   right of freedom of speech or of the press, the right to assemble or petition, or the right of
association, guaranteed by the United States Constitution or Washington state Constitution, on a
25   matter of public concern."); 4.105.020 (providing for a special  motion to strike SLAPP suits);
4.105.060 (motion is granted where (1) the moving party shows  the claim is based on speech on a
26   matter of public concern and (2) either the responding party fails to establish a prima facie case as to
each element of the cause of action or the moving party shows that the responding party failed to
27   state a cause of action upon which relief can be granted).

Mot. to Dismiss Pursuant to frcp 12 and Mot. to          QUINN EMANUEL URQUHART & SULLIVAN, LLP
Strike Pursuant to Cal. Code Civ. P. 425.16                          1109 First Avenue, Suite 210
(3:21-cv-05725-MJP)                                                     Seattle, Washington 98101
                                                                             (206) 905-7000

19

1   granted.

2

3   DATED: December 8, 2021

4                                       QUINN EMANUEL URQUHART & SULLIVAN LLP

5
                                        By:  /s/ Alicia Cobb
6                                           Alicia Cobb, WSBA #48685
                                            1109 First Avenue, Suite 210
7                                           Seattle, Washington 98101
                                            Phone (206) 905-7000
8                                           Fax (206) 905-7100
                                            aliciacobb@quinnemanuel.com
9

10                                          Shon Morgan (*pro hac vice* application pending)
                                            John W. Baumann (*pro hac vice*)
11                                          865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017
12                                          Phone (213) 443-3000
                                            Fax (213) 443-3100
13                                          shonmorgan@quinnemanuel.com
                                            jackbaumann@quinnemanuel.com
14

15                                          Cristina A. Henriquez (*pro hac vice*)
                                            555 Twin Dolphin Drive, 5th Floor
16                                          Redwood Shores, California 94065
                                            Phone (650) 801-5000
17                                          Fax (650) 801-5100
                                            cristinahenriquez@quinnemanuel.com
18

19                                          *Attorneys for Defendant ZoomInfo Technologies Inc.*

20

21

22

23

24

25

26

27

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO            QUINN EMANUEL URQUHART & SULLIVAN, LLP
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16                          1109 First Avenue, Suite 210
(3:21-CV-05725-MJP)                                                  Seattle, Washington 98101
                                                                         (206) 905-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2021, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.

DATED this 8th day of December, 2021.

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685

MOT. TO DISMISS PURSUANT TO FRCP 12 AND MOT. TO
STRIKE PURSUANT TO CAL. CODE CIV. P. 425.16
(3:21-CV-05725-MJP)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

21