Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

*Attorneys for Plaintiff and the Proposed Class*
*(Additional counsel listed on signature page)*

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| AMOS GBEINTOR, WILTON ALDERMAN, and DRU DOMINICI, on behalf of themselves and all others similarly situated, | Case No. 4:21-cv-09470-HSG |
| | Hon. Haywood S. Gilliam, Jr. |
| Plaintiffs, | |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| DEMANDBASE, INC. and INSIDEVIEW TECHNOLOGIES, INC., | Complaint Filed: December 8, 2021 |
| Defendants. | |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT ....................................................................................................................... 2

    A.   Plaintiffs have Article III standing ................................................................................. 3

        1.    Plaintiffs have standing because they allege four harms that traditionally gave rise to a common law claim for misappropriation of name or likeness .................................. 4

        2.    Right of publicity and misappropriation of name or likeness claims arise from the defendant's commercial use, not the plaintiff's investment. ...................................... 11

        3.    That Plaintiffs willingly shared their names and personal information with employers and professional networking sites does not affect their claims. .............................. 14

        4.    Plaintiffs' claims do not require implied endorsement ............................................... 15

    B.   InsideView uses each Plaintiffs' persona to advertise "Pro" subscriptions offering many services, not simply access to that Plaintiff's profile ........................................................ 16

    C.   InsideView's commercial advertisements are not protected by the First Amendment. ... 18

    D.   The newsworthy exceptions do not apply ...................................................................... 22

    E.   InsideView's Motion to Dismiss Plaintiffs' UCL Claims Should be Denied. ................. 23

    F.   InsideView's anti-SLAPP motion to strike should be denied. ......................................... 23

CONCLUSION ................................................................................................................... 25

**Cases**

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) ................................................................................................... 19, 21

*Bonilla v. Ancestry.com*,
  No. 20-cv-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021) ............................ 2, 4, 5, 17, 23

*Boshears v. PeopleConnect, Inc.*,
  No. 21-cv-1222, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ...................................... 3, 24

*Bosley v. Wildwett.com*,
  310 F. Supp. 2d 914 (N.D. Ohio 2004) ............................................................. 10, 15, 19, 20

*Brauer v. Pannozzo*,
  232 F. Supp. 2d 814 (N.D. Ohio 2002) ........................................................................... 12

*Brooks v. Thomson Reuters Corp.*,
  No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ............................... 17

*c.f. Guglielmi v. Spelling-Goldberg Prods.*,
  25 Cal. 3d 860 (1979) ................................................................................................. 22

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ......................................................................... 2, 7

*Callahan v. Ancestry.com Inc.*,
  Case No. 20-cv-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) .................... 4, 6, 25

*Callahan v. PeopleConnect*,
  No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) 2, 3, 4, 6, 11, 16, 17, 20, 23, 25

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ....................................................................................... 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980 .................................................................................................... 20

*Cf. Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ..................................................................................... 25

*Cf. Ruiz v. Harbor View Community Ass'n*,
  134 Cal. App. 4th 1456 (2005) ..................................................................................... 25

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal.4th 387 (Cal. 2001) ............................................................................................ 6

*Coulter-Owens v. Time Inc.*,
No. 16-1321, 695 Fed. App'x 117 (6th Cir. June 26, 2017)...............................7, 10

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) .........................................................7, 8, 9

*Del Vecchio v. Amazon.com, Inc.*,
No. 11-cv–366, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ........................8

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ......................................................20

*Dobrowolski v. Intelius, Inc.*,
No. 17-cv-1406, 2018 WL 11185289 (N.D. Ill. Aug. 29, 2017) ........................17

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ..................................................5, 14, 22

*Eastwood v. Superior Court*,
149 Cal. App. 3d 409 (1983) ..........................................................7

*ETW Corp. v. Jireh Publishing, Inc.*,
332 F.3d 915 (6th Cir. 2003) .......................................................5, 22

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) .........................................9, 11, 14, 22, 23

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ........................................................22

*Harvey v. Sys. Effect, LLC*,
154 N.E.3d 293 (Ohio Ct. App. 2020).........................................13, 23

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2009) .....................................................24, 25

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......................................................21

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ...............................................8

*In re Google, Inc. Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .........................................8

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...............................................8

iii

*James v. Bob Ross Buick, Inc.*,
   167 Ohio App. 3d 338 (Ohio Ct. App. 2006) ..................................................... 5, 7, 12

*Kellman v. Spokeo*,
   No. 21-cv-08976, 2022 WL 1157500 (N.D. Cal. April 19, 2022) 2, 3, 4, 5, 6, 9, 10, 12, 13, 15, 17, 19, 20, 21, 23

*Knapke v. PeopleConnect Inc.*,
   553 F.Supp.3d 865 (W.D. Wash. 2021).......................................... 2, 3, 6, 12, 13, 14, 15, 20, 23

*KNB Enterprises v. Matthews*,
   78 Cal. App. 4th 632 (2000) ....................................................................................... 15

*Kolebuck-Utz v. Whitepages Inc.*,
   No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ................... 2, 3, 12, 13, 15, 20

*Krause v. RocketReach, LLC*,
   561 F.Supp.3d 778 (N.D. Ill. 2021); ............................................................................. 2

*L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*,
   239 Cal. App. 4th 918 (2015) ...................................................................................... 24

*Landham v. Lewis Galoob Toys, Inc.*,
   227 F.3d 619 (6th Cir. 2000) ............................................................................. 12, 13, 15

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ........................................................................................ 2

*Low v. LinkedIn Corp.*,
   No. 11-cv-01468, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................................ 11

*Lukis v. Whitepages Inc.*,
   549 F.Supp.3d 798 (N.D. Ill. July 16, 2021) ...................................................... 2, 4, 9, 17, 20

*Manzarek v. Marine*,
   519 F.3d 1025 (9th Cir. 2008) ...................................................................................... 2

*Martinez v. ZoomInfo*,
   C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. Apr. 15, 2022) ..... 3, 4, 10, 12, 14, 16, 24, 25

*McFarland v. Miller*,
   14 F.3d 912 (3d Cir. 1994) ......................................................................................... 14

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ....................................................................................... 6

*Miller v. Glenn Miller Productions, Inc.*,
   454 F.3d 975 (9th Cir. 2006) ....................................................................................... 9

iv

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal. App. 4th 790 (1995), *as modified* (May 30, 1995) .................................................. 22

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
   498 F.2d 821 (9th Cir. 1974) ...................................................................................... 10

*Nayab v. Capital One Bank*,
   942 F.3d 480 (9th Cir. 2019) ................................................................................... 2, 4

*Orthopedic Sys., Inc. v. Schlein*,
   202 Cal. App. 4th 529 (2012) ...................................................................................... 11

*Perkins v. Linkedin Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................... 11, 18

*Perlin v. Time Inc.*,
   237 F. Supp. 3d 623 (E.D. Mich. 2017) ..................................................................... 7, 9

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013) .......................................................................... 25

*Roe v. Amazon.com*,
   70 F. Supp. 3d 1028 (S.D. Ohio 2016) .............................................................. 5, 12, 14

*Sessa v. Ancestry.com*,
   561 F. Supp. 3d 1008 (D. Nev. 2021) ............................................... 2, 4, 5, 6, 14, 23, 25

*Siegel v. ZoomInfo Techs., Inc.*,
   No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ......................................... 3

*Silha v. ACT, Inc.*,
   No. 14-cv-505, 2014 WL 11370440 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir.
   2015) ......................................................................................................................... 8

*Spokeo v. Robins*,
   578 U.S. 330 (2016) .............................................................................. 4, 5, 6, 9, 12

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ....................................................................................... 4, 5, 6, 9

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ................................................................................................... 21

*Zacchini v. Scripps-Howard Broadcasting*,
   433 U.S. 562 (1977) ................................................................................................ 5, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 6

Cal. Bus. & Prof. Code § 17204 .................................................................................... 3

Cal. Civ. Code § 3344 ................................................................. 4, 6, 7, 8, 11, 16, 22, 23

Cal. Civ. Proc. Code § 425.16(e) ................................................................. 23, 24, 25

Ohio Rev. Code § 2741.07.............................................................. 7, 8, 15, 22, 23

**<u>Other Authorities</u>**

J. Thomas McCarthy,
    McCarthy on Trademarks and Unfair Competition, § 18:43 (4th ed. 2005) ............................. 9

# PRELIMINARY STATEMENT

Defendants (collectively, "InsideView") are in the business of selling personal information without permission. InsideView uses Plaintiffs' and Class members' names, personal information, and personas in advertisements promoting monthly subscriptions to InsideView Pro. InsideView sells "Pro" subscriptions to salespeople who want to contact Plaintiffs, Class members, and others with unsolicited promotions. California and Ohio law recognize the right of individuals to control the commercial exploitation of their names and personas. InsideView's non-consensual use of Plaintiffs' personas violates this important and long-standing legal right.

InsideView obtained names, contact information, places of work, education histories, cities of residence, photographs, and other personal information of individuals without their consent. Dkt No. 30 ("FAC"), at ¶¶4, 12-14. InsideView incorporated this information in profiles. Each profile represents one individual and persona. *See, e.g.*, *id.* at ¶¶52, 70. InsideView displays its profiles publicly on the internet to attract subscribers. *Id.* at ¶¶52-61; 70-79. Each profile prompts the user to "Upgrade to Pro" for $99 per month to "Start a Conversation" with the person represented in the profile. FAC, at ¶¶34, 52, 70. InsideView advertises that "Pro" subscribers receive: information about Plaintiffs' "behavior and content consumption," including what "articles and whitepapers . . . podcasts . . and web content" they are consuming; tracking of what Plaintiffs are saying on social media and what others are saying about them; and updates when Plaintiffs change jobs or move locations. *Id.* at ¶¶7, 8, 39, 57. These services help the subscriber identify when Plaintiffs are "in the market to buy," and to "know precisely the right moment to reach out" to Plaintiffs with an unsolicited promotion. *Id.* at ¶8.

InsideView's advertisements violate California and Ohio statutory and common law prohibiting the use of a person's name, personality, and likeness for a commercial purpose without that person's consent. InsideView harmed Plaintiffs and the Class by taking their intellectual property; violating their right to control the commercial use of their personas; unjustly profiting from their personas; and disturbing their peace of mind.

Plaintiffs do not seek to "suppress publication" of information on InsideView Pro. *Cf.* Dkt. No. 31, at *14-15. They seek to prevent InsideView from using their personas to advertise. InsideView could comply with the law by ceasing to display Plaintiffs' profiles to non-subscribers; by removing the messages promoting "Pro" subscriptions from the profiles; or by obtaining consent. This lawsuit is not about the distribution of Plaintiffs' and Class members' information. This lawsuit is about InsideView's use of Plaintiffs' personas without consent to advertise a product Plaintiffs do not endorse and have no desire to promote. As Judge Koh has written, "consent is not an all-or-nothing proposition." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 623 (N.D. Cal. 2021). InsideView's use of Plaintiffs' and Class members' personal information for its own commercial gain without their consent is a violation of law for which Plaintiffs have properly stated claims, and InsideView's motion should be denied.

## **LEGAL STANDARD**

On a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if it is "plausible on its face." *Nayab v. Capital One Bank*, 942 F.3d 480, 485 (9th Cir. 2019) (quotation omitted). The Court's review on a motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

## **ARGUMENT**

Eleven district court decisions have denied motions to dismiss parallel right of publicity and misappropriation of name or likeness claims against websites that, like InsideView, advertise subscriptions by publicly displaying searchable profiles that uniquely identify individuals.[1] Two

---

[1] *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008 (D. Nev. 2021); *Knapke v. PeopleConnect Inc.*, 553 F.Supp.3d 865 (W.D. Wash. 2021); *Bonilla v. Ancestry.com*, --- F. Supp. 3d ---, No. 20-cv-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021); *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ("*Callahan I*"); *Krause v. RocketReach, LLC*, 561 F.Supp.3d 778 (N.D. Ill. 2021); *Lukis v. Whitepages Inc.*, 549 F.Supp.3d 798 (N.D. Ill. July 16, 2021); *Kellman v. Spokeo*, No. 21-cv-08976, 2022 WL 1157500 (N.D. Cal. April 19, 2022); *Kolebuck-Utz v. Whitepages Inc.*, No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021);

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 4:21-cv-09470-HSG

of these decisions are from this District[2] and an additional four are from another district in this Circuit.[3] Three of these decisions evaluated claims arising under Ohio law,[4] and three evaluated claims arising under California law.[5] And two of these decisions evaluated claims against a direct competitor of InsideView that uses the same personal information to advertise the same subscription services. *Martinez v. ZoomInfo*, C21-5725 MJP, 2022 WL 1078630, at *1 (W.D. Wash. Apr. 15, 2022) (ZoomInfo uses "personal, employment, and historical information about many individuals" to "sell subscriptions to its database of 125 million business professionals"); *see also Siegel v. ZoomInfo Techs., Inc*., No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021). Although these cases considered and rejected every argument InsideView advances in favor of dismissal, InsideView does not acknowledge or attempt to distinguish any of this precedent. There is no reason for a different result here. InsideView's motion should be denied.

## A. Plaintiffs have Article III standing.

Nearly all district courts that have considered similar cases have ruled that plaintiffs have Article III standing. In *Martinez v. ZoomInfo*, plaintiffs had standing to pursue California claims against a website that, like InsideView, uses information gathered from professional networking websites and other public sources to advertise a subscription service that business-to-business salespeople use to identify and track prospects. 2022 WL 1078630, at *2-6. In *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ("*Callahan I*"), the defendant created profiles about individuals using information from school yearbooks, then provided free searchable access to those profiles as a means of advertising subscriptions. *Id.* at *14-18. Judge Chen held plaintiffs had standing under Cal. Bus. & Prof. Code § 17204 and alleged

---

*Boshears v. PeopleConnect, Inc*., No. 21-cv-1222, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022); *Martinez v. ZoomInfo Techs, Inc.*, No. 21-cv-5725, 2022 WL 1078630, at *2-6 (W.D. Wash. April 11, 2022); *Siegel v. ZoomInfo Techs., Inc*., No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021).

[2] *Callahan I*, 2021 WL 5050079; *Kellman*, 2022 WL 1157500.

[3] *Martinez*, 2022 WL 1078630; *Boshears*, 2022 WL 888300; *Knapke*, 553 F.Supp.3d 865; *Kolebuck-Utz*, 561 F.Supp.3d 778.

[4] *Knapke*, 553 F.Supp.3d 865; *Kellman*, 2022 WL 1157500; *Kolebuck-Utz*, 2021 WL 1575219.

[5] *Callahan I*, 2021 WL 5050079; *Kellman*, 2022 WL 1157500; *Martinez*, 2022 WL 1078630.

"injury" sufficient to state a claim under California's Right of Publicity Statute, Cal. Civ. Code § 3344. *Id.*[6]*; see also Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1020-23 (D. Nev. 2021) (standing to pursue Nevada claims against website using similar yearbook information); *Bonilla v. Ancestry.com*, --- F. Supp. 3d ---, 2021 WL 5795306, at *3-4 (N.D. Ill. Dec. 7, 2021) (standing to pursue Illinois claims). In *Kellman v. Spokeo*, the plaintiffs had standing to pursue Ohio and California claims against a website that, like InsideView, uses profiles containing individuals' names and contact information to advertise subscriptions. No. 21-cv-08976, 2022 WL 1157500, at *5 (N.D. Cal. Apr. 19, 2022)*; see also Lukis v. Whitepages Inc*., No. 19-cv-4871, 2021 WL 3022319, at *3-4 (N.D. Ill. July 16, 2021) (standing to pursue similar Illinois claims).

InsideView relies on *Callahan v. Ancestry.com Inc*., Case No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) ("*Callahan II*"), in which one Magistrate Judge found the plaintiffs lacked standing. *See* Dkt. No. 31, at *20-22. The District Judges in *Sessa*, *Callahan I*, *Bonilla*, *Kellman*, and *Martinez* explicitly considered and rejected the reasoning of *Callahan II* as inconsistent with controlling Circuit and Supreme Court precedent, including *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021). *Sessa*, 561 F. Supp. 3d at 1021-22 (noting *Callahan II* "did not address whether the statutory injury had a close common law analog as required by *TransUnion* and *Spokeo*"); *Callahan I*, 2021 WL 5050079, at *15; *Bonilla*, 2021 WL 5795306, at *3-4; *Kellman*, 2022 WL 1157500, at *5; *Martinez*, 2022 WL 1078630, at *5. This court should follow similarly find Plaintiffs have standing to pursue their claims.

### 1. Plaintiffs have standing because they allege four harms that traditionally gave rise to a common law claim for misappropriation of name or likeness.

Plaintiffs have standing to pursue both their statutory and common law claims because they allege harms that traditionally give rise to a common law claim for misappropriation of a name or likeness. Courts evaluating whether a statutory violation supports Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted

---

[6] Plaintiffs who have statutory standing under § 17204 necessarily satisfy the requirements for standing under Article III. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

injury." *TransUnion*, 141 S. Ct. at 2204. If so, and if the harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common-law, then Article III standing exists. *Id*. at 2209 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)) (plaintiffs whose credit reports were disseminated without permission had standing because the injury bore a "close relationship to the harm associated with the tort of defamation").

Here, Plaintiffs allege claims under California's and Ohio's right of publicity statutes and the analogous common law tort for misappropriation of a name or likeness, which is recognized in both states. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (California's right of publicity statute is a modernization of and complement to the analogous California tort); *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 n.2 (Ohio Ct. App. 2006) (same with respect to Ohio). Because Plaintiffs have alleged harms that traditionally give rise to a common law claim, Plaintiffs have Article III standing. *See Sessa*, 561 F. Supp. 3d at 1020; *Bonilla*, 2021 WL 5795306, at *4 (accord); *Kellman*, 2022 WL 1157500, at *5 (accord).

***First***, Plaintiffs allege injury from InsideView's misappropriation of their intellectual property rights in their names and personas. FAC, at ¶¶16, 19-20, 46-47, 64-65, 82-83. "The right of publicity is an intellectual property right . . . which has been defined as the inherent right of every human being to control the commercial use of his or her identity." *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003). Under Ohio law, traditionally the misappropriation of this intellectual property was itself injury, just as the unauthorized use of patented or trademarked material is injury. In *James,* 167 Ohio App. 3d at 334, the court held an Ohio misappropriation of name or likeness claim "is more properly in the nature of a usurpation of a plaintiff's property rights . . . [i]t is proper to vindicate plaintiff's right . . . against this deliberate violation, even if plaintiff cannot prove actual damages." (quotation omitted); *see also Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1033 (S.D. Ohio 2016) (quoting *James*, 167 Ohio App. 3d at 334); *Zacchini v. Scripps-Howard Broadcasting*, 433 U.S. 562, 573 (1977) ("the State's interest in permitting a right of publicity . . . is closely analogous to the goals of patent and copyright law."). California law recognizes the same principles. *Midler v. Ford Motor Co.*,

849 F.2d 460, 463 (9th Cir. 1988) ("[C]ommon law rights are also property rights."); *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal.4th 387, 399 (Cal. 2001) ("The right of publicity . . . protects a form of intellectual property").

Because a violation of this intellectual property right was harm giving rise to a common law misappropriation claim, district courts applying the analysis required by *TransUnion* and *Spokeo* are unanimous in holding that individuals whose personal information is used to advertise website subscriptions have Article III standing. In *Kellman*, because the defendant website "profited from their intellectual property – a harm recognized at common law," the plaintiffs had "adequately alleged . . . injury [that] is sufficiently concrete for purposes of Article III standing." 2022 WL 1157500, at \*5 (citations omitted) (evaluating Ohio and California claims)*; see also Callahan I*, 2021 WL 5050079, at \*19 (individuals' "names and likenesses are intellectual property," and use to advertise without compensation satisfies "lost money or property" under Cal. Bus. & Prof. Code § 17200); *Sessa*, 561 F. Supp. 3d at 1023 ("the right of publicity refers to a property right in a person's identity") (quotation omitted); *Knapke*, 553 F. Supp. 3d 865, 880 ("Individuals have a property right in their own identity") (quotation omitted) (Ohio claims); *cf. Callahan II* (failing to cite *TransUnion* and failing to acknowledge the link between the statutory right of publicity and the common law misappropriation tort).

***Second***, Plaintiffs allege injury from InsideView's failure to compensate Plaintiffs for its unauthorized use, which "denied Plaintiffs the economic value of their likenesses." *See Callahan I*, 2021 WL 5050079, at \*15. Because "[e]conomic value may reasonably be inferred from use . . . to advertise," InsideView's use satisfies the statutory requirement that the plaintiffs be "person or persons injured." *Id*. at \*14-15 (quoting Cal. Civ. Code § 3344). That Plaintiffs "were not paid" by InsideView "for the use of their names and likenesses" also satisfies the UCL's statutory standing requirement. *Id*. at \*18-19. *See also Kellman*, 2022 WL 1157500, at \*6 ("[T]he *injury* for Article III purposes (one of four here) is simply loss of commercial use.") (emphasis in original). Plaintiffs allege InsideView derived economic value from its use of their personas to

promote "Pro" subscriptions costing $99 per month. *See, e.g.*, FAC, at ¶¶34-37. Because Plaintiffs have a right to recover InsideView's unjust profits, they have standing.

Traditionally, alleging the defendant profited from its nonconsensual use of a name or likeness gave rise to Ohio and California misappropriation claims to recover the unjust earnings. *See, e.g.*, *James*, 167 Ohio App. 3d at 345 (non-celebrity used car salesman suffered "actual damages" equal to "[t]he monetary benefit that [defendant] received as a result of its wrongful use of [plaintiff's] name"); *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416 (1983) (recognizing common law claim for "appropriation, for the defendant's advantage, of the plaintiff's name or likeness."). Consistent with the common-law right to recover unjustly earned profits, the California and Ohio statutes provide for recovery of "profits from . . . the unauthorized use." Ohio Rev. Code § 2741.07; Cal. Civ. Code § 3344 (a).

The Ninth and Sixth Circuits recognize that a defendant's unlawful profiting from the use of information that belongs to an individual is injury giving rise to standing. In *Davis v. Facebook, Inc.*, the Ninth Circuit held that the plaintiff had Article III standing because they alleged "Facebook [was] unjustly enriched through the use of their data" and "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." 956 F.3d 589, 599-600 (9th Cir. 2020). As the Ninth Circuit wrote, "this stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable." *Id.*; *see also Calhoun v. Google, LLC*, 526 F. Supp. 3d at 636 (Judge Koh reiterated that the "Ninth Circuit . . . [has] concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing.") (cleaned up). In *Perlin v. Time Inc.*, the plaintiff had Article III standing because "she conferred benefits on Defendant" including "personal information . . . which Defendant allegedly monetized." 237 F. Supp. 3d 623, 643 (E.D. Mich. 2017). The Sixth Circuit, referred to the analysis in *Perlin* and two other cases reaching the same conclusion as "thorough and persuasive." *Coulter-Owens v. Time Inc.*, No. 16-1321, 695 Fed. App'x 117 (6th Cir. June 26, 2017). Here, that Plaintiffs have standing to recover InsideView's illegally earned profits is

even clearer than in *Davis*, *Calhoun*, *Perlin*, and *Coulter-Owens* because the right of publicity statutes explicitly provide that a plaintiff may sue to recover "profits" from "the unauthorized use," and the related torts allow recover for "the monetary benefit" the defendant received.

Arguing that "a defendant's alleged gain does not establish that the plaintiff herself suffered economic injury," InsideView relies entirely on cases that did not involve right of publicity or misappropriation of name or likeness claims. Dkt. No. 31, at *17-18 (citing *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013); *Silha v. ACT, Inc.*, No. 14-cv-505, 2014 WL 11370440 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005); *Del Vecchio v. Amazon.com, Inc.*, No. 11-cv–366, 2012 WL 1997697 (W.D. Wash. June 1, 2012); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 4d 797, 840 (N.D. Cal. 2020)). *In re Google's* assertion that "a plaintiff must do more than point to dollars in a defendant's pocket," *see* 2013 WL 6248499, at *5, has been superseded by the Ninth Circuit's ruling in *Davis*, which recognized that a plaintiff's "stake in unjustly earned profits" is economic injury-in-fact. 956 F.3d at 600. *Silha* turned on the plaintiffs having consented to the defendant's collection and use of their information. *See* 807 F.3d at 174-175. Here, Ohio and California law require that InsideView obtain consent to use Plaintiffs' information to promote subscriptions, not simply its collection. Cal. Civ. Code § 3344; Ohio Rev. Code § 2741.05. Plaintiffs did not provide this consent. FAC, at ¶¶3, 14, 32, 50, 68. *Del Vecchio* does not support InsideView's position. The court found "that Plaintiffs have alleged sufficient injury to have standing," but dismissed one of the plaintiffs' claims because the plaintiffs failed to allege "a detriment amounting to more than $5,000" as required by the statute. *Del Vecchio,* 2012 WL 1997697, at *4. *In re Google Assistant* acknowledged that "the defendant's unjust enrichment" can establish "loss of money or property under the UCL" if the plaintiffs plead "a vested interest in any money earned," and granted plaintiffs leave to amend to plead the required vested interest. 457 F. Supp. 3d at 840 (quotations omitted). Here, Plaintiffs have a "vested interest" in the money InsideView earned from its use of their names and likenesses because the law expressly grants their right to recover those sums.

Because InsideView benefited from its unauthorized commercial use of Plaintiffs' personas to advertise subscriptions, Plaintiffs suffered the very injury that right of publicity and misappropriation claims are designed to redress.

**Third**, Plaintiffs allege injury from InsideView's denial of their right to control the commercial use of their names and personas. *See, e.g.*, FAC, at ¶¶16, 18. Traditionally, the right of publicity protects "the inherent right of every human being to control the commercial use of his or her identity." *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 n.6 (9th Cir. 2006) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:43 (4th ed. 2005)). Because this is a substantive right rather than a procedural one, and because this right has long been recognized at common law, under *Spokeo* and *TransUnion* a violation of the statutory right of publicity itself creates standing. *See, e.g.*, *Kellman*, 2022 WL 1157500, at *5 (finding Article III injury in part because "the inherent right of every human being to control the commercial use of his or her identity" is "a harm recognized at common law"). In *Fraley v. Facebook, Inc.*, the court found the plaintiffs had Article III standing to pursue a section 3344 claim because it arose from California common law protecting "the right to prevent others from appropriating elements of one's identity for commercial gain." 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011). Therefore, "alleg[ing] a violation of their individual statutory rights" was sufficient to allege "an invasion of a legally protected interest for Article III purposes." *Id.* at 797. Similarly, *Lukis v. Whitepages* ruled that a violation of Illinois' right of publicity statute "inflicts a concrete injury-in-fact under Article III," because the Illinois statute "codified [the] common law tort," which protected a substantive "right to control and to choose whether and how to use an individual's identity for commercial purposes." 549 F.Supp.3d 798, 805 (N.D. Ill. 2021) (citing *Spokeo* and *TransUnion*).

In *Davis*, the Ninth Circuit ruled that, because the Wiretap Act, Stored Communications Act, and California Information Privacy Act "codify a substantive right to privacy," their violation "gives rise to a concrete injury sufficient to confer standing." 956 F.3d at 598 (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–19 (9th Cir. 2020)). Similarly, in *Perlin*, the court held that

the violation of a Michigan statute prohibiting "knowing[] disclos[ure of] . . . a record or information that personally identifies the customer as having purchased . . . materials" was a substantive violation giving rise to Article III standing. 237 F. Supp. 2d at 640. *See also Coulter-Owens*, 695 Fed. App'x at 121 (citing *Perlin's* standing analysis with approval). Here, it is even clearer that the violation of a statutory right of publicity itself gives rise to concrete injury because the statutes protect more than just privacy: they codify individuals' substantive intellectual property rights to refuse commercial use of their personas.

**Fourth**, Plaintiffs allege InsideView's illegal conduct caused them mental injury and disturbed their peace of mind. FAC, at ¶¶48, 66, 84. At common law, the "injury to human dignity and peace of mind caused by . . . commercial use" gave rise to a misappropriation claim. *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 931 (N.D. Ohio 2004) (quotation omitted)*; see also Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974) ("mental and subjective" feelings of "humiliation, embarrassment, and outrage" are "injury suffered from an appropriation of the attributes of one's identity" giving rise to a claim). Here, Plaintiffs allege they are deeply uncomfortable in the knowledge their personas are used to advertise a product that enables harassing marketing and sales communications. FAC, at ¶¶48, 66, 84.

InsideView argues Plaintiffs' allegations "implausible" because the information in their profiles was "publicly available" before InsideView misappropriated it. Dkt. No. 31, at *21. InsideView misunderstands the right of publicity. The mental injury it addresses is that "caused by . . . [unauthorized] commercial use," not the distribution of private material. Courts have held that plaintiffs sufficiently plead mental injury based on similar allegations. *Martinez*, 2022 WL 1078630, at *5 ("Although [defendant] contends these allegations are inadequate, the Court finds them sufficient to state a plausible claim of mental harm"); *Kellman*, 2022 WL 1157500, at *5.

## 2. Right of publicity and misappropriation of name or likeness claims arise from the defendant's commercial use, not the plaintiff's investment.

InsideView argues the Plaintiffs have not alleged injury because they "have not alleged that they could have profited on their own from selling" their information. Dkt. No. 31, at *18.[7] InsideView is wrong. Neither California's misappropriation tort nor its statutory right of publicity requires that a plaintiff be a celebrity or otherwise have developed a pre-existing commercial interest in her name or likeness. The legislative history shows that the California statute was intended to provide a cause of action for "noncelebrity plaintiffs whose names lacked commercial value on the open market." *Orthopedic Sys., Inc. v. Schlein*, 202 Cal. App. 4th 529, 546 (2012) (quotation omitted). The case law recognizes that plaintiffs may bring § 3344 claims without demonstrating their likenesses had commercial value prior to the defendant's exploitation. Judge Koh's decision in *Fraley* is directly on point:

> The Court finds nothing in the text of the statute or in case law that supports Defendant's interpretation of § 3344 as requiring a plaintiff pleading economic injury to provide proof of *preexisting* commercial value and efforts to capitalize on such value in order to survive a motion to dismiss. . . The statutory text makes no mention of preexisting value . . . Nor does the Court find any reason to impose a higher pleading standard on non-celebrities than on celebrities.

*Fraley*, 830 F. Supp. 2d at 806-07 (emphasis in original) (surveying supporting caselaw);[8] *see also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ("LinkedIn is alleged to have misappropriated Plaintiffs' names to promote LinkedIn . . . which is indisputably economically valuable to LinkedIn"). Other Courts have rejected InsideView's argument in cases where, as here, a website advertises subscriptions using profiles of personal information. *See, e.g.*, *Callahan I*, 2021 WL 5050079, at *14-16 ("If a defendant uses a plaintiff's name and/or likeness

---

[7] InsideView fails to cite any authority that supports this supposed requirement, inside citing generally to a case that did not involve the right of publicity. *See id.* (citing *Low v. LinkedIn Corp.*, No. 11-cv-01468, 2011 WL 5509848, at *4–6 (N.D. Cal. Nov. 11, 2011)).

[8] Here, the evidence of economic value to InsideView is even clear. InsideView uses Plaintiffs' likeness not to promote third-party brands, but to promote its own product: a "Pro" subscription. *See, e.g.*, FAC, at ¶5. InsideView derives concrete economic value from its use, because each time a recipient of InsideView's advertisements follows the link on Plaintiff's profiles to "Upgrade to Pro," InsideView receives a new recurring payment of $99 per month. *Id.*

to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small"); *Martinez*, 2022 WL 1078630, at *4 (accord).

Likewise, Ohio's misappropriation of name or likeness tort focuses on "[t]he monetary benefit that [the defendant] received as a result of its wrongful use," not whether the plaintiff has previously commercially developed her identity. *James*, 167 Ohio App. 3d at 345 (reversing summary judgment against non-celebrity car salesman who brought a misappropriation claim against a car dealership that signed his name to letters without consent). The same is true of Ohio's right of publicity statute. In *Roe v. Amazon.com*, a self-published author used an engagement photograph he copied from the internet as the cover of his book. 170 F. Supp. 3d at 1033. The couple were not celebrities, and there was no allegation they could have profited from selling the engagement photograph. *Id.* The court denied the defendant's motion for judgment on the pleadings, writing that "[c]elebrity status is not . . . a requirement to recover under the statute." *See also Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 624 (6th Cir. 2000) ("[D]efendant's act of misappropriating the plaintiff's identity . . . may be sufficient evidence of commercial value."); *Brauer v. Pannozzo*, 232 F. Supp. 2d 814, 820-821 (N.D. Ohio 2002).

InsideView correctly observes that a plaintiff establishes "commercial value" under the ORPS so long as "there is some value in associating a good or service with her identity." Dkt No. 31, at *18 (quoting *Roe*, 714 F. App'x at 568). Where, as here, a defendant uses the plaintiff's identity to advertise subscriptions and the use is not "incidental to the advertisement," the defendant's use "shows [the persona's] commercial value" and satisfies the ORPS's commercial value requirement. *See Knapke*, 2021 WL 3510350, at *6*; see also Kellman*, 2022 WL 1157500, at *6 ("because Spokeo uses [plaintiff's] persona . . . to incentivize people to subscribe . . . his persona does have at least some commercial value."); *Kolebuck-Utz*, 2021 WL 1575219, at *2.

Here, InsideView's advertisements directly associate Plaintiffs' names and personas with the purchase of a website subscription. Far from being "incidental," Plaintiffs' personas are the central element of these advertisements. InsideView publicly displays a profile containing each Plaintiff's personal information along with on-screen messages prompting the user to "Upgrade

to Pro" in order to "Start a Conversation" with the Plaintiff. FAC, at ¶¶34, 52, 70. The profiles also include pop-up messages informing the user that if they purchase a "Pro" subscription for $99 per month they will receive the ability to create a "Watchlist" to "stay up-to-date on the latest insights" about the Plaintiffs "via alerts sent directly to your inbox." *See, e.g.*, *id.* at ¶¶41-42. The profiles also include a button prompting the user to "Export" the Plaintiffs' information, which when clicked informs the user they must purchase a "Pro" subscription to export. *See, e.g.*, *id.* at ¶37. InsideView advertises that paying subscribers will receive information about the Plaintiff's "web . . . behavior and content consumption," which will enable subscribers to determine when the Plaintiffs are "in the market to buy particular products and services." *See, e.g.*, *id.* at ¶39. Because InsideView's advertisements directly associate Plaintiffs' personas with the purchase of a "Pro" subscription, Plaintiffs have alleged their personas have "commercial value." Allegations of celebrity status or commercial value independent of InsideView's use are not required.

InsideView cites *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020). *See* Dkt. No. 31, at *19. But *Harvey* supports Plaintiffs' position because *Harvey* agreed that a plaintiff states a claim if he "demonstrate[s] that there is value in associating an item of commerce with his identity, recognizing that in some cases "the commercial value acquired by a person's identity is . . . unrelated to any investment made by the individual."" *Harvey*, 154 N.E.3d at 306, 308 (quoting *Landham*, 227 F.3d at 624). In *Knapke*, Judge Pechman relied on *Harvey* in denying a motion to dismiss Ohio claims brought by a non-celebrity individual against a website like InsideView. 2021 WL 3510350, at *6. Likewise, *Kolebuck-Utz,* 2021 WL 1575219, at *2, and *Kellman,* 2022 WL 1157500, at *6, cited *Harvey* in denying motions to dismiss Ohio claims.

Even if InsideView is correct that Plaintiffs must show their personas have commercial value independent of InsideView's use, Plaintiffs would meet this standard, because other websites use their names and personas to advertise subscriptions just as InsideView does. FAC, at ¶11. If Plaintiffs' personas did not have commercial value, InsideView and its competitors would not have misappropriated them to advertise. *See, e.g.*, *McFarland v. Miller*, 14 F.3d 912,

922 (3d Cir. 1994) ("In taking [plaintiff's] name, [defendant] unfairly sought to capitalize on its value. The very act of taking it for that purpose demonstrates the name itself has worth.").

### 3. That Plaintiffs willingly shared their names and personal information with employers and professional networking sites does not affect their claims.

InsideView argues Plaintiffs have not suffered injury because the information in their profiles "was already publicly available online." Dkt. No. 31, at *21. This misunderstands the right of publicity and related misappropriation of name or likeness tort. Neither requires pleading information was secret or non-public prior to the defendant's misuse. *See, e.g.*, *Sessa*, 2021 WL 4245359, at *6 n.3 ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *Martinez*, 2022 WL 1078630, at *5 ("[W]hether the underlying information is publicly available does not mean that ZoomInfo's use of it to advertise its services is exempt from liability"). As the Supreme Court recognized in *Zacchini v. Scripps-Howard Broadcasting Co.*, "in right of publicity cases the only question is who gets to do the publishing." 433 U.S. 562, 573 (1977).

InsideView's argument that a plaintiff suffers injury only if a defendant distributes non-public information about the plaintiff would read the right of publicity out of existence. The right of publicity gives individuals comfort they may safely place their names and personas in the public eye by, for example, sharing their professional information and education history on a public website, without fear someone will capture and exploit their information and personas for commercial gain. *See, e.g.*, *Roe*, 170 F. Supp. 3d at 1031-33 (non-celebrity plaintiffs had a "property right" in refusing commercial use of their engagement photograph on a book cover because they "did not place the photograph on the internet for expropriation" by the defendant). Accordingly, most right of publicity cases involve material the plaintiff intentionally distributed, which the defendant then copied from a public or semi-public source. *See, e.g.*, *id.*; *Downing*, 265 F.3d 994 (reversing summary judgment of California claim where defendant copied plaintiff's image from a published book); *Knapke*, 2021 WL 3510350, at *6 (denying motion to dismiss Ohio claim arising from commercial misuse of yearbook photographs); *Fraley*, 830 F. Supp. 2d at 799 (denying motion to dismiss California claim arising from Facebook's copying and use of

information and photographs its users willingly uploaded to the site)*; see also KNB Enterprises v. Matthews*, 78 Cal. App. 4th 632, 365-66 (2000).

Tellingly, InsideView fails to cite a single case to support its claim that Plaintiffs' personas must have previously been private or non-public for them to state a right of publicity claim. Indeed, this position appears to contradict InsideView's (also incorrect) assertion that Plaintiffs must have commercially developed their personas. It is not clear how a plaintiff could simultaneously commercially develop their persona while also keeping it private. In fact, the law requires neither a "private persona" nor a "commercially developed" one.

### 4. Plaintiffs' claims do not require implied endorsement.

InsideView suggests that because Plaintiffs did not plead "false endorsement" they cannot "establish economic injury." Dkt. No. 31, at *19-20. This Court should decline the invitation to graft a non-existent "false endorsement" element onto the right of publicity.

The ORPS forbids the "use [of] any aspect of an individual's persona for a commercial purpose" without "written consent." Ohio Rev. Code § 2741.02. There is no requirement of false endorsement. *See id.*[9] Courts have declined to import a "false endorsement" element into the statute. In *Bosley v. Wildwett.com*, the court rejected a website's argument that plaintiff's claim should be dismissed because the advertisement did not suggest the plaintiff endorsed the website. 310 F. Supp. 2d at 925. The court ruled that "[p]roof that prospective purchasers are likely to believe that the identified person endorses or sponsors the user's goods or services is not required." *Id.* (quotation omitted). Likewise, the courts in *Knapke*, *Kellman*, and *Kolebuck-Utz* found plaintiffs alleged ORPS claims based on a website's use of personal information to sell subscriptions. *See Kellman*, 2022 WL 1157500, at *10 ("an implication of endorsement is not the only alleged violation that is actionable under the relevant statutes"). These rulings comport with Sixth Circuit authority. *See Landham*, 227 F.3d at 624 n. 1 ("the right of publicity isn't aimed at

---

[9] The ORPS exempts from liability uses that are "protected by the First Amendment" unless the use "convey[s] or reasonably suggest[s] endorsement." Ohio Rev. Code § 2741.09 (A)(6). This carve-out would make no sense if, as InsideView incorrectly claims, <u>all</u> OPRS claims involved uses that convey endorsement.

or limited to false endorsements") (quotation omitted); *Parks v. Laface Records*, 329 F.3d 437, 460 (6th Cir. 2003).

Nor is there any hint of a "false endorsement" requirement in California's right of publicity statute. *See* Cal. Civ. Code § 3344. The statute "is infringed by the unpermitted use of a person's identify containing no inference that plaintiff endorses or approves the product." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000). This is precisely what distinguishes the right of publicity from a claim for false endorsement, which is a separate cause of action. *Fifty-Six Hope Rd. Music, Ltd. V. A.V.E.L.A., Inc*., 778 F.3d 1059, 1072 (9th Cir. 2015) ("we have previously distinguished between publicity right claims and § 1125(a) claims on the basis of this additional element") (citing additional Ninth Circuit authority). In line with this authority, courts applying California law have denied motions to dismiss right of publicity claims against websites that use individuals' personas to advertise subscriptions even when there was no implied endorsement. *See, e.g.*, *Callahan I*, 2021 WL 5050079, at *16 ("Nothing in the text of the statute suggests that endorsement is required"); *Martinez*, 2022 WL 1078630, at *5 ("[T]here is no requirement that there be an endorsement").

**B. InsideView uses each Plaintiffs' persona to advertise "Pro" subscriptions offering many services, not simply access to that Plaintiff's profile.**

InsideView argues the Complaint does not show "commercial use" because InsideView does not use Plaintiffs' personas to advertise "a separate good or service." Dkt. No. 31, at *22-23. This argument is contradicted by the Complaint, which shows Plaintiffs' names, personal information, and personas are used to advertise "a separate good or service": a "Pro" subscription costing $99 per month. A "Pro" subscription offers far more than access to the specific profile InsideView uses to promote the subscription, including: (1) the ability to search, view, and download (or "export") personal information from profiles about millions of individuals; (2) real-time tracking of millions of individuals' social media posts and social media posts about them; and (3) information about millions of individuals' "web . . . behavior and content consumption." *See, e.g.*, FAC, at ¶¶37-39. Plaintiffs' personas cannot be the product InsideView is advertising, because InsideView provides access to Plaintiffs' profiles for free. *Id.* at ¶¶35-36. InsideView

16

admits that a "Pro" subscription "is not for a single person's information—it is for general access to the additional content and features of the InsideView database." Dkt. No. 31, at *15.

Where, as here, a website uses free access to one individual's profile to advertise not the profile itself, but rather a subscription providing access to many profiles and "additional content and features," the subscription is a "separate product," and the "commercial use" requirement is satisfied. *Lukis v. Whitepages* is directly on point:

> As the *Dobrowolski* court described it . . . the defendants there used the free previews to advertise only background reports regarding the person identified in the preview. . . Here, by contrast, Whitepages used Lukis's identity to advertise not a background report regarding Lukis, but **a monthly subscription service** giving the purchaser access to background reports on anybody in Whitepages's database. Thus, **Lukis's identity was not part and parcel of the entire product or service being advertised,** meaning that Whitepages's use of her identity had **a commercial purpose** even on *Dobrowolski's* understanding.

454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) (emphasis added) (citing *Dobrowolski v. Intelius, Inc*., No. 17-cv-1406, 2018 WL 11185289 (N.D. Ill. Aug. 29, 2017)). Likewise, in *Bonilla*, Judge Kendall held the "commercial purpose" requirement was met because the defendant website used records about the plaintiff "to sell a separate subscription service that goes beyond just his one . . . record." 2021 WL 5795306, at *7*; see also Callahan I*, 2021 WL 5050079, at *17-18 (accord); *Kellman*, 2022 WL 1157500, at *7 (accord). Here, as in these other cases, a "Pro" subscription offers access to many profiles beyond those of Plaintiffs. Unlike those cases, a "Pro" subscription also includes a variety of services extending well beyond profile access, including the ability to track individuals' web-browsing behavior.

InsideView relies primarily on Judge Chen's decision in *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), but that decision does not apply to these facts. Judge Chen also wrote the opinion in *Callahan I*, in which he quoted *Lukis* in denying a motion to dismiss California right of publicity claims against a website that uses profiles containing yearbook photographs to advertise subscriptions. 2021 WL 5050079, at *17-18. The difference between *Brooks* and *Callahan I* is that the defendant in *Callahan I* displayed the plaintiffs' profiles publicly to non-subscribers as a means of advertising

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 4:21-cv-09470-HSG

subscriptions. *See id.* at \*11. In *Brooks*, by contrast, the defendant displayed profiles "only to . . . subscribers who deliberately paid [the defendant] to receive the information." 2021 WL 3621837, at \*4. As Judge Chen reasoned, this made the *Brooks* case different from *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1190. *Id.* In *Perkins*, the website LinkedIn used a member's "name[] and photograph[]" to "encourag[] other users to join the LinkedIn platform." *Id.*, at \*5. Judge Chen agreed with the *Perkins* court that this was promoting a "separate product," even though like InsideView's "Pro" subscription, a LinkedIn membership includes access to the names and photographs LinkedIn uses to advertise. *Id.*, at \*4. Here, as in *Callahan I* and *Perkins*, and unlike *Brooks*, InsideView publicly displays Plaintiffs' names and likenesses to non-subscribers in advertisements designed to solicit subscriptions.

InsideView also argues that its profiles displaying Plaintiffs' personas do not function as advertisements for "Pro" subscriptions. *See* Dkt. No. 31, at \*15. InsideView admits that each profile displays buttons prompting the user to "export" the Plaintiffs' information, "build a list" of prospects including Plaintiff, and "Upgrade to Pro." *Id.* Clicking any of these buttons generates an on-screen message prompting the user to purchase a "Pro" subscription. FAC, at ¶¶41-42. But InsideView claims that because "Plaintiffs' contact information ***does not appear*** in these pop-up windows" advertising subscriptions, there is no association between the advertisements and Plaintiffs' personas. Dkt. No. 31, at \*15 (emphasis in original). This argument fails. First, Plaintiffs' personal information is plainly visible on the very same screen as the "pop-up windows" prompting the user to "Upgrade to InsideView Pro." FAC, at ¶41. Second, even were Plaintiffs' information obscured, it strains credulity that a prospective subscriber would forget they had attempted to download or interact with Plaintiffs' profile immediately before InsideView displayed its advertisement. InsideView's motion to dismiss should be denied.

### C. InsideView's commercial advertisements are not protected by the First Amendment.

InsideView's First Amendment argument is based on a mischaracterization of Plaintiffs' claims. Plaintiffs do not "seek to ban [InsideView] from publishing" its "online database." *Cf.* Dkt. No. 31, at \*24. Nor do Plaintiffs seek removal of their personal information from

InsideView's database. Rather, Plaintiffs seek to prevent InsideView from using their personas to advertise subscriptions without Plaintiffs' consent. InsideView's advertisements, not the underlying directory, are the speech at issue, and they are clearly commercial. *See Kellman*, 2022 WL 1157500, at *15 ("[T]he issue is not about a free directory . . . The teaser [profiles]—not [defendant's] broader website—are the subject of this suit. And they are indisputably ads.").

That InsideView's advertisements incorporate informational elements, as most advertisements do, does not mean they lose their commercial character. As the *Bosley* court wrote:

> Unpermitted use of personal identity . . . will almost never receive immunity from liability for infringement of the right of publicity . . . [W]hen there is a 'mixed message' of 'advertising' combined with 'news' and/or commentary on public issues, the entire message is labeled 'commercial speech' and given the lowest level of constitutional solicitude.

310 F. Supp. 2d at 924 (quotation omitted), *injunction stayed pending resolution of appeal*, 2004 WL 2169179 (6th Cir. 2004). The Supreme Court has ruled that speech containing informational elements "should be characterized as commercial speech" when "the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). Applying the three *Bolger* factors, InsideView's use of Plaintiffs' personas is commercial speech. InsideView's profiles display each Plaintiff's name and personal information along with prompts to purchase a "Pro" subscription that provides the ability to: (1) download Plaintiffs' information; (2) receive additional information about Plaintiff, including his job changes, social media posts, and web browsing; and (3) access similar information about millions of absent Class members. This is advertising, promoting a specific product, for economic reasons. *See Bolger*, 463 U.S. at 66; *Kellman*, 2022 WL 1157500, at *14-15 (applying *Bolger* factors to similar advertisement).

Because InsideView's advertisements are commercial speech and Plaintiffs' claims are aimed the advertisements rather than "suppress[ing] publication" of their personal information, "strict scrutiny" does not apply. *Cf.* Dkt. No. 31, at *27-30 (citing irrelevant authorities applying strict scrutiny). Instead, the correct standard is "intermediate scrutiny," under which the court asks whether the state has a "substantial interest that is directly advanced by the law" and whether

19

the law imposes "excessive restrictions." *Kellman*, 2022 WL 1157500, at *15 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63 (1980)).

Here, the limitations imposed by California's and Ohio's right of publicity and misappropriation of name or likeness laws comport with the First Amendment because they "directly advance" a "substantial interest in enabling its citizens to protect the nonconsensual commercial exploitation of their likeness without overbroadly prohibiting commercial speech." *Knapke*, 553 F. Supp. 3d at 878-80 (Ohio law); *see also Bosley*, 310 F. Supp. 2d at 929 ("Laws governing the right to publicity have a substantial interest in regulating commercial speech. Individuals have a property right in their own identity."). The laws "directly advance this interest" through means that are "reasonably well-tailored" because they include "broad exemptions for matters that are newsworthy, of public interest, or matters of public affairs," which are "the core First Amendment purposes." *Kellman*, 2022 WL 1157500, at *15 (California and Ohio law).

Many courts have rejected InsideView's argument that the First Amendment precludes right of publicity claims against websites that use names and personas to advertise subscriptions. *See, e.g.*, *Callahan I*, 2021 WL 5050079, at *21 (use of names and yearbook photographs to promote website subscriptions is not protected speech); *Knapke*, 553 F. Supp. 3d at 878-80 (same); *Kolebuck-Utz*, 2021 WL 1575219, at *2-3 (use of names and personal information to promote subscriptions to an online directory of personal information is not protected speech); *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 843-44 (N.D. Ill. 2020) (same); *Kellman*, 2022 WL 1157500, at *14-15 (same). There is no reason for a different result here.

Arguing that its advertisements are "not commercial speech," InsideView relies on *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012). Dkt. No. 31, at *14. *Dex* is easily distinguished. In *Dex*, the Seattle city government sought to forbid the publication of the directory itself (a phonebook). 696 F.3d at 959. The presence of advertisements for unrelated local businesses did not render the phonebooks "commercial speech" because there was "no clear link" between the noncommercial phone listings in the directory and the businesses being advertised. *Id*. Here, Plaintiffs do not seek to prevent publication of InsideView's directory; they seek to

prevent InsideView from using their identities to advertise subscriptions. Furthermore, there is a "clear link" between each profile and a "Pro" subscription. InsideView's profiles expressly tie the purchase of a subscription to the exporting of Plaintiffs' information and the ability to receive more information about Plaintiffs. *See, e.g.*, FAC, at ¶¶36-39; *see also Kellman*, 2022 WL 1157500, at *14 (distinguishing *Dex* on similar grounds).

InsideView also relies on *IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020). But there, the Ninth Circuit found that profiles about famous actors were not "commercial speech" because the profiles were not "advertisement[s]" and did not "refer to a particular product." *Id.*, at 1122 (applying the *Bolger* factors). Here, InsideView's profiles are advertisements that refer to InsideView's "Pro" subscription product. InsideView's reliance on *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976), which predates the Supreme Court's decision in *Bolger*, is also unavailing. The Supreme Court held that Virginia's ban on advertising prescription drug prices could not be justified on the basis of Virginia's asserted interest in "preserving high professional standards" because the ban "does not directly affect professional standards one way or the other." *Id.*, at 768. Here, California's and Ohio's right of publicity laws are directly tied to protecting those states' interests in protecting their citizens from nonconsensual exploitation of their personas.

InsideView claims that "[t]he specific speech Plaintiffs seek to restrict with their claims is not proposing any transaction—it is providing factual information." Dkt. No. 31, at *29. TAgain, it is the association between Plaintiffs' personal information and the purchase of a "Pro" subscription that gives rise to their claims. Were InsideView to remove from Plaintiffs' profiles the buttons, pop-ups, and other on-site messages advertising "Pro" subscriptions, InsideView would comply with the law. Similarly, had InsideView obtained Plaintiffs' consent prior to using their personal information, InsideView would have complied with the law.

Because Plaintiffs do not seek to prevent publication of their personal information, InsideView's attempt to recast the profiles as "expressive work[s]" akin to "unauthorized biograph[ies]" is irrelevant. *See* Dkt. No. 31, at *25-26. In any case, the profiles are clearly not

"expressive works." InsideView did not produce a film depicting a "fictionalized version" of a famous actor's life, *c.f. Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 868 (1979), nor did it create an original painting depicting famous athletes through the ages, *c.f. ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915 (6th Cir. 2003). InsideView displayed commercial advertisements incorporating the names, contact information, and professional and educational histories of private citizens. None of this constitutes "expressive" speech. Nor do InsideView's profiles address topics of public interest. *See* Part D *below*. Unlike the statistics about professional baseball players in *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411 (2001), Plaintiff's names, contact information, work histories, and browsing habits are not topics "followed by millions of people across the country on a daily basis."

Because InsideView's advertisements are commercial speech, and because California and Ohio have a legitimate interest in protecting their citizens against commercial exploitation of their personas, InsideView's motion to dismiss on First Amendment grounds should be denied.

### D. The newsworthy exceptions do not apply.

InsideView appeals to California's statutory exception for the use of a persona "in connection with . . . public affairs," and to Ohio's exception for use "in connection with the broadcast or reporting of an event or topic of general or public interest." Dkt. No. 31, at *30-31 (citing Cal. Civ. Code § 3344 (d); Ohio Rev. Code § 2741.09(A)(3)). These "newsworthy" or "public affairs" exceptions "rest[] on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995), *as modified* (May 30, 1995). The exceptions cover "almost all reporting of recent events," about people who "create a legitimate and widespread attention to their activities." *Fraley*, 830 F. Supp. 2d at 804 (citations omitted). Although not strictly confined to news articles, the content must "significantly contribute to a matter of public interest." *Downing*, 265 F.3d at 1001.

Here, InsideView's profiles containing Plaintiffs' personal information do not fall within the exceptions because they do not "significantly contribute" to a "matter of public interest." *Id*. Plaintiffs' personal information is not "in connection with any news, public affairs, or sports

broadcast or account, or any political campaign," Cal. Civ. Code § 3344 (d), *see also* Ohio Rev. Code § 2741.02(D)(1). Nor do Plaintiffs' profiles concern "recent events." *See Fraley*, 830 F. Supp. 2d at 804. Plaintiffs are not people public figures who attract "legitimate and widespread attention to their activities." *Id*.

Even were the personal information in Plaintiffs' profiles a matter of "public interest," Plaintiff's claims are directed at the use of their personas in advertisements for "Pro" subscriptions, not the distribution of their information "for the purpose of communicating information or expressing ideas." *Cf. Harvey*, 154 N.E.3d at 308. Where, as here, the use of a persona serves the "commercial purpose" of advertising a product, the newsworthy exceptions do not apply. *Knapke*, 2021 WL 3510350, at *7 (rejected Ohio exception because "the use of [plaintiff's] persona to sell [defendant's] subscription service is for a commercial purpose and not to communicate news"); *see also Callahan I*, 2021 WL 5050079, at *18 ("[Classmates'] subscription membership clearly does not . . . have a public affairs connection"); *Sessa*, 2021 WL 4245359, at *13 (accord); *Bonilla*, 2021 WL 5795306, at *7 (accord); *Kellman*, 2022 WL 1157500, at *7, *10 (accord). InsideView does not address these cases.

**E. InsideView's Motion to Dismiss Plaintiffs' UCL Claims Should be Denied.**

InsideView argues Plaintiffs' UCL claims should be dismissed because "they are derivative" of Plaintiffs' other claims. Dkt. No. 31, at *33. As demonstrated throughout, Plaintiffs have properly plead statutory right of publicity and misappropriation of name or likeness claims under California and Ohio law. Therefore, InsideView's sole argument against Plaintiffs' UCL claims fails, and its motion should be denied.

**F. InsideView's anti-SLAPP motion to strike should be denied.**

California's anti-SLAPP statute provides that a cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(a). For multiple reasons, InsideView's anti-SLAPP motion to strike is meritless.

**First,** Anti-SLAPP protection does not apply to commercial speech. Cal. Civ. P. Code § 425.17(c) excludes speech by defendants who are "in the business of selling . . . goods or services" that is "made for the purpose of . . . promoting . . . goods or services" and for which the intended audience is "an actual or potential buyer or customer." InsideView is in the business of selling subscriptions, its purpose in distributing profiles about Plaintiffs is selling subscriptions, and the intended audience is potential subscribers. Accordingly, anti-SLAPP does not apply. *See L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 927 (2015). Many courts have denied similar motions on the ground that using profiles of personal information to promote subscriptions is commercial speech that is not entitled to anti-SLAPP protection. *See, e.g.*, *Martinez*, 2022 WL 1078630, at *7 (denying California anti-SLAPP motion by InsideView competitor because "the speech at issue is commercial in nature and not protected"); *Boshears*, 2022 WL 888300, at *7 (W.D. Wash. Mar. 25, 2022) (Washington's anti-SLAPP statute did not apply because the defendant's "commercial use of [plaintiff's] name and likeness to sell subscription services . . . proposes a commercial transaction").

**Second,** InsideView cannot meet its burden of showing that the advertisements incorporating Plaintiff's persona are "speech in direct connection with an issue of public concern." *See* Cal. Civ. Proc. Code § 425.16(e); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009) (burden to show "public issue" rests with party asserting anti-SLAPP). California law establishes the following guiding principles:

> (1) "public interest" does not equate with mere curiosity;
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013) (citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (2003)). Plaintiffs' names and personal information are not speech about an issue of public concern. They do not concern a "substantial number of people." Nor can InsideView convert private information "into a matter of public interest simply by communicating it to a large number of people."

The cases InsideView cites serve only to demonstrate how different its conduct is from the kind of speech courts view as connected with the "public interest." *See* Cal. Civ. Proc. Code § 425.16(e). InsideView's profiles and advertising webpages do not serve to warn the public against fraud or misconduct. *Cf. Ruiz v. Harbor View Community Ass'n*, 134 Cal. App. 4th 1456, 1463 (2005) (speech accusing committee of exposing association members to "serious liability and potential damages"). Nor has InsideView published a magazine article about "a prominent . . . celebrity." *Cf. Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008).

Because profiles that advertise website subscriptions using individuals' personal information do not concern a "public issue," courts are unanimous in summarily denying anti-SLAPP motions on these facts. *See, e.g.*, *Martinez*, 2022 WL 1078630, at *7 ("There is no evidence to suggest that [plaintiff's] persona is a matter of public interest")*; see also Sessa*, 2021 WL 4245359, at *16; *Callahan II*, 2021 WL 783524, at *11; *Callahan I*, 2021 WL 5050079, at *21. InsideView does not cite these cases.

***Third***, even had InsideView shown its advertisements are "speech" on an issue of "public concern," the anti-SLAPP motion still fails because Plaintiff made a "prima facie showing of facts to sustain a favorable judgment." *See Hilton*, 599 F.3d at 903 (9th Cir. 2009) (quotations omitted). As demonstrated throughout this opposition, the Complaint clears this low bar. *See id.*, at 908 ("[T]he required probability that [the plaintiff] will prevail need not be high.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny InsideView's motions to dismiss and to strike.

TURKE & STRAUSS LLP

By: /s/ Raina C. Borrelli
    Raina C. Borrelli (*Pro Hac Vice*)
    Email: raina@turkestrauss.com
    Samuel J. Strauss (*Pro Hac Vice*)
    Email: sam@turkestrauss.com
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone (608) 237-1775
    Facsimile: (608) 509-4423

    Michael F. Ram, SBN 104805
    Email: mram@forthepeople.com
    Marie N. Appel, SBN 187483
    Email: mappel@forthepeople.com
    MORGAN & MORGAN
      COMPLEX LITIGATION GROUP
    711 Van Ness Avenue, Suite 500
    San Francisco, CA 94102
    Telephone: (415) 358-6913
    Facsimile: (415) 358-6923

    Benjamin R. Osborn (to be admitted
    *Pro Hac Vice*)
    102 Bergen St.
    Brooklyn, NY 11201
    Telephone: (347) 645-0464
    Email: ben@benosbornlaw.com

    *Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 10th day of June, 2022.

TURKE & STRAUSS LLP

By: _/s/ Raina C. Borrelli_
Raina C. Borrelli *(Pro Hac Vice)*
Email: raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423