1   KEKER, VAN NEST & PETERS LLP
    R. ADAM LAURIDSEN - # 243780
2   alauridsen@keker.com
    JULIA L. ALLEN - # 286097
3   jallen@keker.com
    IAN KANIG - # 295623
4   ikanig@keker.com
    CODY GRAY - # 310525
5   cgray@keker.com
    633 Battery Street
6   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
7   Facsimile:    415 397 7188

8   Attorneys for Defendants
    DEMANDBASE, INC. and
9   INSIDEVIEW TECHNOLOGIES, INC.

10                  UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                       OAKLAND DIVISION

13

14  AMOS GBEINTOR, WILTON              Case No. 4:21-cv-09470-HSG
    ALDERMAN, and DRU DOMINICI, on
15  behalf of themselves and all others similarly  **DEFENDANTS' REPLY IN SUPPORT OF**
    situated,                          **MOTION TO DISMISS AND, IN THE**
                                       **ALTERNATIVE, TO STRIKE UNDER**
16              Plaintiffs,            **CALIFORNIA'S ANTI-SLAPP STATUTE**

17          v.                         Date:        November 10, 2022
                                       Time:        2:00 p.m.
18  DEMANDBASE, INC. and INSIDEVIEW    Courtroom:   2—4th Floor
    TECHNOLOGIES, INC.,                Judge:       Hon. Haywood S. Gilliam, Jr.
19
                Defendants.            Date Filed:  December 8, 2021
20
                                       Trial Date:  N/A.
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

                                                                                            Page(s)

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................3

     A.   Plaintiffs' opposition does not explain why their alleged injuries are plausible. ..........3

          1.   Plaintiffs have alleged a conclusory and implausible economic injury. ..........3

          2.   Plaintiffs have alleged a conclusory and implausible mental injury. ...............6

          3.   A mere statutory violation is insufficient to confer Article III standing. ..........6

     B.   Plaintiffs' right-of-publicity claims fail for lack of unrelated commercial use. ...........7

     C.   The First Amendment protects Defendants' database and public profiles. ..................8

     D.   Plaintiffs' statutory right-of-publicity claims fail because California and Ohio
          law exempts from liability for-profit speech on matters of public interest.................12

     E.   Plaintiffs' UCL claims rise and fall with their right-of-publicity claims....................13

     F.   Plaintiffs' complaint should be stricken for challenging protected speech. ...............13

III. CONCLUSION...................................................................................................15

1869591

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983)..................................................................................................9

*Boshears v. PeopleConnect, Inc.*,
    2022 WL 888300 (W.D. Wa. Mar. 25, 2022)..................................................14

*Brooks v. Thompson Reuters Corp.*,
    2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .............................................2, 7, 8

*Callahan v. Ancestry.com Inc.*,
    2021 WL 2433893 (N.D. Cal. June 15, 2021) ...........................................2, 3, 4, 6

*Callahan v. PeopleConnect, Inc.*,
    2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .............................................3, 4, 15

*Charles v. City of Los Angeles*,
    697 F.3d 1146 (9th Cir. 2012) ...............................................................9, 10

*Cher v. Forum Int'l, Ltd.*,
    692 F.2d 634 (9th Cir. 1982) .......................................................................10

*Cohen v. Facebook, Inc.*,
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................2, 4, 6

*Daly v. Viacom, Inc.*,
    238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................................1, 9, 10

*Davis v. Facebook, Inc.*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................5

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) .......................................................................11

*Dobrowolski v. Intelius, Inc.*,
    2018 WL 11185289 (N.D. Ill. May 21, 2018) ................................................8

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ........................................................................4

*ETW Corp. v. Jireh Publishing, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ........................................................................3

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ......................................................4, 5

ii

*In re Google, Inc. Privacy Policy Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...................................................................4

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) .....................................................................................1, 11

*Kellman v. Spokeo, Inc.*,
    2022 WL 1157500 (N.D. Cal. Apr. 19, 2022) ...................................................3, 4, 6, 7

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002) ................................................................................1, 10, 11

*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988) .........................................................................................3

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) .......................................................................................12

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1222 (N.D. Cal. 2014) ........................................................................4, 5

*Sessa v. Ancestry.com Ops. Inc.*,
    No. 20-cv-02292, Dkt. 50 (D. Nev. 2020) ..................................................................15

*Silha v. ACT, Inc.*,
    2014 WL 11370440 (N.D. Ill. Sept. 2, 2014) ...............................................................4

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................................................3

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................................3, 4, 7

**California and Ohio Cases**

*Aroa Mktg., Inc. v. Hartford Ins. Co.*,
    198 Cal. App. 4th 781 (2011) .........................................................................................3

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (2001) ...................................................................................................3

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017) ....................................................................................7, 14

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) ...................................................................................12, 13

*Dziubla v. Piazza*,
    59 Cal. App. 5th 140 (2020) .........................................................................................13

iii

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 (2019) ..................................................................................13, 14

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400 (2001) ..................................................................... *passim*

*Guglielmi v. Spelling-Goldberg Prods.*,
  25 Cal. 3d 860 (1979) ......................................................................................1, 9

*Harvey v. Sys. Effect, LLC*,
  154 N.E. 3d. 293 (Ohio Ct. App. 2020)............................................................2, 12

*Mayron v. Google LLC*,
  54 Cal. App. 5th 566 (2020) ..................................................................................7

*Moreno v. Hanford Sentinel, Inc.*,
  172 Cal. App. 4th 1125 (2009) .............................................................................15

*No Doubt v. Activision Publ'g, Inc.*,
  192 Cal. App. 4th 1018 (2011) ...............................................................................3

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .............................................................................14

*Ruiz v. Harbor View Cmty. Ass'n*,
  134 Cal. App. 4th 1456 (2005) .............................................................................15

*Simpson Strong-Tie Co. v. Gore*,
  49 Cal. 4th 12 (2010) ...........................................................................................13

*Slivinsky v. Watkins-Johnson Co.*,
  221 Cal. App. 3d 799 (1990) ..................................................................................7

*Young v. Bank of Am.*,
  141 Cal. App. 3d 108 (1983) ..............................................................................2, 6

*Zacchini v. Scripps-Howard Broad. Co.*,
  47 Ohio St. 2d 224 (1976) ...................................................................................4, 7

**State Statutes**

Cal. Civ. Proc. Code § 425.17(c)............................................................................13

Ohio Rev. Code § 2741.07......................................................................................4, 7

Ohio Rev. Stat. § 2741.09(A)(6).............................................................................12

**Constitutional Provisions**

First Amendment to the United States Constitution ....................................... *passim*

iv

# I.    INTRODUCTION

In their opposition, Plaintiffs concede that Defendants have a First Amendment right to publish truthful and innocuous biographical information about them in the InsideView database. Dkt. No. 38 at 2; *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411 (2001).  At the same time, Plaintiffs say Defendants cannot publish limited portions of this information publicly, because that is ultimately ***only*** an advertisement for the larger, paid database.  Thus, they claim, it is unprotected commercial speech that unlawfully misappropriates their personas.  What Plaintiffs fail to grasp is that "[i]f speech is ***not purely*** commercial—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002) (emphasis added).  That is why the Ninth Circuit recently rejected Plaintiffs' exact theory of commercial speech, holding that limited, public profile pages containing biographical information are fully protected. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1117–18, 1122 (9th Cir. 2020) (holding that limited, public profile pages containing biographical information were protected speech even though IMDb simultaneously offered paid subscriptions to premium content with its IMDbPro service).  This Court should, too.

But even if Defendants' publication of these public profiles were just advertisements for its database, Plaintiffs' action would still fail.  Under longstanding First Amendment precedent, advertising that uses portions of a protected work (*i.e.*, the limited public profiles) to promote the larger work (*i.e.*, the full profiles or the entire database) is ***also*** fully-protected speech that cannot be proscribed by a state-law right of publicity. *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (dismissing right-of-publicity claims with prejudice on this basis).  Defendants' public profile pages possess at least the same protection as, for example, ads for a movie that contain a clip from the movie in which a real person's name is used. *See Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) (affirming dismissal with prejudice on this basis).

Plaintiffs' responses to Defendants' other grounds for dismissal similarly miss the mark.[1] ***First***, Plaintiffs misunderstand the argument that they have failed to ***plausibly*** allege Article III standing; the issue is not whether their alleged injuries are ***theoretically*** cognizable.  To wit, a

---

[1] Plaintiffs do not dispute that Demandbase, Inc. is not a proper defendant. *See* MTD at 3, n.1.

plausible economic or intellectual property injury does not exist anytime someone's name is used non-consensually.  *Harvey v. Sys. Effect, LLC*, 154 N.E. 3d. 293, 304–05 (Ohio Ct. App. 2020).  That would eviscerate the requirement that right-of-publicity claims must result in an independent injury.  *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011).  Plaintiffs say that Defendants "denied [them] the economic value of their likenesses," Opp'n at 6, but do not allege ***any*** facts in support of their bald allegation that their likenesses had economic value.  It is even less plausible that Plaintiffs suffered any mental anguish from Defendants' truthful and innocuous profile pages.  Plaintiffs simply ignore that "[i]n order to recover damages for emotional distress, the injury suffered must be severe, *i.e.,* substantial or enduring[.]"  *See Young v. Bank of Am.*, 141 Cal. App. 3d 108, 114 (1983).  This is likely because Plaintiffs' complaint does not allege severe mental injury.  *See Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *4 (N.D. Cal. June 15, 2021) (dismissing untethered claims of "mental anguish" with prejudice).

   ***Second***, Plaintiffs admit they must allege Defendants used their names or likenesses to advertise a ***substantively unrelated*** product to show cognizable commercial use.  Opp'n at 16; *Gionfriddo*, 94 Cal. App. 4th at 408.  But they contend that the paid InsideView database is the separate, unrelated product that the public profile pages advertise.  That must be false.  The public profile pages were part of the same database; it is impossible for that information to be separate or unrelated.  Plaintiffs point to out-of-circuit cases applying Illinois law that they say are to the contrary, but this District has rejected this theory of commercial use under California law.  *Brooks v. Thompson Reuters Corp.*, 2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021).

   ***Finally***, Plaintiffs try to shrug off Defendants' argument that its public profile pages are exempted from liability under California and Ohio's right-of-publicity statutes and California's anti-SLAPP statute because they concern matters of public interest.  Plaintiffs say that even if that were true, Defendants cannot use that information in advertisements.  But even where a plaintiff's name is used in a for-profit speech, that is protected speech if it is "informative" to the public. *Harvey*, 154 N.E. 3d. at 307.  Because the public profile pages are of public interest, inform the public, and further public discourse, they are entitled to complete protection under these statutes.

   Defendants respectfully request that the Court grant their motion to dismiss and to strike.

## II.    ARGUMENT

### A.    Plaintiffs' opposition does not explain why their alleged injuries are plausible.

#### 1.    Plaintiffs have alleged a conclusory and implausible economic injury.

Plaintiffs do not and cannot allege that Defendants' publication caused them any actual monetary loss, so they try to conjure a concrete economic injury by claiming that Defendants infringed their "intellectual property" rights and reaped "unjust profits" that each necessitate a finding of economic injury. Opp'n at 5:14–9:3. Neither argument withstands actual scrutiny.

***First***, while right-of-publicity claims can be premised on harm to one's pocketbook, courts have characterized the right of publicity as an intellectual property right only where the plaintiff's identity had pre-existing commercial value that the defendant's use diminished. *See, e.g.*, *No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1030 (2011) (famous band had intellectual property right to control use of its image in video game); *Aroa Mktg., Inc. v. Hartford Ins. Co.*, 198 Cal. App. 4th 781, 785 (2011) (model had intellectual property right to control use of image to sell products); *see also Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021) ("*Callahan II*") ("Some cases characterize the right of publicity as an intellectual-property claim [but those cases] all involve misappropriation of celebrities' images that had commercial value."). Plaintiffs' own authority reinforces this conclusion. *See ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) (Tiger Woods); *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) (Bette Midler); *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (2001) (Three Stooges). Plaintiffs cannot plausibly allege their biographical and professional-contact information had any preexisting commercial value.

Plaintiffs cite district court decisions finding standing in right-of-publicity cases based on a purported intellectual property violation, Opp'n at 5:14–6:17, but those authorities overlooked the foregoing distinction. *See, e.g.*, *Kellman v. Spokeo, Inc.*, 2022 WL 1157500, at *4–6 (N.D. Cal. Apr. 19, 2022); *Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, at *14–15 (N.D. Cal. Nov. 1, 2021) ("*PeopleConnect*"). These decisions discerned a concrete economic injury under *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), on the theory that "intellectual property [infringement] [is] a harm recognized at common

law," but never examined the ***circumstances*** that give rise to an "intellectual property" violation under the common law—harm to preexisting commercial value. They are thus distinguishable.[2]

    ***Second***, Plaintiffs insist Defendants' alleged profits automatically confer standing because those profits mean Defendants deprived them of the "the economic value" of their names. Opp'n at 6:19. But Plaintiffs' authorities—*PeopleConnect*, *Kellman*, and *James v. Bob Ross Buick*—incorrectly assume that ***any use*** of an individual's persona necessarily results in economic loss to a plaintiff. *See PeopleConnect*, 2021 WL 5050079 at *14; *Kellman*, 2022 WL 1157500 at *6; *James*, 167 Ohio App. 3d 338, 345 (2006). But if the mere "use" of an individual's name yielded concrete economic injury, the right of publicity's independent "injury" requirement would collapse into its requirements that a defendant "use" ***and*** "appropriate" the individual's identity. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (actual injury required under California statutory and common law right-of-publicity law); Ohio Rev. Code § 2741.07 (same for Ohio statutory right-of-publicity); *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 232 (1976), *rev'd on other grounds*, 433 U.S. 562 (1977) (same for Ohio common law).

    This is not to say that non-celebrities, like Plaintiffs, cannot allege concrete economic injury. But to do so, they must do more than point to the "dollars in a defendant's pocket." *See In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013). Ample authority—including *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), and *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014)—supports this position.[3]

    In *Fraley*, for instance, the plaintiffs did not claim they had standing merely because the defendant profited from use of their information. That argument focuses incorrectly on whether information has value to a ***defendant***, not on whether information has commercially-exploitable value to a ***plaintiff*** that was actually lost as a result of the defendant's conduct. 830 F. Supp. 2d

---

[2] Plaintiffs incorrectly claim *Callahan II* did not consider how *TransUnion* impacted the analysis for discerning "concrete" injury, Opp'n at 6:16–17. The court considered the analysis discussed in *Spokeo* and *TransUnion* and nevertheless concluded that Plaintiffs failed to allege injury. *See Callahan II*, No. 20-cv-08437-LB, Dkt. 71 (order denying motion for indicative ruling).

[3] *See also, e.g.*, *Silha v. ACT, Inc.*, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015); *Cohen*, 798 F. Supp. 2d at 1097; *Callahan v. Ancestry.com Inc.*, Case No. 20-CV-08437-LB, 2021 WL 2433893, at *3 (N.D. Cal. Mar. 1, 2021) ("*Callahan I*").

1869591

at 797–801. Instead, the plaintiffs used third-party research finding "that advertising consisting of recommendations by friends is the most effective form of advertising" to allege that the plaintiffs' "individual, personalized endorsement of products, services, and brands to their friends and acquaintances ha[d] concrete, provable value." *Id.* at 799. Based on that, the court found that the plaintiffs sustained injuries that could be "measured by the additional profit Facebook earn[ed] by selling [the ads at issue] compared to its sale of regular advertisements." *Id.* at 796–801.

Likewise, in *Perkins*, the plaintiffs did not baldly allege economic injury but cited the defendant's internal documents stating that "the importance of viral marketing to grow[ing] [the defendant's] membership" to allege "that individuals' names have economic value where those names are used to endorse or advertise a product to the individuals' friends and contacts." 53 F. Supp. 3d at 1201–11. Thus, the plaintiffs pleaded economic injury because the defendant used their names and likenesses to send emails to plaintiffs' contacts falsely indicating that plaintiffs endorsed the LinkedIn platform. *Id.* Nothing like that allegedly happened in this case.

Even *Davis v. Facebook, Inc.*, 956 F.3d 589, 600 (9th Cir. 2020)—upon which Plaintiffs rely, Opp'n at 7:12–8:14—supports the foregoing distinction. In *Davis*, the court determined the plaintiffs themselves had a valuable property interest in the information from which the defendant allegedly profited unjustly based on a study expressly stating the information had a specific dollar value. *See id.* at 600 ("Plaintiffs allege that their browsing histories carry financial value. They point to the existence of a study that values users' browsing histories at $52 per year, as well as research panels that pay participants for access to their browsing histories. Plaintiffs ***also*** sufficiently allege that Facebook profited from this valuable data." (emphasis added)).

Defendants do not claim Plaintiffs must "plead false endorsement" to establish economic injury. Opp'n at 15:10–11. Rather, a false endorsement theory, supported by facts demonstrating "a coherent theory of economic injury," as in *Perkins* and *Fraley*, is one way non-celebrities like Plaintiffs can state a right-of-publicity claim. *Perkins*, 53 F. Supp. 3d at 1208. For that reason, Defendants likewise do not contend that California or Ohio law requires a right-of-publicity plaintiff to "be a celebrity." Opp'n at 11:5–6. Nor do Defendants contend that Plaintiffs cannot suffer injury "because the information in their profiles was already publicly available online."

Opp'n at 14:4–6.  The public nature of Plaintiffs' contact information does not ***bar*** them from asserting right-of-publicity claims, but it impacts their ability to plausibly allege economic injury.

### 2. Plaintiffs have alleged a conclusory and implausible mental injury.

Plaintiffs also contend Defendants' publication "caused them mental injury and disturbed their peace of mind."  Opp'n at 10:8–9.  Those conclusory assertions of mental distress are not only implausible, they are insufficient to establish injury-in-fact where, as here, they are offered in the absence of "commercial loss or defamation."  *Callahan II*, 2021 WL 2433893, at *4.

Plaintiffs' authority does not alter this straightforward legal rule.  In *Kellman*, the court found allegations of "mental anguish" to be "plausible" where, unlike here, "individuals' names and information appear[ed] alongside implications that they ***committed crimes***[.]"  2022 WL 1157500 at *5 (emphasis added).  Plaintiffs allege no such embarrassment or reputational injury, nor could they.  In *Martinez*, the court found that unauthorized use of one's public likeness could theoretically yield mental injury, but the court did not interrogate the plausibility of the plaintiffs' purported mental harm.  2022 WL 1078630 at *5.  But bare assertions of mental injury offered in the absence of commercial loss, a false endorsement, or credible allegations of humiliation or reputational injury ***cannot*** establish mental injury.  *See Cohen*, 798 F. Supp. 2d at 1097 (holding that "hurt feelings" based on the defendant's use of the plaintiff's name in an online endorsement cannot support a plausible right-of-publicity injury); *see also Young*, 141 Cal. App. 3d at 114.

Plaintiffs' actual theory of emotional harm bears emphasizing: they are alleging mental anguish based on Defendants' alleged commercial use of information that they ***display publicly*** on LinkedIn for the express purpose of eliciting the same kind of professional communications that they now call "harassing" in their complaint.  *See, e.g.*, Dkt. 30 ¶ 66.  In particular, Plaintiffs are claiming they suffered ***mental anguish*** because someone other than themselves published, for instance, that they work for the City of Brentwood or hold the title of "Management Analyst."  Dkt. 33-3.  This Court need not—and should not—credit such plainly implausible allegations.

### 3. A mere statutory violation is insufficient to confer Article III standing.

Finally, despite Plaintiffs' insistence, Plaintiffs cannot allege any concrete injury based on a bare statutory violation.  Here, that is the purported denial of the right to control the use of their

6

biographical and professional contact information. Opp'n at 9:4–10:7. *Spokeo* and *Transunion* do not hold such an injury cognizable. Those cases recognize only "physical" harm, "monetary" harm, "reputational harm[,]" "disclosure of private information," or "intrusion upon seclusion" as injuries. *TransUnion LLC*, 141 S. Ct. at 2204, 2206. In any case, Plaintiffs' claims all require a ***resulting*** injury to establish a violation.[4] And as discussed, Plaintiffs' approach would eviscerate that independent injury requirement by collapsing it with the "use" and "appropriation" elements.

**B. Plaintiffs' right-of-publicity claims fail for lack of unrelated commercial use.**

Plaintiffs concede California and Ohio right-of-publicity law requires them to plead that Defendants appropriated their names for a "commercial use," and that "commercial use" requires them to advertise or promote an ***unrelated or separate*** product or service. *See* Opp'n at 16:17–17:6; *Brooks*, 2021 WL 3621837, at *4 ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service."); *Gionfriddo*, 94 Cal. App. 4th at 413 ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an ***unrelated*** product.") (emphasis original) (collecting cases). But Plaintiffs' theory is that their profile pages are "advertisements" used to promote an unrelated "separate product"— a subscription service—that provides access to information beyond that shown in their specific profile cards. Opp'n at 16:17–18:23. Plaintiffs' argument is factually and legally flawed.

***First***, the complaint alleges that the publicly-available profile pages for Plaintiffs contain buttons that launch ***separate*** windows that ***do not contain*** any of their information, and that it is these separate windows—not the profile pages—that contain messages inviting viewers to pay to access additional information about Plaintiffs. *See, e.g.*, Dkt. 30 ¶¶ 35–42. This alone is enough to defeat Plaintiffs' entire case. *See Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 209 (2017) (remanding case for dismissal of statutory and common law right-of-publicity claims where the Plaintiff's name and likeness did not appear "in the ads themselves"). The links to separate windows promoting paid access to the work do not transform the underlying, publicly-available

---

[4] *See Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("resulting injury" is required to assert any right-of-publicity claim under California law); Ohio Rev. Code § 2741.07 (Ohio statutory right-of-publicity law limits relief to a "person injured"); *Zacchini*, 47 Ohio St. 2d at 232 (Ohio common-law right-of-publicity claim predicated on an invasion of privacy); *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (2020) (UCL claim requires an economic injury).

7

1869591

profiles into "advertisements," much less advertisements for an "unrelated" or "separate" product.

**Second**, even if the public profiles were "advertisements," it is not true that "Plaintiffs' personas cannot be the product InsideView is advertising[] because InsideView provides access to Plaintiffs' profiles for free." Opp'n at 16:26–27. The whole idea is that public users could access only **part** of the information contained in Plaintiffs' profiles. *See, e.g.*, Dkt. 30 ¶ 38 (users who purchased InsideView Pro "would receive additional information about Mr. Gbeintor"). Further, free users and paying users accessed different portions of the **same** underlying work, the information that paying users obtain is **directly linked** to the freely-available information, and **both** free users and paying users can access information about anyone in the database. So it is not the case, for instance, that a free user has access only to information about a single person, like one of the Plaintiffs, as they suggest. Dkt. 30 ¶¶ 32–41. Thus, even if Defendants are engaged in "advertising," they are **not** engaged in advertising for an unrelated or separate product; they are advertising a more fulsome version of the same product. *See Gionfriddo*, 94 Cal. App. 4th at 413.

**Finally**, Plaintiffs' claim that Defendants are advertising a separate product unrelated to their profiles because they "advertise" a subscription service that permits access to additional information about Plaintiffs and about individuals other than Plaintiffs simply doesn't make sense. Opp'n at 17:3–20. "The plaintiffs' identities are not used to promote a separate product— they are used because plaintiffs' identities are part of the product offered for sale." *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) (dismissing right-of-publicity claim for failing to allege misappropriation for a commercial use); *see also Gionfriddo*, 94 Cal. App. 4th at 414 (a plaintiff's "likeness may be used . . . to advertise a related product"). *Brooks* therefore remains on point. There, as here, the biographical and professional contact information **is** the alleged product, and it "is not being 'appropriated' and used" to falsely imply that Plaintiffs endorse an *unrelated* product or "to advertise or promote a *separate* product or service." 2021 WL 3621837 at *4–5. The Court should thus dismiss Plaintiffs' right-of-publicity claims.

## C. The First Amendment protects Defendants' database and public profiles.

Plaintiffs concede Defendants have a First Amendment right to publish the InsideView database, but contend the publicly-available profile pages that once showed portions of Plaintiffs'

contact information are "advertisements" that constitute unprotected commercial speech. Not so. Under long-standing First Amendment precedent, Defendants' work—the InsideView database— is fully-protected, non-commercial speech, and so is advertising that uses portions of such a work (*i.e.*, the individual profiles) to promote the larger work (*i.e.*, the InsideView database).

*First*, the InsideView database reflects protected speech, as Plaintiffs concede. *See* Opp'n at 18:26–19:1 ("Plaintiffs do not seek to ban InsideView from publishing its online database. Nor do Plaintiffs seek removal of their personal information from InsideView's database.") (cleaned up). It is a factual work, akin to an ever-evolving encyclopedia, or a set of unauthorized biographies. Such works have long been entitled to full First Amendment protection. *See, e.g.*, *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 872 (1979) ("[W]hether [a] publication [is] *factual and biographical* or fictional, the right of publicity has not been held to outweigh the value of free expression.") (emphasis added); *Gionfriddo*, 94 Cal. App. 4th at 411 (holding that "[t]he recitation and discussion of factual data" of any public interest is protected speech); *Daly*, 238 F. Supp. 2d at 1123 ("[A] cause of action for appropriation of another's name and likeness may not be maintained against expressive works, whether *factual* or fictional.") (marks omitted; emphasis added); Restatement (Third) of Unfair Comp. § 47 (1995) cmt. b ("[T]he right of publicity is not infringed by the dissemination of an unauthorized print or broadcast biography.").

*Second*, assuming the profiles at issue are "advertisements," they are advertisements for the underlying protected work—the full version of the profile contained in the fully-protected database, and/or the database itself—and such advertisements are *also* protected speech. *See* *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983) (advertising "an activity [that is] itself protected by the First Amendment" is protected speech); *Charles v. City of Los Angeles*, 697 F.3d 1146, 1155 (9th Cir. 2012) ("[W]e have recognized that the noncommercial First Amendment status of an underlying expressive work extends to advertisements for that work."); *Daly*, 238 F. Supp. 2d at 1123 ("[A]dvertisements of expressive works are not actionable where the advertisements are merely an adjunct of the protected [work] and promote only the protected [work]."); *Guglielmi*, 25 Cal. 3d at 873 ("It would be illogical to allow [defendants] to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise.

Since the use of [the plaintiff's] name and likeness in the film was not an actionable infringement of [his] right of publicity, the use of his identity in advertisements for the film is similarly not actionable.").[5]  The publicly-available profiles promote only the protected individual profiles and the protected database in which they are contained, and thus reflect the use of an "adjunct of the protected [work]" to promote the protected work itself.  *Daly*, 238 F. Supp. 2d at 1123.

**Third**, despite Plaintiffs' insistence, the buttons on the profiles that launch separate windows (*not* containing Plaintiffs' information) that in turn enable viewers to pay to access additional information about Plaintiffs, Dkt. 30 ¶¶ 34, 41–42, do not transform the profiles containing factual information about Plaintiffs into commercial speech.  Plaintiffs' authority, moreover, is distinguishable because it incorrectly concludes otherwise.  *See* Opp'n at 20:13–20.

"[T]he 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.'"  *Mattel*, 296 F.3d at 906 (quoting *Bolger*, 463 U.S. at 66).  "If speech is not ***purely commercial***—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection."  *Id.* (marks omitted; emphasis added).  Here, the profiles do more than propose a commercial transaction—they freely and publicly disseminate information about Plaintiffs (two of whom are government officials), including a description of their educational backgrounds and career histories.  *Id.*  Thus, these profiles do not qualify as "purely commercial" speech and are "entitled to full First Amendment protection."  *See id.*

*Hoffman v. Capital Cities/ABC* reinforces this conclusion.  255 F.3d 1180 (9th Cir. 2001). In that case, a magazine published an article featuring a digitally-altered photograph of Dustin Hoffman, who filed California statutory and common law right-of-publicity claims in response. *Id.* at 1183.  The use of Hoffman's image "clearly served a commercial purpose," the Ninth Circuit said: "'to draw attention to the for-profit magazine in which it appear[ed]' and to sell more copies."  *Mattel, Inc.*, 296 F.3d at 906 (quoting *Hoffman*, 255 F.3d at 1186).  Nevertheless, the Ninth Circuit concluded the use of Hoffman's image was not "pure commercial speech,"

---

[5] *See also, e.g.*, *Charles*, 697 F.3d at 1154 ("We extend [] protection . . . to advertisements for expressive works so as to prevent tort actions from choking the truthful promotion of protected speech."); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) ("Constitutional protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication.").

*Hoffman*, 255 F.3d at 1185, and "was fully protected" by the First Amendment, "because it

included protected expression," *Mattel, Inc.*, 296 F.3d at 906, did not "simply advance a

commercial message," *Hoffman*, 255 F.3d at 1185, and "its commercial purpose was 'inextricably

intertwined with [its] expressive elements,'" *Mattel, Inc.*, 296 F.3d at 906 (quoting *Hoffman*, 255

F.3d at 1185). So too here. Defendants' publication of the public profiles containing Plaintiffs'

biographical and professional contact information is not "pure commercial speech," the profiles

include "protected expression" (factual information), they do not purely advance a commercial

message (they are also informative), and any "commercial purpose" is "inextricably intertwined"

with the expressive publication of factual information. *Mattel, Inc.*, 296 F.3d at 906.

Further, despite Plaintiffs' objections, *IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir.

2020), and *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012), remain on

point. In *IMDb.com Inc.*, the "publicly available [actor] profiles" contained "in an online

database of information" were "surrounded by [protected] content," including "information on

cast, production crew, fictional characters, biographies, plot summaries, trivia and reviews." 962

F.3d at 1122. The profiles did not directly propose a commercial transaction, as Plaintiffs point

out, but even if they did, the profiles would not constitute commercial speech under *Hoffman* and

*Mattel* because, as here, they "included protected expression." *Mattel, Inc.*, 296 F.3d at 906–07.

Similarly, in *Dex Media*, the court held that phone books containing both advertisements

***and*** factual information reflected both commercial and non-commercial speech that was

inextricably intertwined and thus "fully protected expression." 696 F.3d at 962; *see also id.* 957–

62. The court also held that phonebooks weren't commercial speech, as here, because they do

more than merely propose a commercial transaction. *See Dex Media*, 696 F.3d at 962 (citing

*Virginia St. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)).

At bottom, Plaintiffs are seeking to use California and Ohio right-of-publicity law as a

vehicle for restricting Defendants' non-commercial speech (the profiles) based upon its content

(name, city of residence, place of work, etc.). Such content-based restrictions are subject to strict

scrutiny. *See Dex Media*, 696 F.3d at 957; *IMDb.com Inc.*, 962 F.3d at 1120–21. Plaintiffs'

proposed restrictions cannot survive the application of strict scrutiny. Dkt. 31 at 19:18–20:19.

Accordingly, the First Amendment requires that Plaintiffs' complaint be dismissed in its entirety.

### D. Plaintiffs' statutory right-of-publicity claims fail because California and Ohio law exempts from liability for-profit speech on matters of public interest.

Plaintiffs contend their statutory right-of-publicity claims do not implicate the "public affairs" and "public interest" exemptions in California and Ohio law because Defendants' publication of the database and the profiles contained therein ostensibly doesn't "significantly contribute" to a "matter of public interest." Opp'n at 22:25–26. This argument fails.

*First*, Defendants' preview profiles constitute fully protected First Amendment speech, and thus fall squarely within the scope of the exemptions. *See, e.g.*, *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) (explaining that the California exemption is "designed to avoid First Amendment questions in the area of misappropriation by providing *extra* breathing space for the use of a person's name in connection with matters of public interest" (emphasis added)); Ohio Rev. Stat. § 2741.09(A)(6) (exempting any "use of the persona of an individual that is protected by the First Amendment . . . as long as the use does not convey or reasonably suggest endorsement by the individual whose persona is at issue.").

*Second*, even if Defendants' speech were not fully-protected speech, Plaintiffs—and the authorities they rely upon—misconstrue the broad scope of the exemptions and correspondingly misapply the exemptions here. In California, the "public affairs" exemption permits use of otherwise protected information on subjects that merely "are of interest" to "some" members of the public, including works that "may legitimately inform [] the public," such as "biographies." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 543–46 (1993). In Ohio, the sole court to interpret the "public interest" exemption concluded that, even where a plaintiff's name and likeness were used in a presentation made for profit, the defendant was not liable because the challenged presentation was "informative" to the public. *Harvey*, 154 N.E. 3d. at 307.

Against this backdrop, the profiles contained in Defendants' database—an encyclopedia about public and private companies, governments, and employees—fall within the exemptions. They are biographical and undeniably are "of interest" to and "may legitimately inform" at least "some" members of the public. *Dora*, 15 Cal. App. 4th at 543–46; *Harvey*, 154 N.E. at 307. If

12

that were not enough, Plaintiffs Gbeintor and Alderman are ***long-time government employees***—persons the public is "constitutionally entitled to know about," *Dora*, 15 Cal. App. 4th at 546–47. At least they are "of interest," not only to the thousands of individuals wishing to contract with the government, but those who wish (1) to be "legitimately inform[ed]" about ***who*** the people are that are in positions to drive the state's operations and (2) ***how*** people like Plaintiffs obtained or progressed to such positions. *See id.* Plaintiffs' statutory right-of-publicity claims thus fail.

### E. Plaintiffs' UCL claims rise and fall with their right-of-publicity claims.

Plaintiffs do not contest that their UCL claims are purely derivative of their right-of-publicity claims. Accordingly, Plaintiffs' UCL claims fail because Plaintiffs cannot plead the predicate right-of-publicity claims. *See* Dkt. 31 at 23:8–24:4 (discussing authority).

### F. Plaintiffs' complaint should be stricken for challenging protected speech.

Lastly, Plaintiffs assert that California's anti-SLAPP statute does not bar their action because the statute does not apply to Defendants' "commercial speech," Defendants' "private" speech is not "of interest" to "a substantial number of people," and, according to Plaintiffs, they alleged valid claims. Opp'n at 24:1, 25:2–5, 25:19–23. These arguments are meritless.

***First***, the anti-SLAPP statute's commercial speech exception does not apply. *See* Cal. Civ. Proc. Code § 425.17(c). Defendants' use of Plaintiffs' biographical and professional contact information does not constitute commercial speech, *see supra*, and even if it did, the commercial speech exception "exempts only a subset of commercial speech—specifically, comparative advertising"—which is not at issue here. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019) (internal quotation marks omitted). To qualify as comparative advertising (and thus invoke the exception), for instance, a defendant's speech must reflect a "representation of fact about [the defendant's] or a business competitor's business," *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010), such that "the harm [the] plaintiffs allege [] derive[s] from [the Defendant's] representations about his own business or a competitor's business," *Dziubla v. Piazza*, 59 Cal. App. 5th 140, 154 (2020). Plaintiffs' claims do not concern any of those issues, and thus, the anti-SLAPP statute's commercial speech exception does not apply here.

The authority Plaintiffs invoke does not dictate otherwise. *Martinez* imported into its

analysis of the anti-SLAPP statute's commercial speech exception the court's flawed conclusion in the First Amendment context that the defendant was engaged in commercial speech. *See Martinez*, 2022 WL 1078630 at \*7. *Martinez* never mentioned, much less analyzed, *FilmOn.com Inc.*, or any other case articulating the narrow scope of the California anti-SLAPP statute's commercial speech exception. *Id.* *Boshears* dealt with Washington's anti-SLAPP statute, which contains a different commercial speech exception, and *Boshears*, like *Martinez*, focused on (a flawed application) of the First Amendment commercial speech standard without grappling with the authorities interpreting the commercial speech exception contained in California's anti-SLAPP statute. *See Boshears v. PeopleConnect, Inc.*, 2022 WL 888300, at \*7 (W.D. Wa. Mar. 25, 2022). And *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Ass'n of L.A.* is inapposite because *L.A. Taxi*, unlike here, actually involved comparative advertising. *See* 239 Cal. App. 4th 918, 921 (2015). If anything, *L.A. Taxi* illustrates why the commercial speech exception does ***not*** apply here. There, the plaintiff sued its ***competitor*** for using false advertisements to mislead consumers into thinking they were being directed to the plaintiffs' business when instead they were being directed to the defendants'. *Id.* There is no comparative advertising at issue here.

***Second***, Defendants *do* speak in connection with an issue of public interest by publishing detailed profiles containing information about companies, governments, and employees. Courts construe "public issue or public interest broadly," *Sarver*, 813 F.3d at 901 (internal quotation marks omitted); it means "*any issue in which the public is interested*," *Cross*, 14 Cal. App. 5th at 209, even one that is "not [] significant," *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008), and that "encompass[es] activity between private people," *Cross*, 14 Cal. App. 5th at 199 (internal quotation marks omitted), as Plaintiffs concede. Further, even speech that "has a commercial or promotional aspect" can be "made in connection with an issue of public interest." *FilmOn.com Inc.*, 7 Cal. 5th at 154; *see also id.* at 153 ("Some commercially oriented speech will, in fact, merit anti-SLAPP protection."). And the defendant's speech need only "participate[] in, or further[], the discourse that makes an issue one of public interest." *Id.* at 151.

Here, Defendants' speech undeniably "participates in" and "furthers" public discourse: it freely disseminates an abundance of information about corporations, governments, and their

employees in a publicly-accessible, encyclopedia-like database that enables discussion regarding, among other things, *who* is driving government operations, *how* those people (including Plaintiffs Gbeintor and Alderman) progressed to such positions, *what* government entities run by these employees are doing and saying, and *how* well these governments and other public and private companies are functioning.  The profiles thus qualify for anti-SLAPP protection.

Plaintiffs' remaining objections on this point are baseless.  Plaintiffs insist Defendants' speech concerns "private information," Opp'n at 25:4, but that is false.  Plaintiffs publicly posted it on the internet.  *See* Dkt. 33, Exs. A–C (Plaintiffs' public LinkedIn pages); *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009) (holding that information is not private where it is "available to any person with a computer").  Plaintiffs say that Defendants' speech is not of interest to "a substantial number of people," *id.* at 25:3–4, but that too is incorrect.  Defendants' speech is undoubtedly "of interest" to the thousands of individuals working in the business-to-business space, and the many individuals who are interested in understanding and evaluating the companies, governments, and public officials making news and policy, and operating in their communities.  Anti-SLAPP protection, in any event, does not require that speech be "of interest" to a large number of people.  *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1468–69 (2005) (topic was of interest only to the residents of a homeowners' association).  And Plaintiffs object that Defendants' speech is unprotected because it does not "warn the public against fraud" or concern "a prominent celebrity."  Opp'n at 25:8–12.  But the anti-SLAPP statute contains no such requirement, and Defendants' database does in fact inform the public about fraud (in news updates pertaining to listed individuals, governments, and/or companies) and many celebrities.

**Finally**, as discussed above, Plaintiffs are not likely to prevail on their claims.[6]

### III. CONCLUSION

Plaintiffs' complaint should be dismissed with prejudice or stricken in its entirety.

---

[6] Plaintiffs assert various non-binding district court decisions "are unanimous in summarily denying anti-SLAPP motions on these facts," but the authority they invoke does not support their assertion.  *See, e.g.*, *PeopleConnect*, 2021 WL 5050079 at *21 (decision did not reach the anti-SLAPP motion); *Martinez*, No. 21-5725 MJP, Dkt. 40 (anti-SLAPP motion currently up on appeal); *Sessa v. Ancestry.com Ops. Inc.*, No. 20-cv-02292-GMN-BNW, Dkt. 50 (D. Nev. 2020) (district court temporarily stayed entire action pending appeal of anti-SLAPP motion).

1869591

Dated:  July 8, 2022

KEKER, VAN NEST & PETERS LLP

By:  /s/ R. Adam Lauridsen
R. ADAM LAURIDSEN
JULIA L. ALLEN
IAN KANIG
CODY GRAY

Attorneys for Defendants
DEMANDBASE, INC. and
INSIDEVIEW TECHNOLOGIES, INC.

16